**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| KENNETH CHAPMAN, JESSICA VENNEL, and JASON JACKSON, on behalf of themselves and all others similarly situated, | Case No.  1:16-cv-1114 |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| TRISTAR PRODUCTS, INC., | |
| Defendant. | |

Plaintiffs Kenneth Chapman, Jessica Vennel, and Jason Jackson ("Plaintiffs"), on behalf of themselves and all others similarly situated, through their undersigned counsel, bring this Class Action Complaint ("Complaint") against Defendant Tristar Products, Inc. ("Tristar" or "Defendant").  The following allegations are based upon investigation by Plaintiffs' counsel and upon personal knowledge as to Plaintiffs' own facts.

## <u>NATURE OF THE ACTION</u>

1.     Tristar designs, manufactures, markets, and sells a wide range of "innovative" consumer products, touting itself as the "recognized pioneer of taking innovative ideas and turning them into branded worldwide distributed products,"[1] from the AbRoller to the Power Juicer.

---

[1] http://www.tristarproductsinc.com/about-tristar-products-inc.php (last accessed May 2, 2016).

2.     Tristar touts that its "[d]edication to high standards and quality manufacturing makes Tristar Products an internationally respected infomercial leader."[2]  "With well established brands, proven international and domestic distribution channels . . . the best team in the industry and quality manufacturing that attracts celebrity endorsements, Tristar Products Inc. has exceeded over a billion dollars in sales."[3]

3.     Despite Tristar's claimed dedication to high standards and quality manufacturing, it designed, manufactured, marketed, and sold online or through third-party retailers a high-powered pressure cooker called the "Power Pressure Cooker XL" (hereinafter, the "Pressure Cooker"), that suffers from a serious and dangerous design defect.

4.     Specifically, during ordinary and routine operation, the Pressure Cooker generates extreme heat and steam.  According to the Owner's Manual accompanying the Pressure Cooker, which is received by every consumer who purchases the Pressure Cooker, the lid "should only come off if there [is] no pressure inside."[4]  When the defect manifests itself, however, the built-up pressure and steam trapped inside the Pressure Cooker causes its scalding hot contents to burst and erupt from the appliance when the lid is opened by the consumer, resulting in significant and painful personal injury to the consumer.

5.     This defect includes, without limitation, a defective pressure release valve that inaccurately indicates that the built-up pressure has escaped the appliance, causing the scalding hot contents to burst and erupt from the Pressure Cooker when the lid is opened by the consumer (hereinafter, the "Defect").  The Defect is also related to a faulty gasket that allows the lid to open despite the presence of significant built-up pressure, and despite a "built-in safety feature"

---

[2] *Id.*
[3] *Id.*
[4] Exhibit A (Tristar's Power Pressure Cooker XL Owner's Manual).

designed to prevent the lid from opening until all the pressure is released.  Regardless of whether the Defect manifests itself, for all Pressure Cookers sold by Tristar, the Defect poses a serious safety risk to consumers and the public.

6.      The Pressure Cooker at issue in this case includes all Power Pressure Cooker XL models sold by Tristar, including, without limitation, Tristar Model Number PPC-770.

7.      At all relevant times, Tristar knew or should have known of the Defect but nevertheless sold the Pressure Cooker to consumers, failed to warn consumers of the serious safety risk posed by the Defect, and failed to recall the dangerously defective Pressure Cooker despite the risk of significant injuries to consumers as well as the failure of the product.

8.      As a direct and proximate result of Tristar's concealment of the Defect, failure to warn customers of the Defect, and of the inherent safety risk posed by the Pressure Cooker, failure to remove the defective Pressure Cooker from the stream of commerce, and failure to recall or remedy the Defect, Plaintiffs purchased and used Tristar's defective and unsafe Pressure Cooker when they otherwise would not have made such purchases or would not have subsequently used the Pressure Cooker.

9.      Plaintiffs' Pressure Cookers failed as a result of the Defect when Plaintiffs opened the lid to their respective Pressure Cooker, causing the scalding hot contents to erupt from the appliance, and resulting in significant and painful personal injuries and/or property damage.

10.      Plaintiffs' and all Class members' Pressure Cookers contain the same Defect posing the same substantial safety risk to consumers and the public.  Tristar's Pressure Cooker cannot be used safely for its intended purpose of preparing meals at home.

## PARTIES

11.    Plaintiff Kenneth Chapman is a resident and citizen of Brunswick, Ohio.  In early 2015, he purchased a new Pressure Cooker (Model Number PPC-770), from a Target store. Plaintiff Chapman suffered substantial and painful injury when his Pressure Cooker failed during normal use as a result of the Defect.

12.    Plaintiff Jessica Vennel is a resident and citizen of Pennsylvania.  On or about December 23, 2015, she purchased a new Pressure Cooker (Model Number PPC-770), from a Target store.  Plaintiff Vennel suffered substantial and painful injury when her Pressure Cooker failed during normal use as a result of the Defect.

13.    Plaintiff Jason Jackson is a resident and citizen of Pagosa Springs, Colorado.  In approximately January 2016, he purchased a new Pressure Cooker (Model Number PPC-770) from a Target store.  Plaintiff Jackson suffered substantial and painful injury when his Pressure Cooker failed during normal use as a result of the Defect.

14.    Defendant Tristar Products, Inc. ("'Tristar" or "Defendant") is a Pennsylvania corporation with its principal place of business located in Fairfield, New Jersey.  Tristar designs, manufacturers, markets, and sells the Pressure Cooker online and through third-party retailers throughout the United States.

## JURSIDICTION AND VENUE

15.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  The amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, and Plaintiffs and some Class members are citizens of states other than where Tristar is incorporated or has its primary place of business.

16.     This Court may exercise jurisdiction over Defendant because it does substantial business in this State and within this District, receives substantial revenues from its marketing, distribution, and sales of the Pressure Cooker in this District, and has engaged in the unlawful practices described in this Complaint in this District, so as to subject itself to personal jurisdiction in this District, thus rendering the exercise of jurisdiction by this Court proper and necessary.  Tristar has continuous and systematic contacts with this District through its sale of the Pressure Cooker in Ohio.

17.     Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff Chapman resides in this District and purchased his Pressure Cooker in this District. A substantial part of the events or omissions giving rise to Plaintiff Chapman's claims occurred in this District.

## COMMON FACTUAL ALLEGATIONS

18.     Tristar touts itself as a "recognized pioneer of taking innovative ideas and turning them into branded worldwide distributed products."  It purportedly is "dedicated to high standards and quality manufacturing."

19.     Tristar is engaged in the business of designing, manufacturing, warranting, marketing, advertising, and selling the Pressure Cooker.

20.     The Pressure Cooker is used for food preparation by means of boiling liquids inside a sealed vessel that produces steam, which is trapped inside to create pressure and superheat the contents.  The resulting temperatures are intended to reduce cooking time while capturing more nutrients than is possible with other cooking methods.

21.     In the Pressure Cooker's Owner's Manual and other written documents authored by Tristar, Tristar expressly warrants that the Pressure Cooker is free from defects, made for

years of dependable operation, and is manufactured from merchantable materials and workmanship.

22.     Tristar states that it "tested and perfected the right combination of metals, cooking surfaces, and digital technology" when designing the Power Cooker.[5]  "The sealed cooking chamber builds up heat and pressure" and "[t]he 'sealed' cooking process eliminates messy stovetop spills while 'trapping' heat, making for cooler kitchens and easier cleanups."[6]  Tristar equips the Pressure Cooker with several purported "built-in safety features" including, among others, a "lid safety device," which is supposed to prevent pressure build-up if the lid is not closed properly and to prevent the lid from opening until all pressure is released.[7]  Additionally, a "back-up safety release valve" is supposed to automatically release built-up pressure in the event the temperature or pressure sensors malfunction and pressure is built up beyond the maximum setting.[8]  Furthermore, if the previous safety features fail, a "spring-loaded safety pressure release," located beneath the heating element, is supposed to automatically lower the inner pot, enabling the steam and pressure to automatically escape around the pot lid, thus "avoiding a dangerous situation."[9]  Finally, if the Pressure Cooker malfunctions and the internal temperature rises above the "safe" limit, a "temperature cut-off" is supposed to cut-off the power supply.[10]

_____

[5] Exhibit A at 2.
[6] *Id.*
[7] *Id.* at 5.
[8] *Id.*
[9] *Id.*
[10] *Id.*

23.     In the "Frequently Asked Questions" section of its website, Tristar states that it is safe to remove the lid only "[w]hen all pressure is released" and "[i]f the unit is difficult to open, this indicates that the cooker is still pressurized – do not force it open."[11]

24.     Additionally, in the section of its website titled the "Power Pressure Cooker XL vs. The Competition," Tristar emphasizes the built-in safety features as one of the characteristics that helped the Pressure Cooker become "The Best Electronic Power Cooker On The Market."[12]

25.     In a YouTube video by Eric Theiss, who Tristar touts as a chef endorsement of the Pressure Cooker, and who also "hosts the incredibly successful, award-winning long-form infomercial featuring the Power Pressure Cooker XL,"[13] Mr. Theiss states that "when your Pressure Cooker is up to pressure, the lid locks on.  I couldn't get this lid open if I wanted to. There's no way you're gonna open it.  So, it's loaded with safety features, you guys.  So, if you've never used a pressure cooker before, this is one of the safest ones you can get."[14]  Later in the video, when Mr. Theiss is releasing the pressure from the Pressure Cooker, he states that "even if I wanted to," he couldn't open the lid "because the pressure is still inside."[15]  The Pressure Cooker "knows" when the pressure has fully released and will unlock "automatically."[16]

26.     Plaintiffs and the Class purchased their Pressure Cookers reasonably believing they were properly designed and manufactured, free from defects, and safe for their intended use.

---

[11] http://www.powerpressurecooker.com/faqs.php (last accessed May 2, 2016).
[12] http://www.powerpressurecooker.com/comparison.php (last accessed May 2, 2016).
[13] http://www.powerpressurecooker.com/eric-theiss.php (last accessed May 2, 2016).
[14] https://www.youtube.com/watch?v=UsYE9e4nQLs&feature=youtu.be (last accessed April 11, 2016).
[15] *Id.*
[16] *Id.*

27.     Plaintiffs and the Class used their Pressure Cookers for their intended purpose of preparing meals at home in a manner reasonably foreseeable by Tristar.  Plaintiffs, however, are now unable to use their Pressure Cookers for their intended purpose, or are required to place themselves and their families at risk when using them, because the Defect renders the Pressure Cooker unsafe by allowing a dangerous level of pressure to accumulate, causing the hot contents to spontaneously erupt out.

28.     The Pressure Cooker suffers from a design Defect that poses an unreasonable risk of injury during normal use.

29.     Tristar knew or should have known of the Defect and of the serious safety risk it posed to consumers and the public, but chose to conceal knowledge of the Defect from consumers who purchased the Pressure Cooker.  Tristar continues to remain silent regarding the Defect and is continuing to sell the Pressure Cooker to unsuspecting consumers.

30.     As a result of Tristar's conduct, Plaintiffs and the Class have suffered damages, including, without limitation:  (a) the purchase price of the Pressure Cooker, as Plaintiffs and the Class would not have purchased the product had they been informed of the Defect; (b) their failure to receive the benefit of their bargain; (c) their overpayment for the Pressure Cooker; (d) the diminished value of the Pressure Cooker; (e) the costs of repair or replacement of the Pressure Cooker; (f) damages to real and/or personal property; and (g) damages for personal injuries.

**ADDITIONAL SPECIFICS CONCERNING THE DEFECT**

31.     Tristar's Pressure Cooker has a design Defect that causes the product to malfunction during its expected useful life.  This section of the Complaint sets forth specifics concerning the Defect.

8

32.     Based upon Plaintiffs' Counsel's investigation, the Defect includes, without limitation, a faulty release valve that inaccurately indicates when the built-up pressure has safely escaped the Pressure Cooker.  The Defect is also related to a faulty gasket that allows the lid to open despite the presence of a significant and dangerous amount of built-up pressure, and despite a "built-in safety feature" designed to prevent the lid from opening until all the pressure is released.  The excess pressure causes the contents to erupt from the Pressure Cooker when it is being used for its intended purpose, discharging the scalding hot contents onto consumers, and resulting in significant injuries.  The Defect is also related to the lack of an adequate mechanism to prevent the contents from blocking, or otherwise defeating, the supposed "built-in" pressure relief and safety features.

33.     The Defect, which allows users to open the Pressure Cooker while it still contains a significant and dangerous amount of pressure, demonstrates the ineffectiveness of the "lid safety device" that Tristar touts as one of the Pressure Cookers' built-in safety features.

34.     The Defect manifests itself during the expected useful lives of the Pressure Cooker, within and without the warranty periods, preventing the Pressure Cooker from being used as intended, and creating an unreasonable risk of personal injury.

## PLAINTIFF CHAPMAN'S EXPERIENCE

35.     On or about March 17, 2016, Plaintiff Chapman used his Pressure Cooker to prepare dinner for his family.  Having read and understood the instructions and having reasonably relied on Tristar's representations that the product was safe, functional, and ready for use, he added corned beef, cabbage, and potatoes to the Pressure Cooker and turned it on according to the instructions.

9

36.     When the timer went off, Plaintiff Chapman, acting pursuant to the instructions in the Owners' Manual, turned the pressure release valve to allow the built-up pressure and steam to escape from the appliance.  He let the pressure escape until the valve dropped supposedly below the level indicating that the appliance contained no further pressure.

37.     Because the Pressure Cooker indicated that the remaining pressure had dispersed from the appliance, Plaintiff Chapman opened the lid.  Unbeknownst to him, as a result of the Defect, the Pressure Cooker still retained a significant and dangerous amount of pressure inside the appliance, which caused the scalding hot contents to erupt out, spraying all over Plaintiff Chapman's person and his kitchen.

38.     As a result, Plaintiff Chapman suffered second-degree and third-degree burns to his face, neck, chest, and arms, and his wife also suffered burns on her arms.

## PLAINTIFF VENNEL'S EXPERIENCE

39.     On or about February 25, 2016, Plaintiff Vennel used her Pressure Cooker to prepare dinner for her family.  Having read and understood the instructions and having relied on Tristar's representations that the product was safe, functional, and ready for use, she selected the soup option and set the timer for twenty-five minutes.  The soup ingredients did not exceed the fill line etched to the inside of the Pressure Cooker.

40.     When the timer went off, Plaintiff Vennel, acting pursuant to the instructions in the Owners' Manual, turned the pressure release valve to allow the built-up pressure and steam to escape from the appliance.  She let the pressure escape for fifteen minutes, until the valve dropped below the level supposedly indicating that the appliance contained no further pressure.

41.     Because the Pressure Cooker indicated that the remaining pressure had dispersed from the appliance, Plaintiff Vennel opened the lid.  When she turned the lid to open the

appliance, the Pressure Cooker had, unbeknownst to her, retained a significant and dangerous amount of pressure inside the appliance, which caused the scalding hot soup to erupt out, spraying all over Plaintiff Vennel's person and her kitchen.  Despite several built-in safety features, including a lid safety device that was supposed to prevent the lid from opening while the Pressure Cooker retained pressure, Plaintiff Vennel was able to easily remove the lid.

42.     As a result, Plaintiff Vennel suffered second-degree burns to her body and first-degree burns to her left hand and lip.  She was taken to an urgent care center, where the burn was debrided and Silvadene was applied to reduce the pain and prevent infection.

### PLAINTIFF JACKSON'S EXPERIENCE

43.     On or about March 19, 2016, Plaintiff Jackson used his Pressure Cooker to prepare dinner for his family.  Having read and understood the instructions and having relied on Tristar's representations that the product was safe, functional, and ready for use, he selected the soup option and set it to cook for thirty minutes.

44.     Plaintiff Jackson, acting pursuant to the instructions in the Owners' Manual, turned the pressure release valve to allow the built-up pressure to escape from the appliance.  He let the pressure escape for thirty minutes, until the valve dropped below the level supposedly indicating that the appliance contained no further pressure.

45.     Because the Pressure Cooker indicated that the remaining pressure had dispersed from the appliance, Plaintiff Jackson opened the lid.  Unbeknownst to him, the Pressure Cooker still retained a significant and dangerous amount of pressure inside the appliance, which caused the scalding hot soup to erupt out, spraying all over Plaintiff Jackson's person and kitchen.

11

46.     As a result and pictured below, Plaintiff Jackson suffered significant burns to his face and body.  He has been to the emergency room on three occasions and has had to undergo numerous follow up appointments.





## **TRISTAR'S NEGLIGENT AND INTENTIONAL CONDUCT**

47.     Tristar failed to adequately design, manufacture, and/or test the Pressure Cooker to ensure it was free from the Defect before offering it to sale to Plaintiffs and the Class, despite its duty to do so.

48.     The Defect poses a serious and immediate safety risk to consumers and the public and has caused or will cause Plaintiffs' and Class members' Pressure Cookers to fail during their expected useful lives.

49.     Tristar's Pressure Cooker should have been usable for its intended purpose during its expected useful life.  The Defect, however, existed at the time that the Pressure Cooker was sold to Plaintiffs and the Class, and the Defect immediately rendered the Pressure Cooker unfit for the ordinary and intended purpose for which it is marketed and sold.

50.     If the Pressure Cooker did not suffer from the Defect, Plaintiffs and the Class would not have suffered the damages set forth in this Complaint.

51.     Tristar has a duty to protect consumers by warning them that the Defect poses unreasonable risks of personal injury and/or property damage.

52.     Nonetheless, even though Tristar knew or should have known of the Defect, it chose to conceal the existence of the Defect, continued to sell the Pressure Cooker, and failed to remove the Pressure Cooker from the marketplace.  Tristar took these actions to realize the substantial financial benefits of selling the defective Pressure Cooker to the unsuspecting public.

53.     Tristar knew or should have known that consumers including Plaintiffs and the Class: (a) were unaware of the Defect and could not reasonably be expected to discover the Defect until their Pressure Cookers failed; (b) expected to use the Pressure Cooker in their homes without putting their safety and property at risk; and (c) expected Tristar to disclose any Defect that would prevent the Pressure Cooker from safely performing its intended purpose, as such disclosure by Tristar would impact a reasonable consumer's decision whether to purchase the Pressure Cooker.

54.     As a result of Tristar's concealment of the Defect, many Class members remain unaware of the existence of the Defect and that it poses an unreasonable risk of personal injury and/or property damage during normal use.

55.     Had Plaintiffs and Class members been made aware of the Defect, they would not have purchased the Pressure Cooker.

**TRISTAR'S ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE DEFECT**

56.     Tristar knew or should have known when it sold the Pressure Cooker to the public that it suffered from the Defect, and that the Defect caused the Pressure Cooker to function improperly during its expected useful life, represented an unreasonable risk that the Pressure

Cooker would erupt and discharge scalding hot liquids and contents, and might result in significant personal injury and/or property damage to consumers and the public.

57. Tristar's knowledge of these facts is established through, *inter alia*, civil complaints filed against Tristar and online postings complaining that the Pressure Cooker failed during normal use.  Despite its knowledge, Tristar did not remedy or eliminate the Defect in the Pressure Cooker or remove it from the stream of commerce.

58. For example, in June 2015, a complaint was filed against Tristar in the United States District Court for the Southern District of Florida, alleging that the Power Cooker XL, Model No. PPC-770, was defective in that it unexpectedly failed and discharged scalding hot liquids during normal use.  *See Tchernykh, et al. v. Bed Bath & Beyond, Inc., et al.*, No. 15-cv-22364 (S.D. Fla).  That case settled.  *See* Dkt. No. 22 (Notice of Settlement filed December 29, 2015).

59. In December 2015, a complaint was filed against Tristar in the United States District Court for the Eastern District of New York, alleging that the Power Cooker, Model Number PC-TR16, unexpectedly failed and discharged scalding hot liquid onto the plaintiff.  *See John v. Tristar Products, Inc.*, No. 15-cv-06939 (S.D.N.Y.).

60. In January 2016, a complaint was filed against Tristar in state court in Georgia, alleging that the Power Cooker XL failed during normal use, causing scalding hot liquids to erupt from the appliance, and resulting in serious injuries to the plaintiffs.  *See Strickland, et al. v. Tristar Products, Inc.*, No. STCV1600047 (Ct. Chatham, Co., Ga).

61. Customer complaints are also available online regarding the Pressure Cooker.  For example, one consumer noted:

> I made steamed vegetables. The cooker signaled that it was finished so I released all the air and removed the lid. Hot water and steam was released

> leaving me with second degree burns on my abdomen . . . I spent more than two hours in the emergency room.  The burn was debrided and I was sent home . . . [T]he cooker was only used four times and three out of those four times there was a problem. When I suffered the burn I realized that it was not me but that the cooker was somehow flawed.[17]

62.  Another consumer noted:

> [t]his product is junk . . . Doesn't work. The pressure relief valve doesn't work.[18]

63.  In conjunction with Tristar's experience designing and selling the Pressure Cooker, these facts illustrate that Tristar knew or should have known of the Defect.

64.  Tristar has a duty to disclose the Defect and to not conceal the Defective from Plaintiffs and Class members.  Tristar's failure to disclose, or active concealment of, the Defect places Plaintiffs and Class members at risk of personal injury and/or property damage.

65.  Tristar is currently still selling the defective Pressure Cooker, concealing the Defect, failing to notify consumers of the Defect, and failing to recall the Pressure Cooker.

66.  Moreover, Tristar continues to falsely represent through written warranties that the Pressure Cooker is free from defects, is of merchantable quality, and will perform dependably for years.

67.  When corresponding with customers, Tristar does not disclose that the Pressure Cooker suffers from the Defect.  As a result, reasonable consumers, including Plaintiffs and Class members, purchased and used, and continue to purchase and use, the Pressure Cookers in their homes even though it is unsafe to do so.

---

[17] *See* https://www.consumeraffairs.com/misc/tristar_products.html.

[18] *See* www.asseenontvonsale.com/kitchen/power-pressure-cooker-xl-review.

68.     Tristar has wrongfully placed on Plaintiffs and Class members the burden, expense, and difficulty involved in discovering the Defect, repairing and replacing the Pressure Cooker, and paying for the cost of damages caused by the Defect.

## CLASS ALLEGATIONS

69.     Plaintiffs bring this action against Tristar individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of:

> all persons in the United States who purchased and own a Power Pressure Cooker XL (the "Nationwide Class").

70.     Plaintiff Chapman further brings this action on behalf of:

> all persons who reside in Ohio who purchased and own a Power Pressure Cooker XL (the "Ohio Class").

71.     Plaintiff Vennel further brings this action on behalf of:

> all persons who reside in Pennsylvania who purchased and own a Power Pressure Cooker XL (the "Pennsylvania Class").

72.     Plaintiff Jackson further brings this action on behalf of:

> All persons who reside in Colorado who purchased and own a Power Pressure Cooker XL (the "Colorado Class").

73.     The Nationwide Class, Ohio Class, Pennsylvania Class, and Colorado Class are collectively referred to herein as the "Class" or "Classes."  Excluded from the Classes are: (a) any judge presiding over this action and members of their family; and (b) all officers, directors and employees of Tristar.

74.     Numerosity:  The members of each Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is presently unknown, each Class consists of thousands of people.  The exact number of Class members can be determined by Tristar's sales information and other records.

75.    <u>Commonality</u>:  Common questions of law and fact exist as to all members of each

Class, including, without limitation:

    a.    Whether the Pressure Cooker designed and sold by Tristar possesses a material defect;

    b.    Whether the Defect creates an unreasonable risk that the Pressure Cooker will trap built-up pressure and cause the product to fail;

    c.    Whether Tristar knew or should have known that the Pressure Cooker possessed the Defect at the time of sale;

    d.    Whether Tristar fraudulently concealed the Defect;

    e.    Whether Tristar breached express warranties relating to the Pressure Cooker;

    f.    Whether Tristar breached implied warranties of merchantability relating to the Pressure Cooker;

    g.    Whether the Defect resulted from Tristar's negligence;

    h.    Whether Tristar is strictly liable for selling the Pressure Cooker;

    i.    Whether Plaintiffs and Class members are entitled to damages;

    j.    Whether Plaintiffs and Class members are entitled to replacement or repair of their defective Pressure Cooker; and

    k.    Whether Plaintiffs and Class members are entitled to equitable relief, including an injunction requiring that Tristar engage in a corrective notice campaign and/or a recall.

76.    <u>Typicality</u>:  Plaintiffs have the same interest in this matter as all Class members,

and Plaintiffs' claims arise out of the same set of facts and conduct by Tristar as the claims of all

Class members.  Plaintiffs' and Class members' claims all arise out of Tristar's design and sale

of the defective Pressure Cooker that has created a significant safety risk to consumers, and from

Tristar's failure to disclose the Defect.

77.    <u>Adequacy of Representation</u>:  Plaintiffs are committed to pursuing this action and

have retained competent counsel experienced in consumer and product liability class action

litigation.  Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of the Class members.

78.  <u>Injunctive/Declaratory Relief</u>:  The elements of Rule 23(b)(2) are met.  Tristar will continue to commit the unlawful practices alleged herein, and Class members will remain at an unreasonable and serious safety risk as a result of the Defect.  Tristar has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

79.  <u>Predominance</u>:  The elements of Rule 23(b)(3) are met.  The common questions of law and fact enumerated above predominate over the questions affecting only individual Class members, and a class action is the superior method for the fair and efficient adjudication of this controversy.  The likelihood that individual Class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.  Serial adjudication in numerous venues is not efficient, timely, or proper.  Judicial resources will be unnecessarily depleted by resolution of individual claims.  Joinder on an individual basis of hundreds or thousands of claimants in one suit would be impractical or impossible.  Individualized rulings and judgments could result in inconsistent relief for similarly-situated plaintiffs.

## TOLLING OF THE STATUTES OF LIMITATIONS

80.  The claims alleged herein accrued upon the discovery of the Defect which manifests itself when the Pressure Cooker fails.  Because the Defect is hidden and Tristar failed to disclose the true character, nature, and quality of the Pressure Cooker, Plaintiffs and the Class members did not discover, and could not have discovered, the Defect through reasonable and diligent investigation.  Thus, any applicable statutes of limitations have been tolled by Tristar's knowledge, misrepresentation, and/or concealment and denial of the facts as alleged herein.

Plaintiffs and the Class members could not have reasonably discovered the Defect before it manifests.  As a result of Tristar's active and continuing concealment of the Defect and/or failure to inform Plaintiffs and the Class of the Defect, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Breach of Express Warranty**
**(on behalf of Plaintiffs and all Classes)**

81.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

82.     In connection with its sale of the Pressure Cooker, Tristar expressly warranted that it was free from defects, made for years of dependable operation, and made from merchantable materials and workmanship.

83.     In Tristar's "Owner's Manual," which accompanied the sale of the Pressure Cooker to consumers, Tristar expressly represented that: "[t]he Power Pressure Cooker XL will provide you many years of delicious family meals. . . ."[19]

84.     The Owner's Manual further states: "The manufacturer warrants that your Power Pressure Cooker XL is free of defects in materials and workmanship and will, at its option, repair or replace any defective Power Pressure Cooker XL that is returned to it."[20]

85.     The Owner's Manual provides: "Repair or replacement of the product (or, if repair or replacement is not feasible, a refund of the purchase price) is the exclusive remedy of the consumer under this warranty."[21]

---

[19] Ex. A at 2.
[20] *Id.* at 17.
[21] *Id.*

86.     Furthermore, in its Owner's Manual and other promotional materials, Tristar represents that the Pressure Cooker contains built-in safety features, including a "lid safety device" that "prevents [the] lid from opening until all pressure is released."[22]

87.     The Pressure Cooker is defectively designed as a whole unit and is covered by Tristar's Limited Warranty, set forth above.

88.     Each Pressure Cooker has an identical or substantially identical warranty.

89.     Plaintiffs and the Class have privity of contract with Tristar through their purchase of the Pressure Cooker, and through the express written and implied warranties that Tristar issued to its customers.  Tristar's warranties accompanied the Pressure Cooker and were intended to benefit consumers of the Pressure Cooker.  To the extent Class members purchased the Pressure Cooker from third-party retailers, privity is not required because the Class members are intended third-party beneficiaries to the contracts between Tristar and third-party retailers.

90.     The express written warranties covering the Pressure Cooker were a material part of the bargain between Tristar and consumers.  At the time it made these express warranties, Tristar knew of the purpose for which the Pressure Cooker was to be used.

91.     Tristar breached its express warranties by selling the Pressure Cooker that was, in actuality, not free of defects, not made for years of dependable operation, not made from merchantable material and workmanship, and could not be used for the ordinary purpose of preparing meals at home.  Tristar breached its express written warranties to Plaintiffs and Class members in that the Pressure Cooker contains the Defect on the very first day of purchase, creating a serious safety risk to Plaintiffs and Class members.

---

[22] *Id.* at 5.

92.     The Pressure Cookers that Plaintiffs purchased were subject to the Defect and caused each of them significant personal injury.

93.     Tristar expressly warranted in writing that it would repair or replace any defect in the Pressure Cooker, or refund the purchase price of the Pressure Cooker if repair or replacement is not feasible.

94.     Plaintiffs notified Tristar of its breach of the express warranty shortly after their Pressure Cookers failed to perform as warranted as a result of the Defect.

95.     Tristar breached its express warranty to repair or replace the defective Pressure Cooker when it failed to do so despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing the Pressure Cooker.

96.     To the extent that Tristar has repaired or replaced the defective parts, the warranty of repair or replacement fails in its essential purpose because it is insufficient to make Plaintiffs and Class members whole and/or because Tristar has failed to provide the promised remedy within a reasonable time.

97.     Many of the damages resulting from the defective Pressure Cooker cannot be resolved through the limited remedy of repair or replacement, as incidental and consequential damages have already been suffered due to Tristar's conduct as alleged herein.

98.     Accordingly, recovery by Plaintiffs and Class members is not limited to the limited warranty of repair or replacement, and they seek all remedies allowed by law.

99.     Upon information and belief, Tristar received further notice and has been on notice of the Defect and of its breaches of express and implied warranties through customer warranty claims reporting problems with the Pressure Cooker, customer complaints, and its own

internal and external testing.  Tristar also received such notice through plaintiffs who complained to Tristar about the defective Pressure Cooker, as described above.

100.    Despite having notice and knowledge of the Defect, Tristar failed to provide Defect-free Pressure Cookers to Plaintiffs and Class members, failed to provide free repairs of the defective Pressure Cooker, and failed to provide any form of compensation for the damages resulting from the Defect.

101.    As a result of Tristar's breach of its express written warranties, Plaintiffs and Class members have suffered damages.

**SECOND CLAIM FOR RELIEF**
**Breach of Implied Warranty of Merchantability**
**(On behalf of Plaintiffs and all Classes)**

102.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

103.    The Pressure Cooker purchased by Plaintiffs and Class members was defectively designed and manufactured and posed a serious and immediate safety risk to consumers and the public.

104.    All of the Pressure Cookers sold by Tristar left Tristar's facilities and control with a Defect caused by a defective design incorporated into the manufacture of the Pressure Cookers.

105.    The Defect placed and/or places Plaintiffs and Class members at a serious safety and property damage risk upon using the Pressure Cooker in their homes.

106.    The law imposes a duty requiring manufacturers or sellers of a product to ensure that the product is merchantable and reasonably fit for the ordinary purposes for which such a product is used, and that the product is acceptable in trade for the product description.  This

implied warranty of merchantability is part of the basis of the bargain between Tristar and consumers, including Plaintiffs and the Class members.

107.    Notwithstanding the aforementioned duty, at the time of delivery, Tristar breached the implied warranty of merchantability in that the Pressure Cooker is defective and poses a serious safety risk, was not fit for the ordinary purposes for which it was used, would not pass without objection, and failed to conform to the standard performance of like products.

108.    Tristar knew, or should have known, that the Pressure Cooker posed a safety risk and was defective, and that it breached the implied warranties at the time it sold the Pressure Cooker to Plaintiffs and Class members or otherwise placed them into the stream of commerce.

109.    Plaintiffs and Class members have privity of contract with Tristar through their purchase of the Pressure Cooker from Tristar, and through the express written and implied warranties that Tristar issued to its customers.  Tristar's warranties accompanied the Pressure Cooker and were intended to benefit the ultimate consumers.  To the extent that Class members purchased the Pressure Cooker from third-party retailers, privity is not required because Plaintiffs and Class members are intended third-party beneficiaries to the contracts between Tristar and the third-party retailers.

110.    As a direct and proximate result of Tristar's breach of the implied warranties, Plaintiffs and Class members bought the Pressure Cooker without knowledge of the Defect or the serious safety risks.

111.    As a direct and proximate result of Tristar's breach of the implied warranties, Plaintiffs and Class members purchased unsafe Pressure Cookers that were not fit to be used for their intended purpose of preparing food in a residential setting.

112.    Plaintiffs notified Tristar of its breach of the implied warranties shortly after their Pressure Cookers failed to perform as warranted as a result of the Defect.

113.    Tristar received further notice of the Defect and of its breaches of express and implied warranties through customer warranty claims reporting problems with the Pressure Cooker, customer complaints, and its own internal and external testing.  Tristar also received notice through plaintiffs who complained to Tristar about the Defect as described above.

114.    Despite having notice and knowledge of the Defect, Tristar failed to provide Defect-free Pressure Cookers to Plaintiffs and Class members, failed to provide free repairs of the defective Pressure Cooker, and failed to provide any form of compensation for the damages resulting from the Defect.

115.    As a direct and proximate result of Tristar's breach of the implied warranties, Plaintiffs and Class members have suffered damages.

### THIRD CLAIM FOR RELIEF
**Negligence**
**(On behalf of Plaintiffs and all Classes)**

116.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

117.    Tristar owed a duty to Plaintiffs and Class members to design, manufacture, produce, test, inspect, market, distribute, and sell the Pressure Cooker with reasonable care and in a workmanlike fashion, and also had a duty to protect Plaintiffs and Class members from foreseeable and unreasonable risks of harm.  Tristar breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting, and selling the Pressure Cookers.

118.    Tristar also acted unreasonably in failing to provide appropriate and adequate warnings and instructions, and the failure to provide adequate warnings and instructions was a proximate cause of the harm for which damages are sought.

119.    In addition, at the time the Pressure Cookers left Tristar's control without an adequate warning or instruction, they constituted unreasonably dangerous articles that Tristar knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable consumer.  Tristar knew or should have known that the Pressure Cooker it designed, manufactured, produced, tested, inspected, marketed, distributed, and/or sold would, during ordinary and foreseeable use, create an unreasonable safety risk and fail to perform as intended.

120.    At the time of the design or manufacture of the Pressure Cooker, Tristar acted unreasonably in designing or manufacturing them, and this conduct proximately caused the harm for which damages are sought.

121.    Further, at the time the Pressure Cookers left the control of Tristar, it unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design that could have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the Pressure Cooker.  At the time the Pressure Cookers left the control of Tristar, their design was so unreasonable that no reasonable person, aware of the relevant facts, would use or purchase them.

122.    Tristar knew or should have known that the Pressure Cooker created an unreasonable safety risk as a result of the Defect, and that the Defect could cause personal injury and/or property damage.

26

123.   Based on its knowledge, Tristar had a duty to disclose to Plaintiffs and Class members the serious safety risks posed by the Pressure Cooker, in addition to a duty to disclose the nature of the Defect.

124.   Tristar had a further duty not to put the defective products on the market, had a continuing duty to remove its unsafe Pressure Cooker from the market, and also had a duty to seek a recall from consumers.

125.   Tristar failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of the Pressure Cooker by, among other things, failing to design and manufacture the Pressure Cooker in a manner to ensure that, under normal and intended usage, a serious safety risk such as the one posed by the Defect did not occur.

126.   Tristar failed to exercise reasonable care in failing to warn or to warn adequately and sufficiently, either directly or indirectly, of the Defect.

127.   Tristar failed to exercise reasonable care when it knew of the safety risks the Defect posed and actively concealed those risks from Plaintiffs and Class members.

128.   Tristar failed to exercise reasonable care when it knew of the safety risks posed by the Defect and failed to replace, repair, or recall Pressure Cookers it knew or should have known were unsafe and defective.

129.   As a direct and proximate result of Tristar's negligence, Plaintiffs and the Class members bought the Pressure Cooker without knowledge of the Defect or of the serious safety risk, and purchased an unsafe product that could not be used for its intended purpose.

130.   As a direct and proximate result of Tristar's negligence, Plaintiff and the Class members have suffered damages.

## FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (On behalf of Plaintiffs and all Classes)

131.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

132.   This alternative claim is asserted on behalf of Plaintiffs and Class members to the extent there is any determination that any contracts between Class members and Tristar do not govern the subject matter of the disputes with Tristar, or that Plaintiffs do not have standing to assert any contractual claims against Tristar.

133.   Plaintiffs and Class members conferred a benefit on Tristar, and Tristar had knowledge of this benefit.  By its wrongful acts and omissions described herein, including selling the defective Pressure Cooker, Tristar was unjustly enriched at the expense of Plaintiffs and Class members.

134.   Plaintiffs' and Class members' detriment and Tristar's enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

135.   It would be inequitable for Tristar to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the Pressure Cooker.

136.   Plaintiff and Class members seek restitution from Tristar and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Tristar from its wrongful conduct, and establishing a constructive trust from which Plaintiffs and Class members may seek restitution.

**FIFTH CLAIM FOR RELIEF**
**Strict Product Liability–Manufacturing and Design Defect and Failure to Warn**
**(On behalf of Plaintiffs and all Classes)**

137.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

138.   Tristar designed, developed, tested, manufactured, distributed, marketed, and/or sold the Pressure Cooker to Plaintiffs and the Class.

139.   The Pressure Cookers were defective in their manufacture and design, and contained the Defect when they left Tristar's control.

140.   Tristar could have implemented or adopted reasonable and feasible alternative designs, materials, and/or manufacturing methods to remedy the Defect but failed to do so.

141.   The risk of harm associated with the Pressure Cooker outweighs its intended and foreseeable benefit.  The ability to quickly prepare meals at home does not outweigh the risk of the Pressure Cooker erupting and inflicting significant personal injury.

142.   Tristar's Pressure Cooker reached Plaintiffs and the Class members in the same condition as when it left Tristar's control.

143.   Tristar knew or should have known that the Pressure Cookers were defective and posed a real risk of trapping built-up pressure and erupting during their regular use.

144.   The Pressure Cooker was more dangerous than a reasonably prudent consumer would expect when used in an intended and reasonably foreseeable manner.

145.   Plaintiffs and the Class members were unaware of the risk of harm posed by the Pressure Cooker.

146.    Tristar failed to inform Plaintiffs and Class members as to the Pressure Cooker's susceptibility to erupt, causing scalding hot contents to discharge, resulting in significant personal injury and/or property damage.

147.    Tristar failed to provide a warning that a reasonable manufacturer would have provided in light of the likelihood that the Pressure Cooker would erupt and in light of the serious harm that may result from the Defect.

148.    The Pressure Cooker was defective due to inadequate warnings, inadequate inspection and testing, and/or inadequate reporting concerning the results of quality control testing, or lack thereof.

149.    Had Plaintiffs and Class members been adequately warned concerning the likelihood that the Pressure Cooker would erupt, they would have taken steps to avoid damages by not purchasing them.

150.    Upon learning that its Pressure Cooker could trap built-up pressure and erupt, Tristar had a duty to warn consumers of the possibility that the Defect could cause severe injury to persons and/or property, even when used for their intended purpose.

151.    As a direct and proximate result of the defective condition of the Pressure Cooker, Plaintiffs and Class members have incurred or are at risk of incurring damages to their persons and to their personal and/or real property in an amount to be determined at trial.

**SIXTH CLAIM FOR RELIEF**
**Violation of the Ohio Product Liability Act (Ohio Rev. Code Ann. § 2307.71, *et seq.*)**
**(On behalf of Plaintiff Chapman and the Ohio Class)**

152.    Plaintiff Chapman re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

153.    Tristar designed, developed, tested, manufactured, distributed, marketed, and/or sold the Pressure Cooker to Plaintiff Chapman and the Ohio Class.

154.    The Pressure Cooker was defective in in its manufacture and design and contained the Defect when it left Tristar's control.

155.    Tristar knew or should have known that the Pressure Cooker would reach Plaintiff Chapman and the Ohio Class members without substantial change in the condition in which they were sold by Tristar.

156.    The risk of harm associated with the Pressure Cooker outweighs its intended and foreseeable benefit.  The ability to quickly prepare meals at home does not outweigh the risk of the Pressure Cooker erupting and inflicting significant personal injury.

157.    Tristar could have implemented technically and economically feasible alternative designs that would have resulted in safer pressure cookers without comprising their usefulness or desirability.

158.    The Pressure Cooker was more dangerous than a reasonably prudent consumer would expect when used in an intended and reasonably foreseeable manner.

159.    Plaintiff Chapman and the Ohio Class Members were unaware of the risk of harm posed by the Pressure Cooker.

160.    Tristar knew or in the exercise of reasonable care should have known that the Pressure Cooker was defective and posed a real risk of trapping built-up pressure and erupting during intended and foreseeable use.

161.    Tristar failed to act reasonably in the design, manufacture, and sale of the Pressure Cooker.

162.    Tristar failed to exercise reasonable care and warn Plaintiff Chapman and the Ohio Class members about the Pressure Cooker's susceptibility to erupt, causing scalding hot contents to discharge, and resulting in significant personal injury and/or property damage.

163.    Tristar failed to provide a warning that a reasonable manufacturer would have provided in light of the likelihood that the Pressure Cooker would erupt and in light of the serious harm that may result from the Defect.

164.    Had Plaintiff Chapman and the Ohio Class members been adequately warned concerning the likelihood that the Pressure Cookers would erupt, they would have taken steps to avoid damages by not purchasing them.

165.    The Pressure Cookers did not conform to the warranties and representations Tristar made to Plaintiff Chapman and the Ohio Class, including that the Pressure Cookers were free from defects and contained built-in safety features.

166.    As a direct and proximate result of Tristar's violation of the Ohio Product Liability Act, Plaintiff Chapman and the Ohio Class members have incurred or are at risk of incurring damages to their persons and to their personal and/or real property in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
**Violation of the Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. 1345, *et seq*.)**
**(On behalf of Plaintiff Chapman and the Ohio Class)**

167.    Plaintiff Chapman re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

168.    The Ohio Consumer Sales Practices Act prohibits unfair, deceptive, and unconscionable practices in consumer sales transactions, Ohio Rev. Code Ann.  § 1345.02 (A), including, but not limited to:

    a.   Representing that the product has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;  and

    b.   Representing that the product is of a particular standard, quality, grade, style, prescription, or model, if it is not.

169.    Tristar has engaged in unfair, deceptive, and unconscionable practices by:  (a) marketing and selling the defective Pressure Cooker; (b) intentionally failing to disclose and/or concealing the known Defect and risks; and (c) warranting that the Pressure Cooker is free from defects and possess built-in safety features.

170.    Tristar warranted and represented that the Pressure Cooker was safe and free from defects in materials and workmanship and that it possessed built-in safety features, including a lid safety device, which would influence a reasonable consumer's decision whether to purchase the Pressure Cooker.

171.    Tristar's failure to warn of the Defect was a material omission that would influence a reasonable consumer's decision whether to purchase the Pressure Cooker.

172.    Plaintiff Chapman and the Ohio Class members were aware of Tristar's representations regarding the characteristics, qualities, and standards of the Pressure Cooker due to the representations contained in the Owner's Manual and other promotional materials relating to the Pressure Cooker.

173.    Plaintiff Chapman and the Ohio Class members relied on the truth of Tristar's warranties and representations concerning the Pressure Cookers and they suffered personal and property damages as result of this reliance.

174.    Had Plaintiff Chapman and the Ohio Class members been adequately warned concerning the Defect and the likelihood that the Pressure Cooker would erupt, they would have taken steps to avoid damages by not purchasing them.

175.    Tristar has acted and continues to act in the face of prior notice as to the existence of the Defect.

176.    As a direct and proximate result of Tristar's violations of the Ohio Consumer Sales Practices Act, Plaintiff Chapman and the Ohio Class members have been injured in an amount to be proven at trial.

**EIGHTH CLAIM FOR RELIEF**
**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**(On behalf of Plaintiff Vennel and the Pennsylvania Class)**

177.    Plaintiff Vennel re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

178.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCL"), 73 Pa. Cons. Stat. § 201-1, *et seq.*, protects consumers from fraud and unfair or deceptive business practices.

179.    Under the UTPCPL, representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have is unlawful.

180.    Tristar warranted and represented that the Pressure Cooker was safe and free of defects in materials and workmanship and that they possessed "built-in safety features," including a "lid safety device."

181.    Tristar's warranty and representations that the Pressure Cooker was safe and free from defects, including that they possessed built-in safety features, would influence a reasonable consumer's decision whether to purchase the Pressure Cooker.

182.    Tristar's failure to warn of the Defect was a material omission that would influence a reasonable consumer's decision whether to purchase the Pressure Cooker.

183.    Plaintiff Vennel and the Pennsylvania Class members were aware of Tristar's representations regarding the characteristics, qualities, and standards of the Pressure Cooker due to the representations contained in the Owner's Manual and other promotional materials relating to the Pressure Cooker.

184.    Plaintiff Vennel and the Pennsylvania Class relied on the truth of Tristar's warranties and representations concerning the Pressure Cooker and they suffered personal and property damages as result of this reliance.

185.    Had Plaintiff Vennel and the Pennsylvania Class members been adequately warned concerning the likelihood that the Pressure Cooker would erupt, they would have taken steps to avoid damages by not purchasing this product.

186.    As a direct and proximate result of Tristar's unfair and deceptive acts or practices alleged herein, Plaintiff Vennel and the Pennsylvania Class have incurred damages in an amount to be determined at trial.

**NINTH CLAIM FOR RELIEF**
**Breach of Express Warranty (13 Pa.C.S. § 2313)**
**(On behalf of Plaintiff Vennel and the Pennsylvania Class)**

187.    Plaintiff Vennel re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

188.    Tristar had knowledge of the Defect and that it posed a serious risk to consumers such as Plaintiff Vennel and the Pennsylvania Class.

189.    Despite its knowledge, in selling the Pressure Cooker, Tristar expressly warranted in writing to repair or correct defects in materials and workmanship.  Tristar has not repaired or corrected, and has been unable to repair or correct, the Pressure Cooker's materials, workmanship, and/or design Defect.

190.    Furthermore, in the Owner's Manual, Tristar represents that the Pressure Cooker possesses built-in safety features, including a "lid safety device" that "prevents [the] lid from opening until all pressure is released."

191.    These warranties, affirmations, and promises were part of the basis of the bargain between Tristar and Plaintiff Vennel and the Pennsylvania Class members who relied on the existence of the express warranties.  Tristar's express warranty became a basis for the bargain between Tristar and Plaintiff Vennel and the Pennsylvania Class members.

192.    By selling the Pressure Cooker containing the Defect to consumers including Plaintiff Vennel and the Pennsylvania Class members, Tristar breached its express warranty to provide Pressure Cookers that were free from defects.

193.    Plaintiff Vennel notified Tristar of its breach of the express warranty shortly after her Pressure Cooker failed to perform as warranted as a result of the Defect.

194.    Tristar breached its express warranty to repair or correct material defects or component malfunctions in the Pressure Cooker when it failed to do so despite knowing of the Defect and of alternative designs, materials and/or options for manufacturing the Pressure Cooker.

195.    Furthermore, any "repairs" that Tristar offers do not remedy the safety issue inherent in the Pressure Cooker and are not adequate to remedy the serious risk of personal injury and property damage.

196.    The warranty to repair or replace the Pressure Cooker fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Vennel and the Pennsylvania Class members whole and/or because Tristar has refused to provide the promised remedies within a reasonable time.

197.    At the time Tristar warranted and sold the Pressure Cooker, it knew that the product did not conform to the express warranty and was inherently defective, and Tristar wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Pressure Cooker.

198.    Accordingly, Plaintiff Vennel and the Pennsylvania Class members are not limited to the warranty of repair and seek all remedies allowed by law.

199.    As described herein, Tristar was provided with notice and has been on notice of the Defect and of its breach of its express written warranty through consumer warranty claims, customer complaints, and its own internal and external testing, but it failed to repair or replace the Pressure Cooker to ensure that it was free from defects as Tristar promised.

200.    As a direct and proximate result of the breach of express warranty alleged herein, Plaintiff Vennel and the Pennsylvania Class members have incurred damages in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF
### Breach of Implied Warranty of Merchantability (13. Pa.C.S. § 2314)
### (On behalf of Plaintiff Vennel and the Pennsylvania Class)

201.    Plaintiff Vennel re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

202.    Tristar's implied warranty of merchantability accompanied its sale of the Pressure Cooker to Plaintiff Vennel and the Pennsylvania Class members.

203.    Tristar impliedly warranted that the Pressure Cooker was fit for its ordinary use and that it would pass without objection in the trade under the contract description.

204. Tristar's design of the Pressure Cooker made it defective and, therefore, unfit for the ordinary purposes for which it is used.  The Pressure Cooker would not pass without objection in the trade under the contract description.

205. Any effort by Tristar to disclaim or otherwise limit its responsibility for its defective Pressure Cooker is unconscionable under the circumstances because Tristar knew that its Pressure Cooker was unfit for normal use.

206. Plaintiff Vennel has provided notice to Tristar regarding the problems she experienced with her Pressure Cooker and, notwithstanding such notice, Tristar has failed and refused to remedy the problems.

207. As a result of Tristar's breach of the implied warranty of merchantability, Plaintiff Vennel and the Pennsylvania Class members have incurred damages in an amount to be determined at trial.

## ELEVENTH CLAIM FOR RELIEF
### Violation of the Colorado Consumer Protection Act (Colo. Rev. Stat. § 6-1-101, *et seq.*)
### (On behalf of Plaintiff Jackson and the Colorado Class)

208. Plaintiff Jackson re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

209. The Colorado Consumer Protection Act, Colo Rev. Stat. § 6-1-101, *et seq.*, states:

(1) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person:
. . . .
(e) Knowingly makes false representations as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith;
. . . .
(g) Represents that goods, food, services, or property are of a particular standard, quality, or grade, or that the goods are of a particular style or model, if he knows or should know that they are of another.

38

210. Tristar knowingly made false representations as to the characteristics and quality of the Pressure Cooker because Tristar warranted that it was free from defects in workmanship or materials and possessed built-in safety features.

211. When the Pressure Cooker left Tristar's control, Tristar knew or should have known that they were in defective condition and the built-in safety features did not work as warranted by Tristar.

212. Tristar's warranty and representations that the Pressure Cooker was safe and free from defects in materials and workmanship and that it possessed built-in safety features, including a lid safety device, would influence a reasonable consumer's decision whether to purchase the Pressure Cooker.

213. Tristar's failure to warn of the Defect was a material omission that would influence a reasonable consumer's decision whether to purchase the Pressure Cooker.

214. Plaintiff Jackson and the Colorado Class members were aware of Tristar's representations regarding the characteristics and quality of the Pressure Cooker due to the representations contained in the Owner's Manual and other promotional materials.

215. Plaintiff Jackson and the Colorado Class members relied on the truth of Tristar's warranties and representations concerning the Pressure Cooker and they suffered personal injuries and/or property damages as result of this reliance.

216. Had Plaintiff Jackson and the Colorado Class members been adequately warned about the likelihood that the Pressure Cooker would erupt, they would have taken steps to avoid damages by not purchasing this product.

217. As a direct and proximate result of Tristar's false representations, Plaintiff Jackson and the Colorado Class have suffered damages in an amount to be determined at trial.

**TWELFTH CLAIM FOR RELIEF**
**Violation of the Colorado Product Liability Act (Colo. Rev. Stat. § 13-21-401, *et seq*.)**
**(On behalf of Plaintiff Jackson and the Colorado Class)**

218.    Plaintiff Jackson re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

219.    Tristar designed, developed, tested, manufactured, distributed, marketed, and/or sold the Pressure Cooker to Plaintiff Jackson and the Colorado Class members.

220.    When the Pressure Cookers left Tristar's control, they were in a condition unreasonably dangerous to Plaintiff Jackson and the Colorado Class.

221.    Tristar knew or should have known that its Pressure Cooker would reach Plaintiff Jackson and the Colorado Class members without substantial change in the condition in which they were sold by Tristar.

222.    The risk of harm associated with the Pressure Cooker outweighs its intended and foreseeable benefit.  The ability to quickly prepare meals at home does not outweigh the risk of the Pressure Cooker erupting and inflicting significant personal injury.

223.    Tristar could have implemented technically and economically feasible alternative designs that would have resulted in safer pressure cookers without comprising their usefulness or desirability.

224.    The Pressure Cooker was more dangerous than a reasonably prudent consumer would expect when used in an intended and reasonably foreseeable manner.

225.    Plaintiff Jackson and the Colorado Class members were unaware of the risk of harm posed by the Pressure Cooker.

226.    Tristar knew or, in the exercise of reasonable care, should have known that the Pressure Cooker was defective and posed a real risk of trapping built-up pressure and erupting during intended and foreseeable use.

227.    Tristar failed to act reasonably in the design, manufacture, and sale of the Pressure Cooker.

228.    Tristar failed to exercise reasonable care and warn Plaintiff Jackson and the Colorado Class members about the Pressure Cooker's susceptibility to erupt, causing scalding hot contents to discharge from the Pressure Cookers, and resulting in significant personal injury and/or property damage.

229.    Tristar failed to provide a warning that a reasonable manufacturer would have provided in light of the likelihood that the Pressure Cooker would erupt and in light of the serious harm that may result from the Defect.

230.    Had Plaintiff Jackson and the Colorado Class members been adequately warned about the likelihood that the Pressure Cooker would erupt, they would have taken steps to avoid damages by not purchasing this product.

231.    But for Tristar's conduct and breach of the duty of reasonable care, Plaintiff Jackson and the Colorado Class would not have suffered the damages alleged herein.

232.    Tristar misrepresented to Plaintiff Jackson and the Colorado Class members the characteristics, quality, and safety of the Pressure Cooker, including misrepresentations as to the inclusion of purported "built-in safety features" and the omission of information related to the Defect.

233.    Reasonable consumers would rely on Tristar's warranties and misrepresentations as to the characteristics, quality, and safety of the Pressure Cooker in deciding whether to purchase this product.

234.    Plaintiff Jackson and the Colorado Class members relied on Tristar's warranties and misrepresentations as to the quality and safety of the Pressure Cooker in purchasing them.

235.    As a direct and proximate result of Tristar's conduct, Plaintiff Jackson and the Colorado Class have sustained damages.

### THIRTEENTH CLAIM FOR RELIEF
**Injunctive and Declaratory Relief**
**(On behalf of Plaintiffs and all Classes)**

236.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

237.    There is an actual controversy between Tristar, Plaintiffs, and Class members concerning the existence of the Defect in the Pressure Cooker.

238.    Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

239.    Accordingly, Plaintiffs and Class members seek a declaration that the Pressure Cooker has a common Defect in its design and/or manufacture.

240.    Additionally, Plaintiffs and Class members seek a declaration that this common Defect poses a serious safety risk to consumers and the public.

241.    Tristar designed, manufactured, produced, tested, inspected, marketed, distributed, and sold the Pressure Cooker which contains a material and dangerous Defect as described herein, and continues to do so.

242.    Based upon information and belief, Tristar has taken no corrective action concerning the Defect, and has not issued any warnings or notices concerning the dangerous Defect, nor implemented a product recall.

243.    Plaintiffs and Class members have suffered actual damage or injury or are in immediate risk of suffering actual damage or injury due to the Defect.  Tristar should be required to take corrective action to prevent further injuries, including:  (a) issuing a nationwide recall of the Pressure Cooker; (b) issuing warnings and/or notices to consumers and the Class concerning the Defect; and (c) immediately discontinuing the manufacture, production, marketing, distribution, and sale of the defective Pressure Cooker.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all causes of action so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following judgment:

A.    An Order certifying this action as a class action on behalf of the Nationwide Class, Ohio Class, Pennsylvania Class, and Colorado Class;

B.    An Order appointing Plaintiffs as the Class representatives, and appointing the undersigned counsel as Class Counsel;

C.    A Declaration that the Pressure Cooker is defective;

D.    An Order awarding injunctive relief by requiring Tristar, at its own expense, to issue corrective actions, including notification, recall, inspection, and, as necessary, repair and replacement of the Pressure Cooker;

E.    Payment to Plaintiffs and all Class members of all damages associated with or caused by the defective Pressure Cooker, in an amount to be proven at trial;

F.       An award of attorneys' fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class;

G.       Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

H.       Such other and further relief as this Court may deem just, equitable, or proper.

Dated:  May 10, 2016                                 Respectfully submitted,


By: s/Drew Legando
Jack Landskroner (0059227)
Drew Legando (0084209)
**LANDSKRONER GRIECO MERRIMAN, LLC**
1360 West 9th Street, Ste. 200
Cleveland, OH 44113-1254
Telephone: (216) 522-9000
Facsimile: (216) 522-9007
jack@lgmlegal.com
drew@lgmlegal.com

Gregory F. Coleman (*pro hac vice pending*)
Lisa A. White (*pro hac vice pending*)
Mark E. Silvey (*pro hac vice pending*)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
Facsimile: (865) 533-0049
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com
mark@gregcolemanlaw.com

Edward A. Wallace (*pro hac vice pending*)
Tyler J. Story (*pro hac vice pending*)
**WEXLER WALLACE LLP**
55 W. Monroe Street, Ste. 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 246-0022
eaw@wexlerwallace.com
tjs@wexlerwallace.com

Shanon J. Carson (*pro hac vice pending*)
Arthur Stock (*pro hac vice* pending)
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA  19103
Telephone: (215) 875-4656
Facsimile: (215) 875-4604
scarson@bm.net
astock@bm.net

*Attorneys for Plaintiffs*

45