UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH CHAPMAN, et al., | ) | CASE NO.   1:16-CV-1114 |
| | ) | |
| Plaintiffs | ) | JUDGE JAMES S. GWIN |
| | ) | |
| vs. | ) | |
| | ) | |
| TRISTAR PRODUCTS , INC., | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

---

**TRISTAR PRODUCTS, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

---

Respectfully submitted,


/s/ Hugh J. Bode
Hugh J. Bode (0000487)
Martin T. Galvin (0063624)
REMINGER CO., L.P.A.
101 West Prospect Avenue, Suite 1400
Cleveland, Ohio 44115
(216) 687-1311 phone
hbode@reminger.com
mgalvin@reminger.com
Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................... i

TABLE OF AUTHORITIES ............................................................................... iii

STATEMENT OF ISSUES TO BE DECIDED ..................................................... vii

SUMMARY OF ARGUMENT ............................................................................ ix

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................. 3

        A.      Overview of Plaintiffs' Complaint.................................................. 3

        B.      Plaintiffs' Mistaken Factual Assertions about the CPSC ................................. 4

        C.      Plaintiffs' Mistaken Factual Assertions about UL Standard 1026.................... 4

        D.      Plaintiffs' Expert's Opinion is Based Upon Forcing The Covers of the
                Pressure Cookers Open In A Manner Different From Plaintiffs' Use.............. 5

III.    PLAINTIFFS HAVE NOT MET THEIR RULE 23 BURDEN ................................... 5

        A.      Class Certification Standard .................................................... 5

        B.      Plaintiffs' Expert Demonstrates That Plaintiffs Are Not Typical Of The
                Putative Class And Their Claims Are Not Common To The Proposed Class ......7

        C.      Plaintiffs' Proposed Class Is Over Inclusive Because There Is No
                Evidence Of Any Widespread Defect Or Consumer Harm ............................. 9

        D.      Plaintiffs' Proposed Class Is Over Inclusive Because There Is No
                Evidence Of Any Breach Of Express Warranty ................................. 12

        E.      Plaintiffs' Motion Should Be Denied Because Individual Issues..................... 14
                Predominate

        F.      Plaintiffs' Motion Should Be Denied Because They Have Introduced No
                Reliable Damages Model or Damages Expert Testimony ................................ 16

IV.     THE NATIONWIDE CLASS SHOULD BE STRICKEN........................................... 18

V.      CONCLUSION ................................................................................. 20

CERTIFICATE OF SERVICE ................................................................................................ 21

# TABLE OF AUTHORITIES

<u>Cases</u>

*Birdsong v. Apple, Inc.*,
   590 F.3d 955, 961 (9th Cir. 2009) ............................................................................ 11

*BMW, Inc.* v. *Dufficy & Sons, Inc.*
   99 P. 3d *66*, (Sup. Ct of Col. 2004) ......................................................................... 3

*Briehl v. Gen. Motors Corp.*,
   172 F.3d 623, 630 (8ᵗʰ Cir. 1999) ............................................................... 10, 11, 12

*Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co*,
   42 Ohio St. 3d 40, (1989) .......................................................................................... 3

*Clay v. Am. Tobacco Co.*,
   188 F.R.D. 483, 490 (S.D. Ill. 1999) ........................................................................ 10

*Cole v. GMC*,
   484 F.3d 717, 724-730 (5th Cir. 2007) ..................................................................... 19

*Colley v. Procter & Gamble Co.*,
   2016 WL 5791658 (S.D. Ohio Oct. 4, 2016) ............................................................ 19

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ................................................................... iv, v, ix, 7, 17

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804, 809 (2011) .......................................................................................... 14

*Faralli v. Hair Today, Gone Tomorrow*,
   No. 1:06-cv-504, 2007 WL 120664, at *7 (N.D. Ohio Jan. 10, 2007) ...................... 12

*Gen. Tel. Co. v. Falcon*,
   457 U.S. 147, 160 (1982) ............................................................................................ 5

*Gentk Building Prods., Inc. v. Sherwin-Williams Co.*,
   No. 1:02-cv-00013, Slip Op. at 19-20 (N.D. Ohio Feb. 22, 2005) ........................... 10

*Harrison v. Leviton Mfg. Co.*,
   2006 U.S. Dist. LEXIS 76334, 2006 WL 2990524, at *7 (N.D. Okla. October 19, 2006) .......... 11

*In re Am. Med. Systems, Inc.*,
   75 F.3d 1069, 1085 (6th Cir. 1996) ................................................................ 5, 15, 19

*In re Bridgestone/Firestone, Inc. Tires Prods. Lib. Litig.,*
    288 F.3d 1012, 1017 (7th Cir. 2002) ................................................................. 11, 19

*In re Dial Complete Marketing and Sales Practices Litig.,*
    312 F.R.D. 36, 79 (D. N.H. 2015) ........................................................................ 18

*In re Elk Cross Timbers Decking Mktg.,*
    No. 2577, 2015 WL 6467730, at *28 (D.N.J. Oct. 26, 2015) .................................. 14

*In re Hydrogen Peroxide Antitrust Litig.,*
    552 F.3d 305, 311 (3d Cir. 2008) .......................................................................... 14

*In re Packaged Ice,*
    779 F. Supp. 2d 642, 659 (E.D. Mich. 2011) ......................................................... 19

*In re Pom Wonderful, LLC.,*
    2014 U.S. Dist. 40415 (C.D. Cal. 2014) ............................................................... 18

*In re Teflon Prods. Liab. Litig.,*
    254 F.R.D. 354, 368 (S.D. Iowa 2008) .................................................................. 15

*In re Welding Fume Prods. Liab. Litig.,*
    245 F.R.D. 279, 302 (N.D. Ohio 2007) .................................................................. 6

*In re Wellbutrin XL,*
    260 F.R.D. 143, 142 (E.D. Pa. 2009) .................................................................... 18

*Lassen v. Nissan N. Am., Inc.,*
    C.D. Cal. No. CV 15-06491-AB (MRWx), 2016 U.S. Dist. LEXIS 139512, at *29
    (Sep. 30, 2016).................................................................................................... 2, 11

*Mays v. Tennessee Valley Authority,*
    274 F.R.D. 614, 623-24 (E.D. Tenn. 2011) ........................................................... 15

*McGuire v. BMW of N. Am., LLC,*
    No. 13-7356, 2014 U.S. Dist. LEXIS 77009, *17 (D.N.J. June 6, 2014) ................... 19

*McKinney v. Bayer Corp.,*
    744 F. Supp. 2d 733, 753 (N.D. Ohio 2010).......................................................... 13

*Meta v. Target Corp.,*
    No. 1:14 CV 832 N.D. Ohio (2015)....................................................................... 18

*Oshana v. Coca-Cola Bottling Co.,*
    225 F.R.D. 575, 580 (N.D. Ill. 2005)..................................................................... 10

iv

*Phillips v. Philip Morris Cos., Inc.*,
   298 F.R.D. 355 (N.D. Ohio 2014) .................................................................. 15

*Pilgrim v. Universal Health Card, LLC*,
   660 F.3d 943, 948 (6th Cir. 2011) ............................................................ 6, 19

*Rikos v. P&G*,
   799 F.3d 497, 523-524 (6th Cir.2015) ........................................................ 17

*Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*
   N.D. Ohio Case No. 3:13-cv-2085 (January 7, 2016) ................................... 5

*Sheehan v. The N. Am. Mktg. Corp.*,
   610 F.3d 144, 150 (1st Cir. 2010) .............................................................. 13

*Smith v. Title Ins. Corp.*,
   No. 07-12124, 2009 U.S. Dist. LEXIS 16140, *7-8 (E.D. Mich. March 2, 2009)...................... 19

*Sprague v. Gen. Motors Corp.*,
   133 F.3d 388, 397 (6th Cir.1998) ................................................................ 6

*Starks v. Coloplast Corp.*,
   No. CIV.A. 13-3872, 2014 WL 617130, at *7 (E.D. ................................... 13

*Story Parchment Co.* v. *Paterson Parchment Paper Co.*,
   282 U.S. 555, 563, 51 S. Ct. 248, 75 L. Ed. 544 (1931) .......................... 16

*Taragan v. Nissan N. Am., Inc.*,
   2013 U.S. Dist. LEXIS 87148, 2013 WL 3157918, at *4 (N.D. Cal. June 20, 2013)................. 11

*Thomas v. Amway Corp.*,
   488 A.2d 716, 720 (R.I. 1985) ................................................................... 13

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*,
   No. 1:08-cv-605, Slip Opinion at 11-12 (N.D. Ohio Feb. 10, 2009) .......... 10

*Wal-Mart v. Dukes*, *supra*,
   131 S. Ct. 2541, 180 L. Ed. 2d 374........................................................ 6, 16

*Werdebaugh v. Blue Diamond Growers*,
   No. 12-CV-02724 N.D. Cal. 2014 ............................................................. 18

*Werwinski v. Ford Motor Co.*,
   286 F. 3d 661, (3rd Cir 2002, applying Pa. law)......................................... 3

*Whitson v. Bumbo*,
  2009 U.S. Dist. LEXIS 32282, 2009 WL 1515597, at *6 (N.D. Cal. Apr. 16, 2009) ................. 11

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ........................................................................................... 6

<u>Rules</u>

Rule 23(a) ...................................................................................................................... v, 1, 6

Rule 23(a)(2)-(3) ................................................................................................................. viii

Rule 23(a)(3) .................................................................................................................. v, 1, 6

Rule 23(b) ..................................................................................................................... passim

Rule 23(b)(3) ............................................................................................................. v, 1, 14, 16

## STATEMENT OF ISSUES TO BE DECIDED

1.  Have plaintiffs met the commonality and typicality requirements of Rule 23(a)(2)-(3) where each named plaintiff describes an incident involving a pressure cooker that is distinctly different and distinguishable from the alleged defect described by plaintiffs' expert, and where it is undisputed that the vast majority of the 1,600,000 units sold have been used repeatedly without incident?

2.  May a class action be certified based on an alleged latent product defect that has not manifested itself or caused any problem for the vast majority of the pressure cooker owners?  Is the alleged susceptibility of the pressure cooker being forced open prior to depressurization while the unit is still in use in a manner directly prohibited by the user manual, a proper basis for class certification if there is no evidence that any consumer ever operated the pressure cooker in such a manner?

3.  Each of the three plaintiffs alleges a minor personal injury, and all plaintiffs have abandoned their claims for relief for such alleged injuries. The proposed class consists of owners of more than 1,600,000 pressure cookers.  Are a handful of injuries amongst all putative class members too speculative as a matter of law to warrant class certification?

4.  Is plaintiffs' conclusory request for a full refund for all class members without any expert or other analysis, sufficient under *Comcast v. Behrend,* 133 S.Ct. 1426 (2013)?  Is the request for a refund sufficient for the additional reasons that (1) it is undisputed that the vast majority of the 1,600,000 units sold have been used repeatedly without incident, and (2) there is no evidence that the product is either worthless or without value?

5.  Do individual issues predominate over class issues where the potential to realize an injury from a product depends upon the manner in which the consumer used the product, each of

the three named plaintiffs as well as the over 1.6 million owners that comprise the putative

class used their pressure cooker models for different amounts of time in different ways and

over different periods of time, and an infinitesimal number of the over 1.6 million owners

have ever complained of any injury.

6. Has the decision by the named plaintiffs to waive claims for personal injury or property

damage created a substantial risk that any possible personal injury or property damage

claims by other class members could also be waived?

## SUMMARY OF ARGUMENT

I.      There was no recall of the pressure cooker by the Consumer Product Safety Commission.

II.     Plaintiffs are not typical and their claims are not common to all proposed class members, as required by Rule 23(a)(2)-(3).

III.    The absence of typicality and commonality is demonstrated by plaintiffs' expert who did not replicate the plaintiffs' use and experience with the pressure cooker but instead used human force (prohibited by the user manual's instructions) to open the pressure cooker's cover while pressurized.

IV.     The absence of typicality and commonality and the over-inclusiveness of the putative class is further demonstrated by the fact there is no evidence of any widespread defect or consumer harm, as an infinitesimal number of the over 1.6 million purchasers of the pressure cookers have ever complained.

V.      The over-inclusiveness of the putative class is also demonstrated by plaintiffs' failure to identify any express warranty that was actually breached and by failing to introduce evidence that they or any putative class members actually relied on any such express warranty.

VI.     Plaintiffs' motion should be denied because numerous individual issues predominate, including the named plaintiffs' alleged physical injuries, the risk that the named plaintiffs would waive any similar claims by putative class members, how each putative class member used the pressure cooker, whether this use was in accordance with the user manual, whether any putative class member suffered injury, if so, the extent of any injury, and what use and value each putative class member received from the pressure cooker.

VII.     Plaintiffs' motion should be denied because they have introduced no reliable damages model or damages expert testimony, as required by *Comcast v. Behrend,* 133 S.Ct. 1426 (2013).

VIII.    The proposed nationwide class should be stricken because the named plaintiffs lack standing to pursue claims where they are not resident, did not purchase the product, and have no causal relationship and because plaintiffs' claims would require application of the varying laws of the fifty states and the District of Columbia.

## I.     INTRODUCTION

Class certification should be denied for several reasons.   First, plaintiffs' claims are not typical of the claims of all proposed class members, as required by Rule 23(a)(3).  Second, the common issue of whether the pressure cookers are defectively designed does not predominate over other issues unique to each proposed class member, as required by Rule 23(b)(3).  Third, plaintiffs have failed to proffer a damages model necessary under U.S. Supreme Court precedent to demonstrate that common issues predominate as to damages, let alone one backed by any expert opinion.

Kenneth Chapman, Jason Jackson, and Jessica Vennel each claim they were injured when cooking food in a Tristar Products, Inc. ("Tristar") Power Pressure Cooker XL.  Asserting that the pressure cooker is defectively designed, they want Tristar to buy back 1.6 million pressure cookers currently in use by satisfied customers.  However, plaintiffs' own expert, John D. Pratt, Ph.D., P.E., does not support their defect theory, but instead supports that the plaintiffs' use of the pressure cookers was not typical.  The plaintiffs describe that the pressure cookers are defectively designed on the theory that the lid unexpectedly dislodges without human force.  By contrast, Dr. Pratt describes something very different.

He does not opine that the lid unexpectedly dislodges without human force, but instead contends that the pressure cooker is defective on the theory that the lid can be opened when pressurized through the use of significant human force.  This is a defect theory that would have consumers using the pressure cooker in a manner expressly prohibited by the user manual.  Equally important, there is a major disconnect between what plaintiffs explain and identify as the alleged defect and what their expert explains and identifies as the alleged defect, which reveals that plaintiffs' use was not typical as it could not even be replicated by their own expert.  Further

1

undermining plaintiffs' motion, and directly contrary to plaintiffs' assertion, there was no Consumer Product Safety Commission ("CPSC") recall of the pressure cookers and not even a CPSC analysis of the pressure cookers.  Tristar and its outside engineering consultants, SEA Limited ("SEA"), have likewise conducted intense engineering analysis, but have found nothing to corroborate plaintiffs' defect theory or any other defect theory.

Although plaintiffs' complaint purported to seek redress for personal injury, plaintiffs' class certification motion abandons this and now asserts only an "economic loss" claim on behalf of every purchaser of a like model pressure cooker.  Among the many problems that dooms their motion, plaintiffs fail to set forth a damages model, nor do they proffer an expert opinion to support their method of calculating damages.  Rather than present a damage model, as Supreme Court authority requires for class certification, plaintiffs assert that the product "is worth less than the purchase price (and may well be entirely worthless)."  And then, in conclusory fashion, without any analysis, expert or otherwise, plaintiffs seek a full refund of the purchase price of the pressure cookers as the measure of damages for all class members. Thus, plaintiffs are essentially bringing a consumer fraud claim that anyone who has purchased a Tristar pressure cooker has received no value for their money, notwithstanding how satisfied or unsatisfied a purchaser may be with his or her pressure cooker.

Several of plaintiffs' claims are indistinguishable from product liability claims based upon strict liability, implied warranty in tort, or other traditional theories of product liability for injury or property damage.[1]  However, plaintiffs cannot maintain a traditional product liability action as

---

[1] Courts have noted that product liability "design defect standards do not readily transfer to the consumer fraud context." *See Lassen v. Nissan N.A., Inc. 2016 U.S. Dist. Lexis* 139512; 2016 WL 5868101.

a class action due to the economic loss rule.[2]  For that reason, the putative claim of "economic loss" is asserted in the form of a breach of express or implied warranty claim.

## II.     FACTUAL BACKGROUND

### A.     Overview of Plaintiffs' Complaint

All of plaintiffs' claims arise out of their allegation that Tristar manufactured, marketed and sold power pressure cookers that were defectively designed.  Plaintiffs contend that the pressure cooker's owner's manual makes representations and specific warranties about the design and safety of the pressure cooker.  Complaint, Doc. #1, pg. ID nos. 2, 5, 6.  As the owner's manual is inside the pressure cooker's packaging, plaintiffs could not have relied on it in selecting or purchasing the pressure cookers.  Plaintiffs nonetheless allege that these warranties were breached and that they and others would never have purchased the pressure cookers had they known about the alleged defects. *Id.* at pg. ID no. 14.  Plaintiffs seek to maintain their claims on behalf of all persons in the U.S. who purchased and owned a power pressure cooker manufactured or sold by Tristar.[3]

Tristar, however, did not design or manufacture the pressure cookers.[4]  Tristar's user manual also does not state that the lid, when pressurized, cannot be opened through the use of human force. Rather, Tristar's user manual explains (i) that the cover, when pressurized, will not open on its own and (ii) that, when pressurized, a consumer should not attempt to open the cover.[5]  Since late 2015, Tristar has sold over 1.6 million pressure cookers.[6]  To date, Tristar has received only approximately

---

[2] *See Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co,* 42 Ohio St. 3d 40, (1989); *BMW, Inc.* **v.** *Dufficy & Sons, Inc.* 99 P. 3d 66, (Sup. Ct of Col. 2004); *Werwinski v. Ford Motor Co.*, 286 F. 3d 661, (3rd Cir 2002, applying Pa. law).

[3] Plaintiffs also seek to establish a subclass for "all persons who reside" in 31 states and Washington D.C. who "purchased a Power Pressure Cooker XL" and three sub-classes consisting of "all persons who reside in" Ohio, Pennsylvania and Colorado who "purchased a Power Pressure Cooker XL".  Complaint, Doc. # 1, ¶¶ 69 through 72, pg. ID # 17.  Plaintiffs have not specifically addressed the elements for class certification for these subclasses in the Motion to Certify.

[4] Plaintiff Exhibit 2, Section 15(b) Report to the CPSC

[5] Plaintiff Exhibit 5, pg. ID # 522

[6] Plaintiff Exhibit 6, Deposition of Harold Fisher, pg. ID # 542

39 claims from consumers seeking compensation for alleged unexpected expulsion of hot contents.[7] Tristar and SEA have conducted intense engineering analysis,[8] but have found nothing to corroborate plaintiff's defect theory.[9]

### B. Plaintiffs' Mistaken Factual Assertions About The CPSC

Plaintiffs represent that the CPSC determined that the pressure cookers are defective and were recalled.[10] This is not correct. As explained to plaintiffs and established in discovery, after an initial email by a CPSC employee, the CPSC then unequivocally stated in writing that the CPSC had *not* made a preliminary determination that the pressure cookers contained a hazardous defect,[11] that CPSC engineering staff had never evaluated these pressure cookers and that CPSC compliance staff never found any defect.[12] The record evidence thus establishes that the CPSC never determined the pressure cookers were defective and has neither demanded nor even suggested that the pressure cookers be recalled.

### C. Plaintiffs' Mistaken Factual Assertions About UL Standard 1026[13]

Plaintiffs and Dr. Pratt also relied upon an inapplicable standard, UL Standard 1026 § 6.20,[14] to support the conclusion that the covers on the pressure cookers are defective. Dr. Pratt asserts that the pressure cookers do not meet UL Standard 1026 § 6.20[15] (sic).[16] The pressure cookers satisfy § 6.20 because the covers are secured by interlocking tabs on the cover and base of the pressure cookers. These features positively secure the cover in a closed position during

---

[7] Defendant Exhibit A, Declaration Steven H. Sowers dated 1/30/17
[8] Defendant Exhibit B, SEA's report dated 3/30/2016
[9] Defendant Exhibit C, portions of the deposition of Tristar engineer Alex Lozano, pgs. 154, 155
[10] Doc # 43, pg. ID # 443, fn 2. Plaintiff Exhibit 3 is an email from Valery Caesar, Sen. Compliance Officer, dated 6/6/2016, bearing Bates nos. TPI00000676 – TPI00000681
[11] Defendant Exhibit D, email from V. Caesar dated 7/21/16, bearing Bates Nos. TPI00001565 – TPI00001568
[12] Defendant Exhibit E, letter of Joe Shull, bearing Bates Nos. TPI00001561 – TPI00001564
[13] A copy of the portions of UL Standard 1026 cited by Dr. Pratt are attached as Defendant Exhibit F
[14] Plaintiff Exhibit 1, pg. ID # 492
[15] Plaintiff Exhibit 1, pg. ID # 492
[16] The section quoted by Dr. Pratt is § 6.19

4

operation.  Dr. Pratt also asserts that the pressure cookers do not comply with UL Standard 1026 §7.4.[17]  However, when the entire §7 is considered, it is clear that this section refers solely to assembly of electrical components such as a switch, lamp holder, plug type receptacle, etc.  The phrase "live parts" in §7.4 obviously refers to electrically energized parts.  Because the cover on the pressure cookers is not electrically energized, this section of UL Standard 1026 does not apply.

### D.    Tristar's 3rd Party Testing of Pressure Cookers

SEA determined the operational characteristics of each cooker under various conditions using wireless data sensors to measure the temperature and pressure within the cooker during each test.  Lid removal tests showed that the lids could not be removed by a strong adult male while the pressure cooker was fully pressurized. When the pressure was reduced, the test technician was eventually capable of twisting off the lid. The internal pressure at the point of forced lid removal was no longer high enough to develop significant upward force or velocity on the lid, which was due, in part, to the strong grip required to remove the lid in the first place. [18]

## III.    PLAINTIFFS HAVE NOT MET THEIR RULE 23 BURDEN

### A.    Class Certification Standard

Class determination "involves considerations that are enmeshed in the factual legal issues compromising the plaintiffs' cause of action" and requires a court's "rigorous analysis" to "probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 160 (1982); *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.* N.D. Ohio Case No. 3:13-cv-2085 (January 7, 2016).   This requires that a court examine the merits and the evidence offered either for or against class certification. *In Re: Am. Med. Sys., Inc.,* 75 F.3d 1069,

---

[17] Plaintiff Exhibit 1, pg. ID # 492
[18] Defendant Exhibit B, pg. 1

5

1082 (6th Cir. 1996) (holding that the district court needs to consider "evidence in the record presented by the non-moving party."); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) ("[T]he district court should not merely presume that the plaintiffs' allegations in the complaint are true for the purposes of class motion.").

Before a class can be certified, plaintiffs must satisfy all four elements required under Rule 23(a).  *See* Rule 23(a) (requiring numerosity, commonality, typicality, and adequate representation).  More specifically, plaintiffs must prove that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the case; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011).  If the plaintiffs establish Rule 23(a)'s requirements, then the plaintiff must establish by evidence that the class fits within one of the three types of class actions allowed under Rule 23(b).  *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 397 (6th Cir.1998).

Here, plaintiffs' motion must be denied because they cannot meet the requirement of Rule 23(a)(2) to establish questions of fact or law common to the entire class.  To satisfy commonality, plaintiff must prove that the claims "depend upon a common contention . . . that it is capable of class wide resolution." *Dukes*, 131 S. Ct. at 2551 (requirement that there be common questions of law or fact "is easy to misread, since [a]ny competently crafted class complaint literally raises common 'questions.").  In addition, plaintiffs' motion must be denied because they cannot meet the requirement of Rule 23(a)(3) to establish that plaintiffs' claims are typical of the class members' claims.  To satisfy typicality, plaintiffs must establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *In re Welding Fume Prods. Liab. Litig.,* 245 F.R.D. 279, 302 (N.D. Ohio 2007).

Further, plaintiffs' motion must be denied because they have failed to comply with U.S. Supreme Court precedent and introduce reliable evidence and expert testimony on a damages model. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).  Plaintiffs have no theory or model of damages at all, have for a request for a full refund without any rationale or support.  Nor have plaintiffs presented *any* expert evidence on this critical issue.  The issue of damages is essentially ignored by plaintiffs.  "Calculations need not be exact, *** but at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case."*Id.* at 1433.

### B.     Plaintiffs' Expert Demonstrates That Plaintiffs Are Not Typical Of The Putative Class And Their Claims Are Not Common To The Putative Class

Plaintiffs contend that they are typical of the proposed class members and that questions of whether the pressure cookers were defectively designed and caused economic harm are common to all proposed class members.  In support, they rely on testing and a report by their expert Dr. Pratt.   However, Dr. Pratt actually undermines plaintiffs' contentions because he could not replicate the incidents described by plaintiffs.  Dr. Pratt did not use or attempt to open the pressure cookers in the same manner as that described by plaintiffs.

Mr. Mattice, Tristar's expert at SEA noted that, during Dr. Pratt's tests, Dr. Pratt was observed applying "much more torque than a consumer would apply" under "normal use" when he opened the pressure cookers while pressurized.[19]  The screen shot of one of Dr. Pratt's tests shows the use of two hands to apply force to the cover and a non-skid pad to hold the base in position.[20]  In their depositions, plaintiffs describe how they opened their pressure cookers on the

---

[19] Defendant Exhibit H, Mattice Declaration
[20] Defendant Exhibit G

date of their alleged incidents.  As Mr. Mattice also notes in his declaration, Dr. Pratt's method is "contrary to the deposition testimony" of all three plaintiffs.

At deposition, each plaintiff testified that the pressure cooker lid is defective because – according to them – the lid dislodged without noticeable resistance even after the release valve had fully released all pressure.[21]  Dr. Pratt, however, did not experience this.  Instead, Dr. Pratt reported that he was able to force the covers open, while still pressurized and without first actuating the release valve.[22]  To be sure, there is no express warranty proclaiming that the covers can never be opened through use of human force, and the user manual in fact makes clear that the covers should not be opened while pressurized.[23]  But the fact that Dr. Pratt could not replicate what each plaintiff has described demonstrates that their claims are not typical.

Ms. Vennel testified[24] that she made chicken soup in her pressure cooker and the contents exploded *despite* her releasing the steam valve and *waiting another ten to fifteen minutes* for all steam to dissipate. Vennel Tr. p. 12.  Ms. Vennel was very certain that she waited ten to fifteen minutes for all steam to be released.  *Id.* p. 13, 18.  Ms. Vennel also testified that she did not use the pressure cooker as instructed, but rather used a watch to time the cooking cycle.  *Id.* p. 18.  Nevertheless, Ms. Vennel testified that not only did she allow sufficient time for the steam to be released, but also that she had confirmed that the release valve had dropped, indicating that all steam had been released and that the pressure cooker was safe to open.  *Id.* p. 19.   Notably, Ms. Vennel does not recall any beeping noise confirming that the cooking cycle was completed, or any display at all on the front of the unit.  She testified that the pressure cooker's cover hit the ceiling when she opened it, *after it was fully vented*.  *Id.* p. 18.

---

[21] Defendant Exhibits I, J, and K contain the pertinent deposition testimony of the three plaintiffs.
[22] *See* Defendant Exhibit G, screen shot of Dr. Pratt's method of forcing open the cover of the pressure cooker
[23] *See* Plaintiff Exhibit 5, pg. ID 522; Declaration of Jason Mattice M.S., P.E. attached as Defendant Exhibit H
[24] Excerpts from Ms. Vennell's deposition are attached as Defendants Exhibit I

Mr. Jackson testified[25] that, after the soup he was making completed its cycle, he waited for the beep to confirm that the cooking was done.  He then allowed the unit to sit for *another thirty minutes* before taking off the cover.  Jackson Tr. p. 21-22.  Mr. Jackson was also specific in his recollection that he "opened the steam valve to release the steam," and that the valve properly functioned to release steam for a period of "a few minutes" at a "fairly strong" jet.  *Id.* p. 22-23.  Mr. Jackson described a fully depressurized mechanism prior to opening.

Mr. Chapman[26] did not set the timer personally or check the release valve but rather relied on his wife and daughter.  He was certain that they had released all pressure in the unit prior to opening.  He testified that he had never personally used the pressure cooker prior to the day of his incident, and that his wife had both programed the pressure cooker and personally confirmed that the steam valve was totally released prior to attempting to open the unit.  Chapman Tr. p. 11-12, 17, 20.  Unlike Ms. Vennel, who testified that she had personally witnessed the steam released and had waited thirty minutes, Mr. Chapman relied on the representation of his wife and daughter.  *Id.* p. 21.  Mr. Chapman stated there was "no resistance at all" when he opened the pressure cooker. *Id.* p. 22.

For purposes of class certification, the issue is not whether the plaintiffs are being truthful or whether their recollections are accurate, but rather whether they are typical and their claims are common to the class members they seek to represent.  Their own expert supports that they are not. In his Declaration at ¶ 7, Dr. Pratt states that he encountered resistance when he attempted to open the pressure cooker cover, but was nonetheless able to use human force to rotate the pressure cooker cover back and forth between the midpoint and fully-locked at 2.5 pounds per square inch,

---

[25] Excerpts from Mr. Jackson's deposition are attached as Defendant Exhibit J
[26] Excerpts from Mr. Chapman's deposition are attached as Defendant Exhibit K

*prior to the completion of the cooking cycle*.  By contrast, the three plaintiffs described that the steam pressure had been fully released at the time of their incident and they described experienced no resistance whatsoever in opening the cover.  Because their own expert cannot replicate what plaintiffs have described and in fact performed a test that is contrary to the use instructed in the owners' manual, plaintiffs are not typical and their claims are not common to the class they seek to represent.

### C.   Plaintiffs' Proposed Class Is Over Inclusive Because There Is No Evidence Of Any Widespread Defect Or Consumer Harm

As noted above, there has been no CPSC recall of the pressure cookers or any determination at all by CPSC that the pressure cookers are defective.  Even the testing by plaintiffs' expert does not support any defect because he used human force to open the pressure cooker cover while pressurized in direct conflict with the express language in Tristar's user manual.  Nonetheless, plaintiffs' proposed class includes all U.S. persons who purchased and own a pressure cooker sold by Tristar.  Complaint, Doc. # 1, ¶ 69, p. 17.  This is far too broad given that the vast majority of pressure cooker purchasers have not experienced any problems with their pressure cookers and thus have not been damaged.

A class definition should not be so broad as to include individuals who are without standing to maintain the action on their own behalf.  *Clay v. Am. Tobacco Co.,* 188 F.R.D. 483, 490 (S.D. Ill. 1999); accord *Van Horn v. Nationwide Prop. & Cas. Ins. Co.,* No. 1:08-cv-605, Slip Opinion at 11-12 (N.D. Ohio Feb. 10, 2009) (Gwin, J.) (finding "plaintiffs' proposed class is overbroad" because the proposed class definition included individuals who "fall outside of the plaintiff's theory of the case").  Thus, a proposed class that includes members who have not suffered harm cannot be certified.  *See, e.g., Oshana v. Coca-Cola Bottling Co.,* 225 F.R.D. 575, 580 (N.D. Ill. 2005) (denying certification of proposed class of all fountain diet coke buyers in part because the class would necessarily include numerous persons who could not show damage).

10

Nearly every court that has considered the issue has denied recovery based on an alleged latent product defect that has not manifested itself or caused any problem. *Briehl v. Gen. Motors Corp.,* 172 F.3d 623, 630 (8th Cir. 1999) ("an overwhelming majority of courts have dismissed these un-manifested defect claims and rejected the idea that the plaintiffs can sue manufacturers for speculative damages."); *Gentk Building Prods., Inc. v. Sherwin-Williams Co.,* No. 1:02-cv-00013, Slip Op. at 19-20 (N.D. Ohio Feb. 22, 2005) ("[T]he great weight of authority from other jurisdiction indicates that a plaintiff has not suffered a present injury compensable in contract, express warranty, implied warranty, or tort until the very product in question has caused some harm to person or property, even if the product in question contains a latent defect that has manifested in other identical products."); *In Re: Bridgestone/Firestone, Inc. Tires Prods. Lib. Litig.,* 288 F.3d 1012, 1017 (7th Cir. 2002) (reversing certification warranty and consumer fraud class and recognizing that "[n]o injury, no tort, is an ingredient in every state's law"). These courts recognize that, absent any product failure, the plaintiffs cannot prove the required element of damages. *See, e.g., Briehl,* 172 F.3d at 627-28.

The many analogous decisions include the recent *Lassen v. Nissan N. Am., Inc.*, C.D. Cal. No. CV 15-06491-AB (MRWx), 2016 U.S. Dist. LEXIS 139512, at *29 (Sep. 30, 2016). In denying class certification, the court held that mere concerns about alleged defects and/or alleged injuries to others does not establish injury in fact, and that such concerns are inadequate to find standing. The court found that both "concern about future harm" and a "handful of injuries amongst all members of a class" to be too speculative as a matter of law to warrant class certification. *Id.* at 29-30, citing *Harrison v. Leviton Mfg. Co.*, 2006 U.S. Dist. LEXIS 76334, 2006 WL 2990524, at *7 (N.D. Okla. October 19, 2006) for the proposition that "plaintiffs limiting their claims to economic damages cannot base standing on risk of injury."

Thus, the happenstance that *some other people* were injured does not establish any

11

particularized injury as to all members of a class.  *See, Taragan v. Nissan N. Am., Inc.*, 2013 U.S. Dist. LEXIS 87148, 2013 WL 3157918, at *4 (N.D. Cal. June 20, 2013).  "A number of courts have rejected for lack of standing or injury similar attempts to recast no-injury products-liability claims (which are not cognizable) as consumer fraud claims for contract-like economic damages (which *may* be cognizable)." *Id.* at *32-35, citing, *Birdsong v. Apple, Inc*., 590 F.3d 955, 961 (9th Cir. 2009) (claimed economic injury arising out of properly-functioning iPod that posed only risk of harm was not injury in fact because theory of defect was not cognizable and plaintiff otherwise received benefit of bargain); *Whitson v. Bumbo*, 2009 U.S. Dist. LEXIS 32282, 2009 WL 1515597, at *6 (N.D. Cal. Apr. 16, 2009) (no standing where "the instant complaint oscillates between tort and contract law language but fails to allege any actual injury"); *Briehl supra*, 172 F.3d at, 627-628 (affirming dismissal of consumer fraud and related claims because plaintiff received benefit of bargain where anti-lock brakes performed effectively but in a counter-intuitive way that could lead to injury, and plaintiff pled only overpayment at purchase and lost resale value).

Here, both the alleged defects and the alleged injuries are speculative.  Given that Tristar has sold over 1.6 million pressure cookers and that this is a cooking device that heats liquid at high temperatures, it is not surprising that three people claim to have been injured (albeit none seriously) or that there have been a few dozen complaints.  Dr. Pratt also did not corroborate the plaintiffs' incidents or defect theory.  Nor is there is evidence that any typical user will attempt to force open the cover prematurely and improperly during the cooking cycle, as did Dr. Pratt.  The plaintiffs' personal accounts do not come close toward establishing commonality, typicality, and predominance for more than 1.6 million potential class members, nearly all of whom are satisfied.  Accordingly, the proposed class is fatally over-inclusive because it consists almost entirely of persons who cannot maintain a claim.  *Faralli v. Hair Today, Gone Tomorrow,* No. 1:06-cv-504, 2007 WL 120664, at *7 (N.D. Ohio

Jan. 10, 2007) (denying certification because the proposed class included "an unascertainable number of [satisfied] customers who have no claim because they have not suffered any harm or damage.").

### D.  Plaintiffs' Proposed Class Is Over Inclusive Because There Is No Evidence Of Any Breach Of Express Warranty

Tristar's user manual states: "Lid Safety Device: Prevents pressure build-up if lid is not closed properly and prevents lid from opening until all pressure is released."[27] Based on the second part of this sentence, *i.e.* "prevents lid from opening until all pressure is released," plaintiffs appears to contend that Tristar warranted that its pressure cooker could not be opened *through human force* until all pressure is released.  The user manual language, however, does not actually say this.  Rather, the straightforward reading of the user manual language is that the "Lid Safety Device" prevents the lid from opening *by itself* until all pressure is released.  This is consistent with another part of Tristar's user manual which explains a user should not use human force (like the force used by Dr. Pratt) to open the pressure cooker when pressurized, stating "[i]f the unit is difficult to open, this indicates that the cooker is still pressurized – do not force it open."[28]

The user manual language cannot be distorted to include an express warranty that Tristar did not provide.  "To state a claim for breach of warranty under the UCC, a plaintiff must allege: (1) the existence of a warranty; (2) the product failed to perform as warranted; (3) the plaintiff provided the defendant with reasonable notice of the defect; and (4) the plaintiff suffered an injury as a result of the defect." *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 753 (N.D. Ohio 2010). In addition, on a breach of express warranty claim, plaintiffs have "the burden of proving that the statements or representations made by the seller induced her to purchase that product and that she relied upon such statements or representations." *Thomas v. Amway Corp.*, 488 A.2d 716, 720 (R.I.

---

[27] Plaintiffs' Exhibit 5, pg. ID # 523
[28] *Id.,* pg. ID # 522

13

1985); *see also Sheehan v. The N. Am. Mktg. Corp.*, 610 F.3d 144, 150 (1st Cir. 2010). "The existence of a warranty, standing alone, is 'insufficient to sustain an action for breach of an express warranty.' … Instead, the warranty must be 'part of the basis of the bargain'"; that is, it must be "relied upon as one of the inducements for purchasing the product." *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 754 (N.D. Ohio 2010).

It is hornbook law that where a plaintiff "has not pled any details regarding the content of any express warranty, how it was made, that it became the basis of the bargain, or that it was directed to [plaintiff], [plaintiff] has not set forth the elements of a breach of express warranty cause of action." *Starks v. Coloplast Corp.*, No. CIV.A. 13-3872, 2014 WL 617130, at *7 (E.D. Pa. Feb. 18, 2014).  When analyzing breaches of express warranty, courts have found that "at a minimum–Plaintiffs must have seen or heard the representations that they allege became a basis of the bargain. … [I]n most, if not all, … states, Plaintiffs must allege that they relied on such representations or that the representations induced the purchase." *In re: Elk Cross Timbers Decking Mktg.*, No. 2577, 2015 WL 6467730, at *28 (D.N.J. Oct. 26, 2015) (collecting cases from Ohio, Missouri, Iowa, Montana, Michigan, Nebraska, Colorado, Indiana, New Hampshire, New York, North Carolina, and Mississippi).

Plaintiffs rely on the breach of express warranty claim to argue for a nationwide class.  To establish this claim and even more to establish that this claim is so strong as to merit class certification, plaintiffs need to introduce evidence to support all of its elements consistent with the laws of the fifty states and the District of Columbia.  But plaintiffs have not come forward with evidence to establish – either for themselves or on a class-wide basis – that there actually is an express warranty that supports their claims or that they or the proposed class members actually relied on any such warranty.

14

**E.      Plaintiffs' Motion Should Be Denied Because Individual Issues Predominate**

Under Rule 23(b)(3), certification must be denied where individualized questions of fact or law predominate.  *Comcast*, 133 S. Ct. at 1432.  To determine whether individual issues predominate, courts look to "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable."  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008).

There are host of individualized issues here.  At the outset, each of the three plaintiffs alleges physical personal injuries.  Yet, for purposes of class certification, plaintiffs have elected to seek only economic loss damages on behalf of the class.  As several courts have recognized, this creates substantial risk that any possible personal injury or property damage claims by other class members could be waived.  *See, e.g., Mays v. Tennessee Valley Authority*, 274 F.R.D. 614, 623-24 (E.D. Tenn. 2011) (denying class certification where "the named class representatives have demonstrated a willingness to abandon claims on behalf of themselves and unnamed class members by deciding not to pursue claims for medical monitoring, emotional distress, and personal injury"); *In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 368 (S.D. Iowa 2008) ("By abandoning their original claims for medical monitoring, and expressly disavowing any current claim for personal injury . . . the representative plaintiffs risk a future waiver not only of their own personal injury and medical monitoring claims, but also those of the absent class members.").

Moreover, the basic question of how each plaintiff used the pressure cooker, and thus came to be allegedly injured, makes class certification improper.  *See Phillips v. Philip Morris Cos., Inc.*, 298 F.R.D. 355 (N.D. Ohio 2014) (finding class not suitable for certification because the potential to realize an injury from the product depends upon the manner in which each consumer

15

used the product). The record evidence confirms that each plaintiff used different pressure cooker, for different amounts of time, in different ways, and over different periods of time. The variation between the purchasers of over 1.6 million pressure cookers would be even more extreme, with some using it carefully in accordance with the user manual and others not. As explained by the Sixth Circuit, "where no one set of operative facts establishes liability, no single proximate cause equally applies to each potential class member and each defendant, and individual issues outnumber common issues, the district court should properly question the appropriateness of a class action." *Am. Med Sys.* 75 F.3d at 1084.

Further, whether any injury was ever suffered by a potential class member and, if so, the extent of injury is likewise individual. To be sure, plaintiffs have not introduced evidence to support that a sufficient number of injuries were caused by any alleged defects to warrant certification, and plaintiffs have not introduced evidence to overcome the strong possibility that most, if not all, injuries were caused by product misuse. Even if there is some possible defect, however, any economic loss would vary widely as some potential class members have likely used their unit hundreds of times without incident and thus realized the full value of their purchase. In relation to the over 1.6 million purchasers of the pressure cookers, very few have ever complained.[29] The vast majority of satisfied consumers do not fit plaintiffs' damage model and again make class certification improper.

### F. Plaintiffs' Motion Should Be Denied Because They Have Introduced No Reliable Damages Model Or Damages Expert Testimony

*Comcast* held that an economic damages model *consistent with plaintiffs' theory of class certification* is a prerequisite to class certification. The Court clarified that damages models are subject to "rigorous analysis" at the class certification phase:

---

[29] Defendant Exhibit A, Declaration of Steven H. Sowers.

> We start with an unremarkable premise. If respondents prevail on their claims, they would be entitled only to damages resulting from reduced overbuilder competition, since that is the only theory of antitrust impact accepted for class-action treatment by the District Court. It follows that a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3).  Calculations need not be exact, see, *Story Parchment Co.* v. *Paterson Parchment Paper Co.*, 282 U.S. 555, 563, 51 S. Ct. 248, 75 L. Ed. 544 (1931), *but at the class-certification stage (as at trial), any model supporting a "plaintiff's damages case must be consistent with its liability case*, particularly with respect to the alleged anticompetitive effect of the violation." * * * And for purposes of Rule 23, courts must conduct a " 'rigorous analysis' " to determine whether that is so. *Wal-Mart*, *supra*, 131 S. Ct. 2541, 180 L. Ed. 2d 374.

*Comcast Corp.*, 133 S.Ct. at 1433. (Emphasis added).  Plaintiffs have ignored this requirement, which is fatal to their motion.  They have no model of economic damages.

At one point in plaintiffs' motion, plaintiffs allege some ambiguous class-wide diminution in each pressure cooker's value, but they make no effort to develop this theory, much less provide a model of damages.  At page 6, plaintiffs assert that "[i]t was at the time of payment that each Plaintiff and Class Member suffered an economic injury."  At page 9, section 4, plaintiffs ask whether "[i]f the Pressure Cookers are defective, does that reduce *or* altogether eliminate their value."  (Emphasis added)  Plaintiffs then represent that they will "seek a full refund of the purchase price of the Pressure Cookers as the measure of damages for all class members." *Id*.  The required damages model, however, must be consistent with Dr. Pratt's defect theory.  Yet plaintiffs offer no damages model, and what they allege in terms of the damages they are seeking, in conclusory and inconsistent fashion, is completely disconnected from Dr. Pratt's defect theory, as there is no evidence that any consumer ever forced open a lid during operation as described by Dr. Pratt, or sustained personal or economic injury as a result.

To seek a full refund for 1.6 million or more potential class members, based on an alleged "defect" that has not even arguably manifested itself more than a handful of times, is not a damages

17

model.  Indeed, plaintiffs' demand is a concession that they lack a damages model and thus a concession that certification is inappropriate.  This is especially so because there is no allegation, let alone evidence presented, of product worthlessness or that members of the class have not realized any benefit from the pressure cookers.  *See Rikos v. P&G*, 799 F.3d 497, 523-524 (6th Cir.2015) (noting that if the product worked for some class members, plaintiffs' claims would be without merit).  Faced with similar weak showings where plaintiffs sought full compensation and disgorgement, courts have consistently applied *Comcast* and rejected class certification.  This Court should do likewise.

In *In re Dial Complete Marketing and Sales Practices Litig.*, 312 F.R.D. 36, 79 (D. N.H. 2015), for example, the court rejected the plaintiffs' contention that they were entitled to full refunds or profit disgorgement because they purchased hand soap allegedly falsely labeled as a superior antibacterial agent. The court held that regardless of if the product comported with its labeling claims, these models "ignore the reality that plaintiffs realized value from Dial Complete in that it was unarguably effective as soap in cleaning their hands."

Similarly, the court in *Meta v. Target Corp.,* rejected a full refund model, finding that "Although there may be circumstances under which an individual may be able to show that a full refund would be available based on their usage pattern with this product, this is not an issue that would be capable of class resolution because it would require an inquiry into each consumers personalized use an individual experience with the product." *Meta v. Target Corp.*, No. 1:14 CV 832 N.D. Ohio (2015).  *See also Werdebaugh v. Blue Diamond Growers,* No. 12-CV-02724 N.D. Cal. 2014(decertifying class because of defects in proposed expert damage model); *In re Pom Wonderful, LLC.*, 2014 U.S. Dist. 40415 (C.D. Cal. 2014)(decertifying class because proposed expert damage model was not tied to legal theory).  In these cases, plaintiffs offered an expert to

support their damages model, which the courts found were inadequate.  Here, plaintiffs do not even do that.

## IV.      THE NATIONWIDE CLASS SHOULD BE STRICKEN

A named class plaintiff lacks standing to assert claims under the laws of the state in which he does not reside or in which he suffered no injury.  *See, e.g., In re: Wellbutrin XL,* 260 F.R.D. 143, 142 (E.D. Pa. 2009) ("A named plaintiff whose injuries have no causal relation to, or cannot be redressed by, the legal basis for a claim does not have standing to assert that claim."); *In re: Packaged Ice*, 779 F. Supp. 2d 642, 659 (E.D. Mich. 2011)(accord); *Smith v. Title Ins. Corp.*, No. 07-12124, 2009 U.S. Dist. LEXIS 16140, *7-8 (E.D. Mich. March 2, 2009) (accord); *McGuire v. BMW of N. Am., LLC*, No. 13-7356, 2014 U.S. Dist. LEXIS 77009, *17 (D.N.J. June 6, 2014) (accord).

The complaint identifies as its plaintiffs only: (1) Chapman of Ohio; (2) Vennel of Pennsylvania; and (3) Jackson of Colorado.  They purportedly purchased their pressure cookers in their respective states and were allegedly injured there.  Their complaint does not allege that they have any causal relation to or were injured anywhere else.  Thus, they have no standing to bring claims under the laws of the other forty seven states or the District of Columbia.  *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 948 (6th Cir. 2011) (affirming striking of nationwide class because class would be unmanageable as nationwide claims would have to be decided under laws of each state) (relying on and quoting *In re: Am. Med. Systems, Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996)).

Here, the laws of various states also conflict, which requires the same result as in *Pilgrim* – denial of a nationwide class.  *See, e.g., In re: Am. Med.*, 75 F.3d at 1085-1086 (reversing nationwide class certification in product liability case and observing that negligence law differed among the states); *Colley v. Procter & Gamble Co.*, 2016 WL 5791658 (S.D. Ohio Oct. 4, 2016) (denying certification because court would have been "required to resolve innumerable facts individual to each

class member under a wide and varying array of legal standards."); *Cole v. GMC*, 484 F.3d 717, 724-730 (5th Cir. 2007) (outlining variation in substantive laws of express and implied warranties of nationwide jurisdictions in upholding order denying certification); *In re: Bridgestone/Firestone*, 288 F.3d 1012, 1015-1016 (7th Cir. 2002) (citations omitted) (reversing order certifying nationwide classes, recognizing that "state laws about such theories as those presented by our plaintiffs differ, and such differences have led us to hold that other warranty, fraud, or products-liability suits may not proceed as nationwide classes").

## V.  CONCLUSION

There was no CPSC recall.  There is no express warranty that was breached.  The three plaintiffs may have each pled colorable individual claims, but their own expert has not supported them.  There are very few complaints given the over 1.6 million pressure cookers sold, and those few would each raise individualized issues on liability and damages.  Plaintiffs have no damages model or damages expert.  Plaintiffs have not come forward with sufficient evidence to support any class certification, much less a nationwide class that would require application of varying law across the country.  For the foregoing reasons, Tristar requests that plaintiffs' class certification motion be denied.

Respectfully submitted,

/s/ Hugh J. Bode
Hugh J. Bode (0000487)
Martin T. Galvin (0063624)
REMINGER CO., L.P.A.
101 West Prospect Avenue, Suite 1400
Cleveland, Ohio 44115
(216) 687-1311 phone
hbode@reminger.com
mgalvin@reminger.com
Attorneys for Defendant

20

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was forwarded to all parties and counsel via the Court's electronic filing system this 30th day of January, 2017.

/s/ Hugh J. Bode
_____
Hugh J. Bode (0000487)
