**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| KENNETH CHAPMAN, et al., | |
| Plaintiffs, | Case No. 1:16-cv-1114 |
| v. | Judge James S. Gwin |
| TRISTAR PRODUCTS, INC., | |
| Defendant. | |

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW**
**IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

For the reasons set forth in the memorandum of law included below in support of this Motion, Plaintiffs Kenneth Chapman, Jessica Vennel, Jason Jackson, and Edwina Pinon submit this Motion for Final Approval of Class Action Settlement and respectfully request that the Court enter the attached proposed Final Approval Order.

Dated: June 12, 2018

Respectfully submitted,

/s/ Gregory F. Coleman
Gregory F. Coleman (*pro hac vice*)
Adam A. Edwards (*pro hac vice*)
Mark E. Silvey (*pro hac vice*)
Lisa A. White (*pro hac vice*)
GREG COLEMAN LAW PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
greg@gregcolemanlaw.com
adam@gregcolemanlaw.com
mark@gregcolemanlaw.com
lisa@gregcolemanlaw.com

[Additional counsel appearing on signature page]

1

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF THE CASE................................................................................. 3

    A.      History of the Litigation................................................................................. 3

    B.      History of Settlement Negotiations................................................................ 6

    C.      The Terms of The Settlement ........................................................................ 7

    D.      The California Litigation ............................................................................... 9

    E.      Notice Program .............................................................................................. 9

III.    LEGAL STANDARD............................................................................................. 10

IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ........................... 12

    A.      The Likelihood of Success and the Benefits of the Settlement ........................... 12

        1.      Risks Associated with Continuing Litigation ........................................... 12

            a)      This Court Rejected Nationwide Class Certification.................... 12

            b)      The Class Might be Decertified .................................................... 13

            c)      Risk of Finding of No Liability .................................................... 13

            d)      Risk of Finding of No Damages ................................................... 13

            e)      Risks on Appeal ............................................................................ 14

            f)      Risks of Collection........................................................................ 14

        2.      Benefits of the Settlement........................................................................ 14

    B.      The Risk of Fraud or Collusion ........................................................................ 16

    C.      The Complexity, Expense, and Likely Duration of the Litigation ....................... 17

    D.      The Amount of Discovery Engaged In by the Parties .......................................... 18

    E.      The Opinions of Class Counsel and Class Representatives.................................. 19

    F.      The Reaction of Absent Class Members............................................................. 20

    G.      The Public Interest .......................................................................................... 21

    H.      Whether the Settlement Gives Preferential Treatment to Named Plaintiffs but Only Perfunctory Relief to Unnamed Class Members ........................................ 22

V.      THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE.......... 24

VI.     CONCLUSION...................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Carson v. Am. Brands, Inc.*, 450 U.S. 79 (1981) .......................................................... 11-12

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)......................................21

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ...............................................11

*Figueroa v. Sharper Image Corp.*, No. 1:05-cv-21251-CAMA (S.D. Fla.) .....................14

*Garner v. State Farm Mut. Auto. Ins.*, No. 08-cv-1365, 2010 WL 1687832
(N.D. Cal. Apr. 22, 2010) ...................................................................................................21

*Gasch v. Global Fitness Holdings*, 822 F.3d 269 (6th Cir. 2016) ....................................21

*Gascho v. Global Fitness Holdings, LLC*, No. 11-cv-436, 2014 WL 1350509
(S.D. Ohio Apr. 4, 2014)......................................................................................................23

*Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992)....................................21

*Hadix v. Johnson*, 322 F.3d 895 (6th Cir. 2003)................................................................22

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ...........................21

*In re Dry Max Pampers Litigation*, 724 F.3d 713 (6th Cir. 2013) ....................................24

*In re Dun & Bradstreet Credit Svcs. Corp.*, 130 F.R.D. 366 (S.D. Ohio 1990)................21

*In re Linerboard Antitrust Litig.*, No. 1261, 2004 U.S. Dist. LEXIS 10532
(E.D. Pa. June 2, 2004)  ......................................................................................................15

*In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196,
2015 U.S. Dist. LEXIS 23482 (N.D. Ohio Feb. 26, 2015) .................................................15

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006)...............................19

*Kinder v. Nw. Bank*, No. 10-cv-405, 2013 WL 1914519
(W.D. Mich. Apr. 15, 2013)..................................................................................................11

*Laguna v. Coverall N. Am., Inc.* 753 F.3d 918 (9th Cir. 2014) .........................................17

*Liberte Capital Grp. v. Capwill*, No. 99-cv-818, 2007 WL 2492461
(N.D. Ohio Aug. 29, 2007) ...................................................................................................22

*Olden v. Gardner*, 294 F. App'x 210 (6th Cir. 2008).........................................................19

*Rankin v. Rots*, No. 02-cv-71045, 2006 WL 1876538
(E.D. Mich. June 27, 2006)...................................................................................................11

*Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642 (6th Cir. 2009)..............................11

*Stinson v. Delta Mgmt. Assoc., Inc.*, 302 F.R.D. 160 (S.D. Ohio 2014)...........................21

*Taft v. Ackermans*, No. 02-cv-7951, 2007 WL 414493
(S.D.N.Y. Jan. 31, 2007) ......................................................................................................24

*Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521
(E.D. Ky. 2010)......................................................................................................................24

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)....................................... *passim*

*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013) .............................11, 24

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2nd Cir. 2005) .........................17

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983)....................................................11, 19

**Rules**

Federal Rule of Civil Procedure 23(e) ..........................................................................1, 10

**MEMORANDUM OF LAW IN SUPPORT OF
<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

Plaintiffs Kenneth Chapman, Jessica Vennel, Jason Jackson, and Edwina Pinon ("Plaintiffs") respectfully request final approval of the settlement as evidenced by the Settlement Agreement that they and Defendant Tristar Products, Inc. ("Tristar") submitted to the Court during the trial in this case, and which was preliminarily approved by the Court on January 19, 2018 (the "Settlement").[1]

## I.      INTRODUCTION

The parties' Settlement[2] is fair, reasonable, and adequate. It was reached after: (a) more than two years of hard-fought litigation; (b) production, review, coding, and analysis of thousands of pages of documents; (c) depositions of parties, witnesses, and experts; (d) expert reports submitted by Plaintiffs and Tristar; (e) briefing of several motions; (f) full trial preparation; (g) the commencement of trial; and (h) extensive settlement negotiations that occurred both before and after the commencement of the trial. As a result, counsel for all parties had an unusually strong basis on which to evaluate the risks of litigation and the benefits of class-wide settlement. Therefore, the Settlement should be approved under Federal Rule of Civil Procedure 23(e).

The Settlement provides immediate relief to all settlement class members (the "Class Members") without the burden of trying their economic claims on an individual basis. Under the agreement, Class Members will receive a $72.50 credit redeemable towards one of three products, subject to availability and possible substitution with an improved or equivalent product. The three products are: (1) a Power Cooker, a 10 qt. pressure cooker – Model No. PC-WAL4; (2) a Power Air Fryer XL, a 5.3 qt. air fryer – Model No. AF-530; (3) a Copper Chef XL Precision Induction

---

[1] Doc. 128.

[2] Settlement Agreement, Doc. 126-1.

Cooktop set, consisting of induction cook top, 11" deep dish casserole pan with glass lid, fry basket, steam rack, 10" round pan with glass lid, and recipe book. Further, the Settlement provides that, for Pressure Cookers they already own, Class Members will receive an extension of the products' original warranty, free of charge, for an additional year. There are no indicia that this Settlement is unfair to Class Members.

The compensation to be paid to Class Counsel will also be fair and reasonable. If the Court approves the Settlement, Class Counsel intends to seek remuneration consistent with its terms for their work on this case. Class Counsel will *request* that they be: (a) reimbursed for expenses that have already been paid; and (b) compensated for their time spent obtaining a class-wide recovery. Under the terms of the Settlement, the Court, rather than Plaintiffs, Class Counsel or Tristar, will decide Class Counsel's compensation. Counsel devoted significant amounts of time and money into this case with no guarantee they would receive any compensation. Accordingly, this approach to compensation and reimbursement demonstrates there was no collusion amongst the parties or their counsel.

Plaintiffs estimate that the Settlement Class contains as many as 3.2 million members, with a reach of roughly 83%, or 2.66 million members.[3] As of June 11, 2018, 11,606 claims were made, with 131 exclusions,[4] over 31,000 video viewings, and *zero* objections.[5] Individuals continue to submit claims at a rate of approximately forty to fifty claims per day, continuing up to the

---

[3] Declaration of Jeanne C. Finegan ¶ 7 (attached as **Attachment 1**).

[4] *Id.* ¶¶ 49, 51.

[5] The United States filed a Statement of Interest (the "U.S. Statement") in opposition to approval of the Settlement. Doc. 134. Plaintiffs dispute that the U.S. has standing to assert any objection to the proposed settlement, and dispute the merits of the minimally analyzed substantive issues stated by the U.S. Plaintiffs will file a separate opposition to the U.S. Statement within fourteen days from the date of its filing, as permitted under the local rules.

conclusion of the claims period on July 4, 2018. This response by Settlement Class Members strongly supports settlement approval. In sum, final approval of this Settlement is appropriate given the relief to be afforded to the Class Members, the structure for determining Plaintiffs' Counsel's compensation, the low opt-out rate among Class Members (for which the vast majority are for personal injury and property damage claims) per the Settlement Agreement, and the complete lack of objections by Class Members or professional objectors.

## II.    STATEMENT OF THE CASE

### A.    History of the Litigation

Plaintiffs alleged Tristar's pressure cookers (the "Pressure Cookers") were defective because they could be opened while dangerous levels of pressure remained in the units, causing liquid to erupt and injure consumers. Plaintiffs brought claims on behalf of themselves and: (a) a proposed nationwide class of consumers; or (b) in the alternative, state classes for Ohio, Pennsylvania, Colorado, and California, *i.e.*, the states of each respective Plaintiff's residence. Plaintiffs alleged, among other things, breach of express warranty. In their Complaint, Plaintiffs sought economic damages equivalent to a full refund of the purchase-price of the product, as well as other relief.[6]

Tristar denied Plaintiffs' allegations that the Pressure Cookers were defective,[7] and moved to dismiss nearly all of Plaintiffs' claims.[8] After Tristar's partial motion to dismiss was fully

---

[6] Complaint ¶¶ 21-22, 30, 69-73, 82-101, Doc. 1.

[7] *See generally* Answer, Doc. 8.

[8] Motion to Dismiss 1-2, Doc. 18. Tristar moved to dismiss all claims except the Ohio Product Liability Act claim, the Pennsylvania breach of implied warranty of merchantability claim, and the Colorado Consumer Protection Act and Product Liability Act claims.

briefed,[9] this Court granted the motion in part and denied it in part. Plaintiffs' warranty claims survived.[10]

Discovery commenced[11] and Plaintiffs received, reviewed, and coded thousands of pages of documents produced by Tristar and third parties. In addition, the parties conducted depositions of each Plaintiff, two corporate representatives, three witnesses, and multiple expert witnesses. The parties conducted joint day-long expert testing of the Plaintiffs' three Pressure Cookers.[12] The parties' experts fundamentally disagreed as to whether a defect existed in the Pressure Cookers.

Plaintiffs moved for class certification,[13] which Tristar opposed.[14] Further, Tristar sought to file a sur-reply and a motion to strike Plaintiffs' reply in support of class certification, both of which Plaintiffs opposed, and for which the Court set a hearing.[15] After that motion was fully briefed,[16] the Court certified Ohio, Pennsylvania, and Colorado state classes to pursue warranty claims, as well as other state-law causes of action, but rejected Plaintiffs' motion for a nationwide

---

[9] Plaintiffs' Opposition Brief, Doc. 23; Tristar's Reply Brief Doc. 29.

[10] Opinion & Order, Doc. 32.

[11] Case Management Order, Doc. 27.

[12] Plaintiffs' Expert Reports, Doc. 43-1 and 51; Tristar's Expert Reports, Docs. 45-2 and 59.

[13] Motion for Class Certification, Doc. 43.

[14] Opposition to Motion for Class Certification, Doc. 47; Tristar's Motion for Leave to File Sur-Reply Brief, Doc. 48; Plaintiffs' Opposition to Motion for Leave, Doc. 50.

[15] Motion for Leave to File Sur-Reply Brief Instanter, Doc. 48; Motion to Strike, Doc. 49; Response in Opposition to File Sur-Reply, or Offered in the Alternative, Motion to Strike, Doc. 50.

[16] Reply in Support of Motion for Class Certification, Doc. 47; Tristar's Motion for Leave to File Sur-Reply Brief, Doc. 48; Response in Opposition to File Sur-Reply, or Offered in the Alternative, Motion to Strike, Doc. 50.

class for breach of express warranty and a multi-state class for breach of implied warranty.[17] The Court approved Plaintiffs' Class Notice and Notice Procedures,[18] and notice issued to absent class members, and Plaintiffs provided notification to the Pennsylvania, Ohio, and Colorado class members. Only thirty-four class members opted to be excluded from the class proceeding.[19]

Tristar subsequently moved to decertify the class and the motion was fully briefed.[20] The Court denied Tristar's motion to decertify the class, but also *sua sponte* bifurcated the trial into liability and damages phases.[21] The Court identified the two questions the jury would decide at trial: "(1) whether the Pressure Cookers have a defect, and, (2) if so, whether the defect makes the Pressure Cookers worthless."[22] In addition, pursuant to Tristar's motion, the Court dismissed without prejudice the individual personal injury claims of the named Plaintiffs.[23]

There was extensive motion practice specifically in preparation for trial. Plaintiffs filed a motion to strike Tristar's "Supplemental Initial Disclosures" and to preclude the testimony of nine previously undisclosed witnesses,[24] which was granted as to two witnesses. Tristar concurrently

---

[17] Opinion & Order 25, Doc. 69.

[18] Order, Doc. 77.

[19] Declaration of Claims Administrator Steven Weisbrot ¶ 22, Doc. 119-1.

[20] Opposition to Motion to Decertify, Doc. 83; Reply in Support of Motion to Decertify, Doc. 84.

[21] Tristar also moved to exclude the testimony of Plaintiff's expert, Dr. John Pratt, which this Court rejected. Opinion & Order, Doc. 70.

[22] Opinion & Order 2-5, Doc. 86.

[23] Opinion & Order, Doc. 101.

[24] Motion to Strike Tristar's "Supplemental Initial Disclosures" and to Preclude Testimony By Nine Newly-Disclosed Individuals, Doc. 82.

filed an omnibus motion *in limine*.[25] Each of these motions were fully briefed.[26] Some of the motions *in limine* had not been ruled on when settlement was reached.

Throughout the litigation prior to the actual trial, the named Plaintiffs in the Ohio Action (who are residents of Ohio, Pennsylvania, and Colorado) and their Class Counsel personally attended multiple motion hearings and status conferences in this case, in addition to their depositions being taken.[27]

*Voir dire* was conducted and a jury of twelve was chosen and impaneled. On July 10, 2017, the jury trial began. Following the parties' opening arguments, Dr. John Pratt was presented as an expert witness on behalf of the Plaintiffs to testify about his inspection, his testing, and his opinions about the defective Pressure Cookers. Thereafter, two of the three named Plaintiffs testified about their own experiences with the Tristar Pressure Cookers.[28] During an afternoon recess, however, the parties ultimately reached the settlement described herein.

### B. History of Settlement Negotiations

On June 9, 2017, when the trial was only a month away, the parties attended a day-long, in-person mediation with well-respected mediator Michael Ungar at ULMER & BERNE LLP in Cleveland. The mediation did not result in settlement. The parties continued arms-length negotiations over the course of several weeks following the mediation but were not able to reach

---

[25] Omnibus Motion *in Limine*, Doc. 81

[26] Brief in Opposition to Tristar's Omnibus Motion *in Limine*, Doc. 87; Reply in Support of Omnibus Motion *in Limine*, Doc. 94.

[27] *See* Docs. 16, 27, 39, 40, 80, and 95.

[28] Docs. 121-123, *voir dire* and trial minutes and transcripts.

a settlement. Each side prepared for trial. At the conclusion of the June 22, 2017 Final Pretrial Conference, the Court referred the parties to the Magistrate Judge to once again explore settlement.

Upon the Court's referral, the parties participated in a settlement conference before Magistrate Judge Jonathan D. Greenberg on June 23, 2017,[29] but were again unable to come to a resolution. The Magistrate Judge conducted a second mediation the following week. However, the parties were still unable to reach a settlement. Trial commenced and Plaintiffs and their expert testified. During a mid-afternoon break on the first day of trial, however, the parties re-engaged the Magistrate Judge and re-started settlement discussions. Those discussions resulted in a proposed nationwide class settlement, which the parties presented to the Court on the record following the afternoon break during the first day of trial.

## C.    The Terms of the Settlement

The Settlement offers benefits to Class Members who submit timely, valid claims and who otherwise comply with the agreement's requirements. Claimants are required to: (a) verify that they have watched, or have read the transcript for, a short safety video regarding the Pressure Cookers; and (b) timely submit a completed claim form. In the event a Class Member does not have access to the Internet, accommodation will be made to allow the Settlement Class Member to read the transcript of the video and verify having done so.[30] The benefits to Claimants include:

- A $72.50 credit redeemable towards one of the following products, subject to availability and possible substitution with an improved or equivalent product: (1) a Power Cooker, a 10 qt. pressure cooker – Model NO. PC-WAL4; (2) a Power Air Fryer XL, a 5.3 qt. air fryer – Model No. AF-530; (3) a Copper Chef XL Precision Induction Cooktop Set, consisting of induction cooktop, 11" deep dish casserole pan with glass lid, fry basket, steam rack, 10" round pan with glass lid, and recipe book.[31]

---

[29] Order, Doc. 96.

[30] Settlement Agreement § IV.B.1, Doc. 126-1.

[31] *Id.* § I.O.

- A free one-year warranty extension for the Pressure Cooker they currently own.[32]

- Tristar will pay up to $890,000.00 in Notice and Claims Administration costs.[33]

Under the terms of the Settlement, Tristar also agrees to resolve the Plaintiffs' individual personal injury claims without the necessity of their having to file new litigation,[34] and to pay reasonable attorney's fees to be determined by the Court.[35]

The proposed Settlement would resolve all economic claims nationwide, including those in the related action of *Pinon v. Tristar Products, Inc.*, No. 1:16-cv-00331-DAD-SAB (E.D. Cal.) ("*Pinon*"), which has been transferred to this Court and consolidated with the Ohio case for a nationwide resolution. Consistent with the Court's earlier direction,[36] the class notice states: "If you or anyone you know has suffered personal injuries as a result of a Pressure Cooker, and wish to pursue an individual claim for those personal injuries and/or for a property damage claim, then that Person(s) should Opt Out of this Litigation."[37] The proposed Settlement includes a full release of Released Claims and Unknown Claims against Tristar.[38]

---

[32] *Id*. § I.X.

[33] *Id*. § III.C.

[34] *Id.* § I.GG.

[35] *Id.* § VIII.

[36] *See* Opinion & Order 2-3, Doc. 101.

[37] Notice of Class Action Settlement 3, Doc. 126-2.

[38] Settlement Agreement §§ I. LL, I. UU, VII, Doc. 126-1.

### D.    The California Litigation

On March 10, 2016, Plaintiff Pinon filed a class action complaint in the Eastern District of California against Tristar (the "California Case"). That action alleges breach of express and implied warranty claims, as well as a claim under California's Unfair Competition Law ("UCL") on behalf of "all persons who purchased Tristar Pressure Cookers."[39] Tristar filed a motion to dismiss that complaint on May 3, 2016.[40] On May 24, 2016, Plaintiff Pinon filed an amended complaint, adding allegations for breach of warranty under the Magnuson-Moss Warranty Act ("MMWA"), among other changes.[41] The Court denied Tristar's motion to dismiss the *Pinon* case.[42]

During the discovery process in the California Case, it became evident that Tristar's WAL-1 and TRI-6 pressure cookers, rather than the Power Pressure Cooker XL units initially indicated, were in fact the subject of the *Pinon* case. The Ohio and California Cases were consolidated for purposes of this settlement pursuant to the Court's Order Granting the Parties' Joint Motion to Transfer Venue, filed October 30, 2017.[43]

### E.    Notice Program

The Notice Program approved by this Court, in conjunction with the Motion for Preliminary Approval, was designed to reach as many Class Members as feasible. All those whose

---

[39] Class Action Complaint for Breach of Warranty and Unfair Business Practices, 1:16-cv-00331-DAD-SAB, ¶¶ 1, 34-59, (*Pinon*) Doc. 1.

[40] Motion to Dismiss, (*Pinon*) Doc. 14.

[41] Plaintiff's First Amended Class Action Complaint, ¶¶ 41-50, (*Pinon*) Doc. 17

[42] Order Denying Defendant's Motion to Dismiss, (*Pinon*) Doc. 26.

[43] Order Granting Parties' Joint Motion to Transfer Venue, (*Pinon*) Doc. 54.

names and addresses were known to Tristar received a mailed or emailed Notice.[44] A short-form Notice directed possible Class Members to the settlement website, and was published in *Good Housekeeping*, *National Geographic*, *Reader's Digest*, and *People Magazine*—magazines with combined readership of more than 145,000,000 individuals.[45] Additional advertising was placed on Facebook, Instagram, Pinterest, and YouTube.[46] The Settlement Administrator also transmitted 273,213 Notices by U.S. mail, and 734,825 by email.[47] As of June 8, 2018, the settlement website had received 165,872 session visits and the settlement telephone number has received 9,631 calls.[48]

As of June 11, 2018, the Claims Administrator had received 11,606 claims, 131 timely exclusion requests, 6 late exclusion requests, over 31,200 views of the educational safety video, and zero objections from Class Members to either the Settlement's terms or the Petition for Attorney Fees.[49] The last day to submit claims is July 4, 2018.

## II.    LEGAL STANDARD

A district court must determine whether a class action settlement is "fair, reasonable, and adequate."[50] The Sixth Circuit has identified seven factors to guide a district court's decision whether to approve a settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense

---

[44] Finegan Declaration ¶ 18.

[45] *Id.* ¶ 35.

[46] *Id.* ¶ 41.

[47] *Id.* ¶¶ 21-22.

[48] *Id.* ¶¶ 47-48.

[49] *Id.* ¶¶ 7, 49, 51.

[50] *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (quoting Fed. R. Civ. P. 23(e)(1)(C)).

and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."[51] The district court must also ask "whether the settlement 'gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members.'"[52]

In evaluating fairness, a district court must be mindful of "the federal policy favoring settlement of class actions."[53] The "strong presumption in favor of voluntary settlements" is "especially strong in class action cases."[54] Because "public policy strongly favors settlement of disputes without litigation . . . [s]ettlement agreements should . . . be upheld whenever equitable and policy considerations so permit."[55]

The district court should not "substitute its business judgment for that of the parties."[56] The court should instead "judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement."[57] Based on these standards, the Court should approve the parties' Settlement.

---

[51] *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *UAW*, 497 F.3d at 631).

[52] *Id*. at 755 (quoting *Williams v. Vukovich*, 720 F.2d 909, 925 n.11 (6th Cir. 1983)).

[53] *UAW*, 497 F.3d at 632.

[54] *Kinder v. Nw. Bank*, No. 10-cv-405, 2013 WL 1914519, at *3 (W.D. Mich. Apr. 15, 2013) (citing *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010)).

[55] *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009) (citation omitted).

[56] *Rankin v. Rots*, No. 02-cv-71045, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006).

[57] *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also UAW*, 497 F.3d at 631.

## III.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The Settlement reached in the consolidated cases demonstrably fulfills all seven factors identified by the Sixth Circuit.

### A.     The Likelihood of Success and the Benefits of the Settlement

The predominant question before the Court is whether the Settlement is fair considering "plaintiff's likelihood of success on the merits."[58] Plaintiffs allege that the Pressure Cookers are essentially worthless due to the risks associated with operating them without adequate safety features. Consistent with this theory, during the litigation, Plaintiffs proffered a full-refund damages model and sought to recover the full purchase price of the Pressure Cookers. The original, retail price of these products ranged from $100.00 to $160.00. This full-refund damages model serves as a benchmark against which the Court may evaluate the primary terms of the Settlement.

#### 1.     Risks Associated with Continuing Litigation

Because this case was settled after discovery was completed, dispositive motions resolved, *and trial had commenced*, the parties, their counsel, and the Court, have an unusually strong basis for understanding the risks associated with continuing litigation.

##### a)     The Court Rejected Nationwide Class Certification

Plaintiffs' motion for certification of a nationwide class had been denied by this Court. Unless that ruling were overruled on appeal, a judgment would permit recovery only on behalf of purchasers in Pennsylvania, Ohio, and Colorado, and, the California action would never have been certified as it had been preliminarily settled[59] after the exclusion of Plaintiff Pinon's proposed

---

[58] *UAW*, 497 F.3d at 631 (quoting *Carson*, 450 U.S. at 88 n.14).

[59] Notice of Settlement of Entire Case, (*Pinon*) Doc. 48.

expert report.[60] The risk of no recovery at all for about 70% of all Settlement Class Members was very high without costly and time-consuming litigation being brought in each of the other forty-seven states. Further, later-filed cases would narrow the potential relief significantly due to not-yet-tolled statutes of limitation.

### b) The Class Might Be Decertified

Had Plaintiffs continued this litigation without entering into the Settlement, there was a continuing risk that the Class could be decertified. If the class certification ruling were reversed on appeal, which, based on its past history, Tristar would have sought, there would be no recovery for Class Members at all.

### c) Risk of Finding of No Liability

Tristar has claimed throughout the case that its products were not defective and was prepared to present a vigorous defense. A jury ruling in favor of the Class cannot be presumed. At the time the Settlement was reached, none of the Defendant's proof had been offered. Had Plaintiffs continued this litigation and continued to prosecute their claims at trial, there was a risk that they would not have recovered on any or some of their claims.

### d) Risk of Finding of No Damages

Plaintiffs' theory of damages required the jury to find that the Pressure Cookers purchased by Class Members had no value, so that damages were equal to purchase price. If the jury were not persuaded—for example, if they found there was some value even in a defective Pressure Cooker—they might have determined that a no damage award was warranted. Had Plaintiffs

---

[60] Order Granting Defendant's Motion to Strike Plaintiff's Expert Disclosure and Vacating May 31, 2017 Hearing, (*Pinon*) Doc. 47.

continued this litigation and continued to prosecute their claims at trial, there was a risk that they would not have recovered on any or some of their claims.

### e)  Risks on Appeal

Beyond the risks described above, numerous issues that had been resolved in Plaintiffs' favor in motion practice, including a motion to dismiss the Complaint, *Daubert* motion and motions *in limine*, would become reviewable in an appeal to the Court for Appeals for the Sixth Circuit. Trial would certainly create additional issues that could have been raised on appeal. Had Plaintiffs continued this litigation, additional risks could materialize on appeal.

### f)  Risks of Collection

Finally, there is no guarantee that any judgment entered, and affirmed on appeal, would be collectible. Tristar is a privately-owned company and its financial condition is unknown to Plaintiffs.[61] Plaintiffs settled, in part, to avoid the risks associated with collecting any judgment entered and affirmed against Tristar.

### 2.  Benefits of the Settlement

The Settlement provides for each Class Member to receive: (a) a $72.50 credit redeemable towards the purchase of a replacement product; and (b) a one-year extension of the warranty period for the Pressure Cooker the Class Member already owns. The $72.50 credit represents a value equal to 45.3% to 72.5% of the maximum damages that Plaintiffs were seeking in the litigation, depending on which model Pressure Cooker the Class Member had purchased, plus the additional benefit associated with the warranty extension of the Pressure Cooker each Class Member already

---

[61] *See, e.g., Figueroa v. Sharper Image Corp.*, No. 1:05-cv-21251-CAMA (S.D. Fla.), Docs. 508, 510 (the Defendant entered bankruptcy shortly after the District Court rejected a settlement, with the result that class members received nothing).

owns. Taken together, the benefits received by the Settlement Class represent a substantial recovery given the all-or-nothing risks associated with the parties trying the case to conclusion.[62] Thus, the benefits to the Settlement Class under the proposed Settlement surpass the "fair, reasonable, and adequate" threshold.

If the Settlement is approved, Class Members in this case will obtain benefits that exceed the recoveries approved by courts in other class actions. Courts have approved settlements in which a recovery of only 5.35% to 28% of maximum potential damages were obtained.[63] A recovery of only 18% has been deemed an "impressive result."[64] The benefit obtained here—45.3% to 72.5% of the maximum damages that Plaintiffs were seeking—far exceeds the recoveries approved in other cases.

Additionally, the Pressure Cookers now being sold by Tristar that Class Members may purchase with the credit have additional safety features that were not present on the Pressure Cookers that are the subject of this settlement—thus a very real public and class benefit is that safer products are being placed into the marketplace.

If approved by the Court, an actual recovery is obtainable by Class Members that avoids all the risks associated with continued litigation. Had the trial continued, it is possible that the

---

[62] Because the Class Members are not required to return their Pressure Cookers, should they decide to continue to use them, the safety instruction requirement to assert a claim is designed to help prevent the same types of injuries that led to this litigation in the first place. It provides education about the risks, methods to mitigate risks, and proactive warnings that may otherwise be unknown to purchasers.

[63] *See, e.g., In re Linerboard Antitrust Litig.*, No. 1261, 2004 U.S. Dist. LEXIS 10532, at *15-17 (E.D. Pa. June 2, 2004) (collecting cases).

[64] *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 U.S. Dist. LEXIS 23482, at *17 (N.D. Ohio Feb. 26, 2015) ("A settlement figure that equates to roughly 18% of the best case-scenario classwide overcharges is an impressive result in view of these possible trial outcomes.").

Court may have granted a directed verdict. Or that the jury might have ruled for Tristar. Or that, even if Plaintiffs prevailed, the jury might have granted relief that was far less valuable than that to which the parties have agreed in the Settlement. Even if the jury had found for Plaintiffs, the trial result could have been reversed on appeal. Accordingly, a recovery that represents 45.3% to 72.5% of claimed damages, as well as other direct and qualitative benefits, is fair. Considering the possibility that the Class Members could receive *nothing* absent the Settlement, the recovery here reflects a substantial victory for them.

### B. The Risk of Fraud or Collusion

It is indisputable that no fraud or collusion resulted in the Settlement of this case. Courts presume that "the class representatives and counsel handled their responsibilities with the independent vigor that the adversarial process demands" absent "evidence of improper incentives."[65] Moreover, in this case, all the indicators demonstrate that counsel and the parties acted appropriately. At every turn, Tristar fought this class action with four different nationally-recognized defense firms, and Class Counsel fought back just as vigorously—as is undeniably shown by the fact that they took the case to trial. In the midst of trial and even after testimony, arms-length negotiations continued, overseen by Magistrate Judge Jonathan D. Greenberg. It was as a result of these efforts that the case was ultimately settled.

The terms of the Settlement refute the idea that it was the product of fraud or collusion. The Settlement guarantees *no specific fees or litigation expenses* to the Ohio Class Counsel, and caps the fees payable to the California Class Counsel.[66] The awards payable to named Plaintiffs,

---

[65] *UAW*, 497 F.3d at 628.

[66] Settlement Agreement § VIII.A., Doc. 126-1.

likewise, are capped but not guaranteed.[67] Thus the Court will determine Class Counsel's fees based in large part on its conclusions about the amount of relief they obtained for Class Members. Class Counsel's interests are thus fully aligned with the Settlement Class's interests, and there is no real risk of self-dealing, fraud, or collusion.[68] The terms of the settlement lack any of the hallmarks of a potentially collusive deal such as "*a promise* of excessive attorney fees,"[69] or an agreement to pay attorneys' fees separate from class funds or return unclaimed amounts of a settlement fund to Defendant.[70]

Class Counsel's prosecution of this case shows both their aptitude at assessing class action cases' value and their commitment to vigorously advancing their clients' interests. Their commitment cannot be legitimately questioned. They invested approximately $240,000.00 in litigation expenses and over $2 million worth of their time (based upon the hourly rates typically awarded in this jurisdiction), despite facing substantial risks and a formidable opponent in order to secure the Settlement in this case.

### C.    The Complexity, Expense, and Likely Duration of the Litigation

Tristar contested virtually every possible issue, from the presence of a defect—blaming user error rather than its own product—to whether the Court properly certified the state classes.[71] It has been clear throughout the case that Tristar would defend the litigation vigorously at every turn. And as discussed above, Plaintiffs had several difficult and costly steps to complete before

---

[67] *Id.* § VIII.B.

[68] *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2nd Cir. 2005) (noting that the method for determining class counsel's fees aligned the interests of the class).

[69] *UAW*, 497 F.3d at 628 (emphasis added).

[70] *See, e.g.*, *Laguna v. Coverall N. Am., Inc.* 753 F.3d 918, 924-25 (9th Cir. 2014).

[71] Docs. 78-79, 83, 84.

any litigated recovery could be obtained: not only were the class certification briefing and expert discovery contested, but so too were the decertification briefing, pretrial preparation and motions, and the commencement of the trial itself. And at multiple points in the litigation, the parties attempted to reach a settlement. Given the sizable obstacles Plaintiffs had to overcome, and those still remaining, any recovery outside of this Settlement could be highly uncertain.

### D.     The Amount of Discovery Engaged In by the Parties

This factor weighs heavily in favor of the Settlement, as substantial discovery was completed prior to the commencement of trial. Plaintiffs reviewed and coded thousands of pages of documents produced by Tristar and third parties, including:

- Compiled sales data and information on returns and credits;
- Customer complaints;
- Internal testing performed by Tristar;
- Reports by outside experts;
- Testing reports by ProQC;
- Communications to and from the CPSC; and
- General specifications for the pressure cookers at issue.

In addition, the parties conducted depositions of Plaintiffs Kenneth Chapman (and two of Plaintiff Chapman's family members), Jessica Vennel, and Jason Jackson; two Tristar corporate representatives pursuant to Federal Rule of Civil Procedure 30(b)(6) (Alejandro Lozano and Matthew Fisher); the parties' expert witnesses (John Pratt and Jason Mattice); and defense witness Eric Theiss. The parties jointly conducted day-long expert testing of the Plaintiffs' three Pressure Cookers at a third-party facility in Ohio.[72]

---

[72] Plaintiffs' Expert Reports, Docs. 43-1 and 51; Tristar's Expert Reports, Docs. 52-2 and 59.

It is hard to imagine parties in a better position to understand the strengths and weaknesses of this case.[73] Discovery is "essential" to enable "class counsel to develop the merits of their case" and assess "the propriety and fair value of a settlement."[74] Because "the deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered,"[75] the significant discovery completed in this case counsels a significant amount of deference. This factor thus weighs heavily in favor of approval of the Settlement.

E.    **The Opinions of Class Counsel and Class Representatives**

In deciding whether a proposed settlement warrants approval, "[t]he judgment of the parties' counsel that the settlement is in the best interest of the settling parties is entitled to significant weight."[76] Class Counsel include national leaders in complex class action litigation, particularly in the field of product defect cases, who have a record of zealously advocating for their clients, astutely judging the prospects of a given case, and obtaining the best possible recovery. Their considered judgment—after extensive discovery, expert analysis, extensive motion practice, and the commencement of trial—suggests that the Settlement is the best course of action for the Class and is entitled to considerable deference.[77]

---

[73] *See, e.g.*, *Olden v. Gardner*, 294 F. App'x 210, 218 (6th Cir. 2008) ("The factor that weighs against the settlement most heavily is the limited amount of discovery engaged in by the parties.").

[74] *Id.*

[75] *Williams*, 720 F.2d at 922.

[76] *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 597 (E.D. Mich. 2006) (internal quotation marks and citation omitted).

[77] *See Williams*, 720 F.2d at 922-23 ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.").

Similarly, the named Plaintiffs have actively participated in this case each step of the way. Throughout the litigation, the named Plaintiffs in the Ohio Action (who are residents of Ohio, Pennsylvania, and Colorado) and their Counsel personally attended multiple motion hearings and status conferences prior to the trial in this case.[78] Each named Plaintiff produced documents, responded to Tristar's interrogatories, and discussed the case extensively at each step of the way with Class Counsel. Each of the named Plaintiffs testified in his or her deposition, as did two family-member witnesses. All three of the Plaintiffs were present at trial (with Plaintiff Vennel testifying via video conference), and of the three Plaintiffs,[79] two of the named Plaintiffs testified at trial before the Settlement was reached. Each named Plaintiff believes the Settlement serves the Class well, and each named Plaintiff has filed or will be filing a claim to be considered along with the rest of the Settlement Class.

### F.    The Reaction of Absent Class Members

The reaction of absent Class Members similarly weighs heavily in favor of approval. As outlined above, more than 11,606 class members had filed claims as of June 11, 2018[80]—and the number of claims submitted will continue to increase in the month remaining before the end of the claims period. By contrast, just 131 potential class members sought exclusion in a timely manner, with another 6 late exclusion requests,[81] representing approximately 0.0117% of the Class.[82] Notably, the vast majority of these opt-out requests were filed by Class Members who were advised

---

[78] *See* Docs. 16, 27, 39, 40, 80, and 95.

[79] Specifically the Plaintiffs in the Ohio Action, Plaintiffs Chapman, Vennel, and Jackson.

[80] Finegan Declaration ¶ 51.

[81] *Id.* ¶ 49.

[82] *See id.* ¶¶ 49, 51.

to opt out because they had personal injury and/or property damage claims—of the 131 total exclusion requests, 99 stated that they had personal injury claims.[83] Thus, none of the opt-outs suggest dissatisfaction with the terms of, or relief provided by, the Settlement. Courts routinely approve cases with a far higher opt-out rate.[84] Moreover, none of those seeking exclusion expressed any dissatisfaction with the amount of the settlement, or the fees and costs incurred by Class Counsel.

In addition, although nearly one million notices were distributed, and advertising and social medial campaigns reached many more Class Members, zero objections were filed by Class Members.[85] This factor weighs strongly in favor of the Settlement.[86]

### G.     The Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."[87] This consumer product case sought to protect the interests of consumers at large by preventing the advertising and warranting of Pressure Cookers as safe when they were not, and placing them in the stream of commerce. The strong public interest served by

---

[83] *Id.*

[84] *See, e.g.*, *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (opt-out rate of 0.55%); *Garner v. State Farm Mut. Auto. Ins.*, No. 08-cv-1365, 2010 WL 1687832, at *15 (N.D. Cal. Apr. 22, 2010) (opt-out rate of 0.4%).

[85] Finegan Declaration ¶ 49.

[86] *Gasch v. Global Fitness Holdings*, 822 F.3d 269, 277 (6th Cir. 2016) (finding that only two objections from 605,000 class members weighed in favor of approval); *Stinson v. Delta Mgmt. Assoc., Inc.*, 302 F.R.D. 160, 165 (S.D. Ohio 2014) (finding that no objections weighs in favor of approval); *In re Dun & Bradstreet Credit Svcs. Corp.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) (same).

[87] *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 580 (E.D. Mich. 2003) (quoting *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).

the Settlement is magnified by the injuries that some Settlement Class Members have suffered as a result of the defective Pressure Cookers and the relief the Settlement Class will receive—which are both monetary through replacement products (including a safer Pressure Cooker) and extended warranties, and non-monetary through the wide-scale disclosure of the risks—to prevent future injuries. Furthermore, this litigation has led to access to more recent designs of the product that include additional safety mechanisms, which will make the products safer even for those future consumers who are not a part of the Settlement Class. The public interest is served through the Court's approval of this Settlement.

### H.    Whether the Settlement Gives Preferential Treatment to Named Plaintiffs but Only Perfunctory Relief to Unnamed Class Members

The Settlement is fair because it treats all Class Members the same, giving neither preferential treatment to the named Plaintiffs nor perfunctory relief to unnamed Settlement Class Members. Each Class Member is entitled to receive a $72.50 credit redeemable towards certain Tristar products and a one-year Limited Warranty Extension, while bearing none of the fees, costs, or expenses incurred in the litigation.

Although Plaintiffs have applied for Court-approved service awards for their service to the Settlement Class, such awards alone do not constitute disparate treatment to the Plaintiffs at the expense of the Settlement Class Members. Indeed, "[n]umerous courts have authorized incentive awards. These courts have stressed that incentive awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class."[88]

---

[88] *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (citations omitted). Incentive awards typically range from, as here, "a few thousand dollars to $85,000." *Liberte Capital Grp. v. Capwill*, No. 99-cv-818, 2007 WL 2492461, at *1 (N.D. Ohio Aug. 29, 2007).

The requested service award of $10,000.00 to each named Plaintiff is reasonable given the time and resources the Plaintiffs devoted to the case, including each personally attending multiple hearings at the Court's direction, providing thorough responses to written discovery and deposition testimony,[89] the testimony of two named Plaintiffs at trial, and the third participated in the trial via video teleconferencing approved by the Court.[90] Thus, "the awards have been tailored to compensate each Class Representative in proportion to his or her actions, time, and effort in prosecuting this action."[91, 92]

As discussed above, the Settlement provides more than merely "perfunctory" relief to absent Settlement Class Members. Perfunctory relief may exist where absent class members receive only illusory injunctive relief or where they are placed in a worse position than without the litigation, such as one case where class members received zero monetary relief and only "illusory"

---

[89] Plaintiffs' deposition testimony was not limited to their testimony alone. Tristar also subpoenaed and deposed two of Plaintiff Chapman's family members.

[90] *See* Order [non-document] entered by Judge James S. Gwin on July 7, 2017 granting Plaintiff Vennel's motion, Doc. 115.

[91] *Gascho v. Global Fitness Holdings, LLC*, No. 11-cv-436, 2014 WL 1350509, at *27 (S.D. Ohio Apr. 4, 2014), *adopted*, 2014 WL 3543819.

[92] "Plaintiffs forego claims for any class-wide claims for personal injury damages." Opinion & Order 2, Doc. 69; Opinion & Order 1, Doc. 101. In order to avoid the inconvenience of having to institute new litigation, Plaintiffs Chapman, Vennel, and Jackson each settled their individual personal injury claims at the time of the class settlement for $25,000.00 each. These claims had been dismissed by the Court without prejudice prior to trial. Opinion & Order 3, Doc. 101. The Notice advised absent Class Members with personal injury or property damage claims to opt out of the settlement, and as discussed above, most of the 131 opt-outs represent personal injury claims—99 total exclusion requests indicated that they suffered personal injury. Finegan Declaration ¶ 49. Plaintiff Pinon also settled her individual personal injury claim for $25,000.00. Accordingly, Counsel believe that few, if any, remaining Class Members have personal injury claims. Moreover, the Settlement does not affect or impact future claims that arise after the date of Preliminary Approval or have not yet occurred. Thus there is no prejudice to anyone with a remaining personal injury or property damage claim.

injunctive relief, while counsel received $2.73 million without "tak[ing] a single deposition, serv[ing] a single request for written discovery, or even fil[ing] a response to [defendant's] motion to dismiss."[93] Similarly, in another case the settlement exonerated the named plaintiffs from all debts owed to the defendant, whereas it *forbade* absent class members from opposing debt collections using the false affidavits at issue in the case, thus putting them in a demonstrably worse position than if the case had not been filed at all.[94] Here, by contrast, up to approximately 75% of Plaintiffs' full-refund damages model (in addition to other benefits) is available to Settlement Class members, without the risk of an adverse jury verdict, directed verdict, or delay associated with a subsequent appeal. The Class Members here receive more than "perfunctory" relief.

## V.  THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

The Court must also find that the method of distributing the settlement proceeds is equitable.[95] "If the plan of allocation is formulated by competent and experienced class counsel, an allocation plan need only have a reasonable, rational basis."[96]

As discussed above, the $72.50 credit for the purchase of a different product and the one-year Limited Warranty Extension will be available to Class Members who verify that they watched a safety video or, alternatively, verify that they read a transcript of the safety video, and who file a valid claim under the Settlement. The relief offered provides substantive value commensurate with the merits of Plaintiffs' claims. Not only are Class Members educated about proper use and potential risks of the Pressure Cookers, but they also learn how to proactively identify potential

---

[93] *In re Dry Max Pampers Litigation*, 724 F.3d 713, 718, 721 (6th Cir. 2013).

[94] *Vassalle*, 708 F.3d at 755.

[95] *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 534 (E.D. Ky. 2010).

[96] *Taft v. Ackermans*, No. 02-cv-7951, 2007 WL 414493, at *9 (S.D.N.Y. Jan. 31, 2007) (internal quotation marks omitted).

problems *before* suffering injuries. Likewise, they have the opportunity to replace the dangerously defective Pressure Cookers with a safer model if they choose that option.

## VI.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the Settlement.

Dated: June 12, 2018                          Respectfully submitted,

/s/ Gregory F. Coleman
Gregory F. Coleman (*pro hac vice*)
Adam A. Edwards (*pro hac vice*)
Mark E. Silvey (*pro hac vice*)
Lisa A. White (*pro hac vice*)
GREG COLEMAN LAW PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
greg@gregcolemanlaw.com
adam@gregcolemanlaw.com
mark@gregcolemanlaw.com
lisa@gregcolemanlaw.com

Jack Landskroner (0059227)
Drew Legando (0084209)
LANDSKRONER GRIECO MERRIMAN, LLC
1360 West 9th Street, Ste. 200
Cleveland, OH 44113-1254
Telephone: (216) 522-9000
Facsimile: (216) 522-9007
jack@lgmlegal.com
drew@lgmlegal.com

Edward A. Wallace (*pro hac vice*)
Tyler J. Story (*pro hac vice*)
WEXLER WALLACE LLP
55 W. Monroe Street, Ste. 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222

Facsimile: (312) 246-0022
eaw@wexlerwallace.com
tjs@wexlerwallace.com

Shanon J. Carson
Arthur Stock (*pro hac vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-4656
Facsimile: (215) 875-4604
scarson@bm.net
astock@bm.net

Todd M. Friedman
Meghan George
David B. Levin
LAW OFFICE OF TODD M. FRIEDMAN, PC
111 West Jackson Street, Suite 1700
Chicago, IL 60604
Telephone: 312-212-4355
Facsimile: 866-633-0228
TFriedman@toddflaw.com
mgeorge@toddflaw.com
dlevin@toddflaw.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2018, a copy of the foregoing PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Gregory F. Coleman
Gregory F. Coleman