## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| KENNETH CHAPMAN, et. al., | Civil Action No. 1:16-CV-1114 |
| Plaintiffs, | |
| v. | Judge James S. Gwin |
| TRISTAR PRODUCTS, INC., | |
| Defendant. | |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE BY THE ARIZONA ATTORNEY GENERAL AND THE STATE OF ARIZONA FOR THE LIMITED PURPOSES OF APPEAL

MARK BRNOVICH
  *ARIZONA ATTORNEY GENERAL*

Oramel H. Skinner (*pro hac granted*)
Dana R. Vogel (*pro hac granted*)
Barry H. Uhrman
  Assistant Attorneys General
OFFICE OF THE ARIZONA
  ATTORNEY GENERAL
2005 North Central Avenue
Phoenix, Arizona 85004
Phone: (602) 542-5025
Fax: (602) 542-9279
Email: Barry.Uhrman@azag.gov

*Counsel for Proposed-Intervenor Arizona Attorney General and the State of Arizona*

**INTRODUCTION**

The Arizona Attorney General, and the State of Arizona, by and through its Attorney General, (hereinafter "Arizona Attorney General"), respectfully seek intervention for purposes of appeal, both as of right and permissively. This motion arises from the Arizona Attorney General's ongoing efforts to protect Arizona class members who may be harmed by class action settlement abuse in federal courts, including in connection with the proposed settlement here.

Because it appears from the Court's statements at the July 12 fairness hearing that the Court intends to approve the proposed settlement and related fee request, and in light of the previewed legal bases for the same, the Arizona Attorney General now seeks to intervene for purposes of appealing those approvals. Intervention is necessary at this time in order "to combat the 'clientless litigation' problem" that is both pervasive in the class action settlement context and a principal motivation in Congress's enactment of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1711 *et. seq. See* S. Rep. 109-14, 2005 U.S.C.C.A.N. 3, 34; *see also In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177 (9th Cir. 2013) ("Congress passed CAFA 'primarily to curb perceived abuses of the class action device.'"). Moreover, as explained below, all of the requirements for both intervention as of right as well as permissive intervention are satisfied. And appellate review is particularly warranted here—the Court's settlement and fee approval would not just harm Arizona consumers, the Court's approach here turns on an expansion of existing circuit authority (which creates a conflict with CAFA) and a legal determination regarding the meaning of CAFA on which there is an acknowledged circuit split, and to which the Sixth Circuit has not spoken.

1

## BACKGROUND

The pending intervention motion continues the Arizona Attorney General's efforts to speak on behalf of Arizona citizens who will be harmed by the proposed settlement in this case. The Arizona Attorney General received notice of the proposed settlement on February 12, 2018, and thereafter raised concerns with class and defense counsel.  These concerns were only heightened when the motion for fees was submitted on May 18, 2018 (a mere two weeks before the objection deadline for class members), making plain the imbalanced nature of the settlement. Under the proposed settlement and fee petition, class members will receive no money from the settlement while class counsel would pocket around $2.5 million in cash for fees and costs, with up to another ~$900,000 in cash provided for notice and distribution (of which only ~$220,000 was expended as of May 14, 2018).  *See* Dkt. 66-1 at 4; Dkt. 133 at 2-3, 23-24.  Instead of cash, 13,107 claiming class members will receive a $72.50 coupon laden with restrictions, a warranty extension of nominal value, and the "opportunity" to watch a safety video produced by the Defendant and imposed as a condition of receiving the settlement benefits.  The remaining consumers in the multi-million person class will receive nothing of value even as they release their claims (including personal injury claims).

The Arizona Attorney General filed an *amicus curiae* brief on June 12, 2018 (with the support of a bipartisan coalition of 17 other state Attorneys General), highlighting the failings of the settlement and urging its rejection by the Court.  *See* Dkt. 136-2.  That brief raised arguments under CAFA, including Section 1712's coupon limits, as well as Rule 23's overarching requirement that a settlement be fair, adequate, and reasonable (including being proportionally fair when considering the difference between the class recovery and class counsel's fee award).

And it explained numerous reasons why, "[w]here there is so much cash in the settlement and so little interest in the coupons and warranties, the settlement can only stand by sending a fair apportionment of the available cash to the class." Dkt. 136-2 at 18.  The Arizona Attorney General also participated in the fairness hearing on July 12, 2018, and presented arguments to the Court relating to the flaws in the proposed settlement and the harm final approval would cause to the millions of consumer class members who would have their claims released (including personal injury claims) without getting any direct benefit from the settlement.

At the July 12 fairness hearing, the Court noted an intent to grant approval to both the proposed settlement and class counsel's fee request, with the Court's actual approval and full rationale to be set out in a forthcoming written opinion.  The Arizona Attorney General therefore now seeks to intervene as a party for purposes of taking an appeal to the Sixth Circuit to speak on behalf of the many absent class members whose interests are threatened here.

## ARGUMENT

### I. THIS COURT SHOULD GRANT INTERVENTION AS OF RIGHT

A party moving to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2) must satisfy four requirements: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997); *accord Cuyahoga Valley Ry. Co. v. Tracy*, 6 F.3d 389, 395 (6th Cir. 1993).  Because all four requirements are satisfied here, the motion to intervene should be granted.

### A. The Motion Is Timely

The Supreme Court has explained that the "critical inquiry" in weighing a motion to intervene for the purpose of appeal "is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment." *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96 (1977). And a motion to intervene is properly viewed as timely where the motion is "within the time period in which the named plaintiffs could have taken an appeal." *Id.* at 396. Indeed, some courts have gone so far as to view filing within the notice-of-appeal deadline as *per se*, conclusive evidence of timeliness. *See Clarke v. Baptist Mem'l Healthcare Corp.*, 641 Fed. App'x 520, 524 (6th Cir. 2016) (citing *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1320 (9th Cir.1997)). The Sixth Circuit has not adopted a categorical rule of timeliness, but recognizes that *McDonald* sets forth a "general rule" that governs the timeliness inquiry, *Clarke*, 641 Fed. App'x at 524-25, and that the time to file a notice of appeal is "a factor of major significance," *Linton by Arnold v. Comm'r of Health & Env't, State of Tenn.*, 973 F.2d 1311, 1318 (6th Cir. 1992). Indeed, the Sixth Circuit has repeatedly reversed denials of intervention where the motions were filed within the time to file a notice of appeal. *See, e.g.*, *Linton*, 973 F.3d at 1318; *Clarke*, 641 Fed. App'x at 528; *Triax Co. v. TRW, Inc.*, 724 F.2d 1224 (1984).

The Arizona Attorney General's motion is plainly timely under *McDonald*. It comes before the 30-day clock on a notice of appeal has even started, let alone run out. And the Arizona Attorney General had no need to intervene earlier, having submitted *amicus* arguments against the settlement and in favor of a proper division of settlement proceeds, which the Court weighed explicitly at the fairness hearing. Earlier intervention would have served no purpose. *See Triax*, 724 F.2d at 1228 (prior to plaintiff's decision not to appeal, proposed intervenor "had

4

no reason to seek intervention"). But intervention is now necessary, and serves an important purpose, because it has become apparent as of the July 12 fairness hearing that the settlement will be approved alongside the fee request, and only parties can file a notice of appeal to seek appellate review of this decision.

### B. The Arizona Attorney General Has Substantial Legal Interests In This Case

The Arizona Attorney General has substantial legal interests in this settlement approval decision that are more than enough to satisfy the Sixth Circuit's standard. The Sixth Circuit has adopted "a rather expansive notion of the interest sufficient to invoke intervention of right." *Miller*, 103 F.3d at 1245; *see also Bradley v. Miliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) ("[T]his court has acknowledged that 'interest' is to be construed liberally."). As the Sixth Circuit has explained, "an intervenor need not have the same standing necessary to initiate a lawsuit[.]" *Miller*, 103 F.3d at 1245. "Protectable interest" under Rule 24 is broader than Article III standing. And "[t]he inquiry into the substantiality of the claimed interest is necessarily fact-specific," with the understanding that "close cases should be resolved in favor of recognizing an interest under Rule 24(a)." *Miller*, 103 F.3d at 1245, 1247. Under this standard, there are at least three substantial legal interests that support intervention as of right here.

*First*, proposed-intervenor State of Arizona has a protectable "quasi-sovereign interest in the health and well-being—both physical and economic—of its residents." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982). And the proposed settlement impairs the economic well-being of Arizona consumer class members by releasing the class's claims—including claims for personal injury—in return for less than 1% of class members obtaining a coupon of highly questionable future value and an extended warranty of only

nominal value. The State's interests in the economic welfare of its citizens thus supports standing and an adequate legal interest to warrant intervention. *See*, *e.g.*, *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992) ("[T]he State has an interest in protecting and promoting the state economy on behalf of all of its citizens." (reversing denial of motion to intervene by State of Arkansas)); *Zimmerman v. GJS Group, Inc.*, No. 17-304, 2017 WL 4560136, at *5 (D. Nev. Oct. 11, 2017) (granting intervention to Nevada; holding Nevada had "protectable "interest[s] in the health and well-being—both physical and economic—of its residents in general.").

*Second*, the Arizona Attorney General has protectable interests under CAFA, which expressly assigns a role to state Attorneys General to speak for consumers in connection with proposed federal class action settlements. To facilitate state Attorney General participation, CAFA includes a mandatory notice provision that alerts the appropriate state officials (in most instances, the pertinent state Attorney General) of proposed class action settlements that may affect their respective citizens. *See* 28 U.S.C. § 1715.

CAFA conveys to the States (and state Attorneys General in particular) a specific legal, statutory interest in speaking on behalf of class members against class-action settlements that are contrary to their citizens' interests. CAFA's legislative history makes clear that Congress envisioned an active role for state officials when proposed settlements are detrimental to unnamed class members. S. Rep. 109-14, 2005 U.S.C.C.A.N. 3, 32 (notice provision "is designed to ensure that a responsible state and/or federal official … is in a position to react if the settlement appears unfair to some or all class members …"); *id.* (officials "have an opportunity to get involved if they think it is appropriate…"); *id.* at 34 (after receiving notice, officials can

6

"decide what (if any) action to take to protect the interest of the plaintiff class."). Consistent with this, state officials have stepped in on a wide variety of settlements. *See e.g.*, *In re Google Inc. Cookie Placement*, No. 17-1480, Dkt. 29 (3d Cir. July 10, 2017) (brief of bipartisan state Attorney General coalition urging reversal of *cy pres*-only settlement); *In re EasySaver Rewards Litigation*, No. 16-56307, Dkt. 21 (9th Cir. May 8, 2017) (brief of bipartisan state Attorney General coalition urging reversal of imbalanced coupon settlement); *Cannon, et al. v. Ashburn Corp.*, No. 16-1452, Dkt. 68-3 (D.N.J. Feb. 23, 2018) (brief of bipartisan state Attorney General coalition urging rejection of imbalanced coupon settlement). And these efforts have helped generate meaningful outcomes for consumers. *See, e.g.*, *Allen v. Similasan Corp.*, No. 12-cv-376, Dkts. 219, 223, 257, 261, 268 (S.D. Cal.) (after Arizona-led coalition filed amicus brief and District Court rejected initial deal, revised settlement was reached that increased the cash recovery to the class from $0 to ~$700,000).

The active engagement of state Attorneys General is perhaps most important where (as here) the proposed settlement fails to serve the interests of absent class members and there is no objector from the class (perhaps because the imbalanced nature of the deal was never directly transmitted to the absent class members most hurt by the deal). CAFA is precisely "intended to combat the 'clientless litigation' problem." S. Rep. 109-14, 2005 U.S.C.C.A.N. 3, 33. And one of the sharpest manifestations of that problem is where a settlement benefits all the attorneys and parties except the absent class members—the kind of case (as here) in which the class counsel and defense counsel reach a deal that provides outsized compensation to class representatives, a broad release to the defendants, millions in fees to class counsel, and yet generates almost no consumer benefit. *See* Dkt. 136-2 at 18. Indeed, this case is particularly concerning given that

the imbalanced nature of the settlement was not fully known to absent class members, as the fee request (which confirmed that millions were to change hands in this case) was not part of the class notice, and was only made public a mere two weeks before the objection deadline; this significant notice problem further illustrates that this is a clear example of the kind of case Congress had in mind when empowering state officials through CAFA.

Because "few (if any) plaintiffs closely monitor the progress of the case or settlement negotiations," Attorneys General have an ongoing responsibility under CAFA to protect their citizens when class counsel and the class representatives fail to protect the interests of absent class members—even if that requires intervention for purposes of appeal. S. Rep. 109-14, 2005 U.S.C.C.A.N. 3, 32. But absent intervention here, the interests that Congress has conveyed upon the Arizona Attorney General will be thwarted in precisely the type of case where those interests are most important. And the continued involvement of the Arizona Attorney General is not only consistent with CAFA, it is of heightened importance given that (per the Court's statements from the bench) CAFA's substantive requirements are at issue here—settlement approval will entail extending precedent in a manner contrary to CAFA and expanding an existing circuit split on the meaning of CAFA.

*Third*, the Arizona Attorney General is a repeat player in similar class action settlement cases under CAFA, and repeatedly has sought to participate in cases to protect its citizen consumers and ensure statutory compliance. The Arizona Attorney General enlists a team of attorneys to work on CAFA matters, who put in consistent time and resources. With the assistance of this team, the Arizona Attorney General has submitted comment letters to federal agencies as well as letters in connection with preliminary approval decisions. *See e.g.*, Mark

8

Brnovich, Arizona Attorney General's Office, Comment Letter on Federal Trade Commission's Proposed Study to Examine Consumer Perception of Class Action Notices, FTC File No. P024210 (Aug. 16, 2017) (comment letter expressing support for proposed FTC study); *Hiroyuki Oda, et al. v. Wilson Sporting Goods Co.*, No. 15-02131, Dkt. 145 (C.D. Cal. Jan. 16, 2018) (letter from Office of Arizona Attorney General urging court to deny preliminary approval because settlement failed to comply with CAFA's coupon strictures). The Arizona Attorney General has also produced a steady stream of briefs speaking against imbalanced settlements in cases across the country, up to and including the Supreme Court. *See, e.g.,* Brief of Attorneys General of 19 States as *Amici Curiae* Supporting Petitioners, *Frank v. Gaos*, No. 17-961(July 16, 2018); *see also supra* 7. And counsel for the Arizona Attorney General has presented oral argument in trial and appellate courts in connection with CAFA matters. *See, e.g., In re EasySaver Rewards Litigation*, No. 16-56307, Dkt. 64 at 1 (9th Cir. Mar. 22, 2018) (awarding counsel for Arizona Attorney General five minutes of oral argument time); *Cannon, et al. v. Ashburn Corp.*, No. 16-1452, Dkt. 100 at 2 (D.N.J. Mar. 27, 2018) (noting appearance of counsel for Arizona Attorney General at fairness hearing).

This repeat involvement forms the basis for a substantial legal interest worthy of intervention, as the Sixth Circuit has explained in a related context. *Miller*, 103 F.3d at 1245 ("repeat player" nature of proposed intervenor supported intervention). Indeed, courts have time and again recognized that participation in underlying proceedings can give rise to protectable interests in related judicial proceedings. *See*, *e.g.*, *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983) (Court did not have "any difficulty determining that the organization seeking to intervene had an

9

interest in the subject of the suit" in cases "challenging the legality of a measure which it had supported"); *Washington State Bldg. & Constr. Trades Council v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982) (sponsors of ballot initiative had significant protectable interest in defending initiative against challenge); *see also Miller*, 103 F.3d at 1245-46 (Sixth Circuit favorably citing and following *Babbitt* and *Sagebrush*).

### C. The Arizona Attorney General's Substantial Legal Interests Will Be Impaired If Intervention Is Not Granted

If this motion is denied, the Arizona Attorney General's substantial legal interests here will be impaired, as Arizona consumers will be harmed by the finalization of the settlement and the Arizona Attorney General will be barred from furthering the interests of its citizens and effectively serving its role under CAFA. As the Sixth Circuit has explained, a proposed intervenor need show "only that impairment of its substantial legal interest is possible if intervention is denied." *Miller*, 103 F.3d at 1247. That bar is easily surmounted here. As the Arizona Attorney General's prior filing makes plain, approval of the imbalanced settlement and fee request will harm the interests of consumers. *See* Dkt. 136-2 at 18 ("A settlement cannot be in the best interest of the class or fair, adequate, and reasonable under Rule 23 where, as here, it generates business for defendants and provides class counsel with the substantial settlement cash while the class languishes with restricted coupons that will (at best) produce only a fraction of the value provided to class counsel in the proposed settlement.").[1] And the Arizona Attorney General's status as *amicus curiae* will certainly no longer be sufficient once this Court grants final approval to the imbalanced settlement, given the absence of any formally filed objections.

---

[1] Given the Court's familiarity with the Arizona Attorney General's points questioning the settlement, the points raised in the Arizona Attorney General's prior filing are not set forth in great detail here. Nonetheless, those points are hereby incorporated as if set forth fully herein.

10

Indeed, as the Sixth Circuit has made clear, "[a] stake is more than just the opportunity to present argument to the district court, an interest that can be accommodated by amicus participation." *Miller*, 103 F.3d at 1245.

### D. No Other Party Already Before The Court Will Adequately Protect The Substantial Legal Interests That Are Imperiled

Finally, existing parties do not adequately represent proposed-intervenors' interests here. "[T]he Supreme Court has stated that the burden of demonstrating inadequacy of representation is a minimal one." *Triax*, 724 F.2d at 1227 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). A proposed-intervenor need only "prove that representation *may be* inadequate," and "is not required to show that the representation *will in fact be* inadequate." *Miller*, 103 F.3d at 1247 (emphasis added). Indeed, it can "be enough to show that the existing part[ies] … will not make all of the prospective intervenor's arguments." *Id.* at 1247.

That standard is easily met here. All existing parties before the Court support the proposed settlement and have no intention of appealing its approval, in particular because each takes away something of substantial value from the settlement, notwithstanding the fact that nearly all the absent class members receive nothing. *See, e.g.,* Dkt. 136-2 at 22 (settlement "generates business for defendants and provides class counsel with the substantial settlement cash while the class languishes with restricted coupons that will (at best) produce only a fraction of the value provided to class counsel in the proposed settlement"). This follows the well-known fact that in dividing settlement funds that are obtained via the release of class members' claims, the interest of class members and others often diverge. *See*, e.g., Dkt. 136-2 at 21 ("[T]he proposed arrangement here is precisely why CAFA exists and courts are tasked with policing

11

"inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees[.]").

Indeed, the lack of objectors here strongly supports granting intervention now. Absent intervention, there will be no direct appeal of the settlement approval.[2] And "'a decision not to appeal by an original party to the action can constitute inadequate representation of another party's interest.'" *Miller*, 103 F.3d at 1248; *see also Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991) (when interest of absent party not represented, there is inadequate representation).

## II. ALTERNATIVELY, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

If the Court decides that the Arizona Attorney General is not entitled to intervention as a matter of right, the Court has discretion to grant permissive intervention. Fed. R. Civ. P. 24(b). Permissive intervention may be granted "if the motion is timely, and if the 'applicant's claim or defense and the main action have a question of law or fact in common.'" *Purnell,* 925 F.2d at 950. As set forth above, this motion is timely. *See supra* 4-5. And here the Arizona Attorney General seeks to raise arguments concerning whether the proposed settlement is "fair, adequate and reasonable," which this Court is required to consider before approving any settlement. Fed. R. Civ. P. 23(e)(2). The Arizona Attorney General thus raises issues of law and fact "in common" with "the main action." Fed. R. Civ. P. 24(b)(2).

Permissive intervention is particularly appropriate because, absent intervention, a settlement of substantial value is likely to evade appellate review even as the Sixth Circuit's approach is entirely unclear. The Sixth Circuit has never applied the reasoning of its *Gascho*

---

[2] The Arizona Attorney General could of course appeal the denial of intervention, however, and if successful could obtain appellate review of the underlying merits. *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 474-75 (4th Cir. 2015) (collecting cases); *Alternative Research & Dev. Found. v. Veneman*, 262 F.3d 406, 410 (D.C. Cir. 2001).

12

panel decision to a case governed by CAFA and involving something beyond a common cash fund. And there is a persistent, acknowledged circuit split on how to interpret CAFA in this type of case, on which question the Sixth Circuit has not spoken. Given these considerations, as well as the magnitude of the proposed settlement and fee, this Court should ensure that the Sixth Circuit's views can be ascertained and applied before millions of dollars change hands and millions of consumers lose claims (including personal injury claims) without compensation.

First, as discussed at the fairness hearing, the Court will likely expand *Gascho*'s holding on the valuation of a cash settlement fund to the instant case—a settlement involving an award of only coupons and warranties. In *Gascho*, the Sixth Circuit permitted the "benefit to the class" to be calculated based on the total cash fund available to the class members, as opposed to the cash actually claimed by class members. *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 288 (6th Cir. 2016). But while *Gascho* dealt with an all-cash settlement fund of ~$15 million, the situation here is *Gascho*'s inverse: a no-cash-to-the-class settlement. Instead, the settlement provides only extended warranties of nominal value and coupons, which must be valued per CAFA's coupon strictures. The Court's extension of *Gascho* to this settlement harms absent class members not only by avoiding the mandates that CAFA put in place to protect consumers in coupon settlements, but also by awarding fees to attorneys based on an illusory, uniform valuation of non-cash benefits that are plainly not of equal value to each class member.

Second, as explained in the Arizona Attorney General's prior filing, when a settlement's benefit to class members includes a distribution of coupons, circuits have strongly diverged in interpreting CAFA's mandates on the awarding of fees. The Ninth Circuit, on the one hand, has held that according to CAFA's Section 1712(a), "[i]f a settlement gives coupon and equitable

13

relief and the district court sets attorneys' fees based on the value of the entire settlement, and not solely on the basis of injunctive relief, then the district court **must** use the value of coupons redeemed when determining the value of the coupons part of the settlement." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1184 (9th Cir. 2013). This interpretation is supported by CAFA's legislative history and furthers one of CAFA's main intents—discouraging settlements that provide essentially worthless coupons that "form some part of the basis for an attorneys' fee award." *Id.* at 1185; *see also* Dkt. 136-2 at 14-15. On the other side of the split, the Seventh and Eighth Circuits read Section 1712 to permit a lodestar approach to fees even when coupons are part of the settlement. *See In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 710 (7th Cir. 2015) (Section 1712 "permits a district court to use the lodestar method to calculate attorney fees to compensate class counsel for the coupon relief obtained for the class"); *Galloway v. Kan. City Landsmen, LLC*, 833 F.3d 969, 975 (8th Cir. 2016) (agreeing with Seventh Circuit's interpretation of Section 1712). But those courts nonetheless require consideration of a cross-check of what class counsel got for the class, with fees tightly tied to the "degree of success obtained." *Galloway*, 833 F.3d at 975; *see also* Dkt. 136-2 at 18. Without guidance from the Sixth Circuit, and without a party to appeal, absent class members are left with no options for obtaining Sixth Circuit guidance, even as the conflicting interpretations of Section 1712 have substantial implications for consumer class members here.

### III. IF THIS COURT DOES NOT GRANT EITHER INTERVENTION AS OF RIGHT OR PERMISSIVE INTERVENTION, THE COURT SHOULD DEEM THE ARIZONA ATTORNEY GENERAL TO BE AN OBJECTOR

If the Court does not grant intervention as of right or permissive intervention, the Arizona Attorney General asks that from this point forward, the Court deem the Arizona Attorney

General as a formal objector to this settlement based on its current and prior filings. Courts have recognized that objections voiced by state Attorneys General can represent the many absent class members of their respective states and that state Attorneys General may be considered stand-ins for their citizens that have not formally objected to a settlement. *See Wilson v. DirectBuy, Inc.*, No. 3:09-CV-590JCH, 2011 WL 2050537, at *9 (D. Conn. May 16, 2011) (thirty-nine attorneys general filed brief as *amicus curiae* opposing settlement; court viewed brief "as a placeholder for many absent class members' objections."); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1328 (S.D. Fla. 2007) (discussing meaning of "appearance of the Attorneys General of thirty-five states and the District of Columbia, representing hundreds of thousands, if not millions, of eligible class members."). Therefore, should the Court not grant intervention, it should grant the Arizona Attorney General the status of being an objector due to the Arizona Attorney General's previous submissions as *amicus curiae* and the fact that the settlement class contains numerous Arizona consumers. *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1033 (N.D. Cal. 1999) (considering objections of multiple organizations "in light of their previous *amicus* status in the litigation").

## CONCLUSION

For the foregoing reasons, the Arizona Attorney General's motion to intervene should be granted, or, alternatively, the Arizona Attorney General should be deemed to be an objector from this point forward in these proceedings.

July 26, 2018        Respectfully Submitted,

            MARK BRNOVICH
            ATTORNEY GENERAL
            STATE OF ARIZONA

              */s/ Barry H. Uhrman*
            Oramel H. Skinner (*pro hac granted*)
            Dana R. Vogel (*pro hac granted*)
            Barry H. Uhrman
             *Assistant Attorneys General*
            OFFICE OF THE ARIZONA
              ATTORNEY GENERAL
            2005 North Central Avenue
            Phoenix, Arizona 85004
            Phone: (602) 542-5025
            Fax: (602) 542-9279
            Email: Barry.Uhrman@azag.gov

            *Counsel for Proposed-Intervenor*
            *Arizona Attorney General and the*
            *State of Arizona*