UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-----------------------------------------------------------

:
KENNETH CHAPMAN, *et al.*,            :       CASE NO. 16-CV-1114
            Plaintiffs,            :                      17-CV-2298
:
       vs.            :       OPINION & ORDER
:       [Resolving Docs. No. 133, 135, 136]
TRISTAR PRODUCTS, INC.,            :
            Defendant.            :
:
-----------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

The parties seek the Court's approval of their proposed class settlement and attorney's fee request.[1] On July 12, 2018, the Court held a fairness hearing on the proposed class settlement and fee request. At that hearing, class counsel and defense counsel argued in favor of approving the settlement. However, the United States Department of Justice and a representative for eighteen State Attorneys General (collectively, the "Government Representatives") argued against the settlement and accompanying attorney's fee request.[2]

In objecting to the settlement, the Government Representatives mostly complain that Plaintiffs' attorney fee application seeks too much. The Government Representatives posit that the settlement would have been greater if the attorney fee application had been lower. In response, Defendant Tristar represented that the attorney fee application was independent of the settlement amount and represented that Defendant Tristar would not pay any higher settlement regardless if the attorney fee application had been lower.

No class members objected to the terms of the settlement or to the attorney's fee request.

For the following reasons, the Court **APPROVES** the class settlement, **GRANTS IN PART** the attorney fee request, and **DENIES** Ohio class counsel's request for expenses.

---

[1] Doc. 133 (motion for attorney fees); Doc. 135 (motion for class settlement approval).
[2] Doc. 134 (United States); Doc. 136 (Eighteen State Attorneys General). Defendant Tristar responds. Doc. 140. Plaintiffs respond. Doc. 141.

Case No. 16-cv-1114
Gwin, J.

## I. Background

### A. *Procedural History*

In May 2016, Plaintiffs sued Defendant Tristar Products, Inc. ("Tristar"). With this lawsuit, Plaintiffs allege that certain pressure cookers made by Tristar had a defect that allowed users to open the pressure cookers' lids even though built-up pressure remained inside the pressure cooker.[3] As a result, the heated contents of the pressure cooker would burst onto the user, potentially harming them.[4] Plaintiffs alleged that this defect existed, despite Tristar's insistence that these pressure cookers were especially safe and that the pressure cookers' lids could not come off if pressure remained in the cooker.[5]

The majority of Plaintiffs' claims survived Defendant's motion to dismiss.[6] The Court certified several state classes, but denied certification for Plaintiffs' requested nationwide class.[7]

After litigating numerous motions in limine, the parties went to trial.[8] On the first trial day, the parties completed voir dire and examined the Plaintiffs' expert and two of the named Plaintiffs.

During an afternoon break, the parties met with Magistrate Judge Greenberg and renewed earlier discussions regarding potential settlement. After additional negotiations, the parties reached the proposed settlement at issue here.

While the *Chapman* litigation occurred in Ohio, there was also a California action, led by Plaintiff Pinon, dealing with the same alleged defect. After the *Chapman* Plaintiffs settled, Plaintiff Pinon transferred her case from California to this Court to join the settlement.[9] Like the *Chapman* Plaintiffs, Plaintiff Pinon alleged that the lid-related defect existed in Tristar pressure cookers.[10]

---

[3] *See* Doc. 1 at ¶ 4.
[4] *Id.*
[5] *See id.* at ¶¶ 21-25.
[6] *See* Doc. 32.
[7] *See* Doc. 69.
[8] *See e.g.*, Docs. 81, 97, 99, 117.
[9] *See* Doc. 125.
[10] *See* Doc. 1 (case No. 17-cv-2298).

Case No. 16-cv-1114
Gwin, J.

Although Plaintiff Pinon's case was in an earlier stage than *Chapman*, the *Pinon* parties had begun discovery and litigated Defendant's motion to dismiss to decision.[11]

Defendant Tristar has never admitted liability or conceded that their pressure cookers are defective in any way.

### B. *Settlement Terms*

The parties' proposed settlement applies nationwide to approximately 3.2 million Tristar pressure cooker purchasers.

The settlement offers several types of relief to class members. Importantly, to obtain any other relief, class members must verify that they have watched or read a transcript of a safety video created to teach users the safe operation of their pressure cookers.[12]

Assuming they complete that step, class members can submit a claim to receive a $72.50 credit off of one of three Tristar products. These products are an updated version of the pressure cooker at issue here (arguably with a better latching lid mechanism), a power air fryer, or an induction cooktop set.[13] Each of these products cost about $159.00,[14] and class members must pay the difference between the product's retail cost and the value of the credit, plus any shipping and handling fees.[15] Further, class members must buy the product directly from Defendant Tristar and cannot combine the $72.50 credit with any other promotions Defendant Tristar may offer.[16] The credit expires after ninety days.[17]

In addition to the $72.50 credit, the settlement gives class members a one-year warranty extension on class members' Tristar pressure cookers. Defendant Tristar offers a similar six-year

---

[11] *See* Doc. 26 (case No. 17-cv-2298).
[12] Doc. 126-1 at 17, ¶ IV.B.1 ("To be eligible for the Benefits, the Settlement Class Member must verify that they have watched the Safety Video, which shall be no longer than three minutes, and timely submit a signed and completed Claim Form.").
[13] *Id.* at 4-5, ¶ I.O.
[14] *See* Doc. 134-1; Doc. 134-3.
[15] Doc. 126-1 at 4-5, ¶ I.O.
[16] *Id.*
[17] *Id.*

Case No. 16-cv-1114
Gwin, J.

warranty to all consumers for $30.00, and so the approximate value of the one-year warranty extension is $5.00.[18]

Under the settlement, Tristar also agrees to pay up to $890,000 in notice and claims administration costs.[19]

The proposed settlement also includes benefits unique to the named Plaintiffs. The named Plaintiffs agree to settle their personal injury and property damage claims with Defendant Tristar for $25,000.00 each.[20] The named Plaintiffs may also seek an incentive award of up to $10,000 for their efforts in litigating the case.[21]

In exchange for these benefits, all class members agree to release all claims against Defendant Tristar relating to any alleged defects in the pressure cookers at issue here, including personal injury or property damage claims.[22]

Finally, as part of the settlement, Tristar agreed that it would take no position on class counsel seeking fees and expenses if those fees and expenses were less than approximately $2.5 million.

### C. *Class Response to the Settlement*

The claims administrator estimates that settlement notice reached approximately 83 percent of class members.[23] Additionally, the online safety video has been viewed over 31,000 times.[24] As of the end of the claims period, class members had filed 13,174 claims.[25]

Only 137 class members asked exclusion from the class settlement.[26] Ninety-nine of those exclusion requests came from class members who have a personal injury claim.[27]

No class members objected to the proposed settlement.[28]

---

[18] *See* Doc. 134-1 at 4.
[19] Doc. 126-1 at 17, ¶ III.c
[20] *Id.* at 24, ¶ VIII.B.
[21] *Id.*
[22] *Id.* at 53-54.
[23] Doc. 135-1 at 4.
[24] *Id.*
[25] Doc. 147 at 1-2.
[26] Doc. 135-1 at 14.
[27] *Id.*
[28] *Id.*

-4-

Case No. 16-cv-1114
Gwin, J.

However, under CAFA,[29] representatives from the United States Department of Justice and eighteen state attorneys general objected to the proposed settlement (together, the "Government Representatives").[30] Generally, the Government Representatives argue that the proposed settlement disproportionately benefits class counsel, and the named Plaintiffs to the detriment of other class members.

Despite no class member objections, the Government Representatives acknowledge that if the lodestar fee calculation method is used, Plaintiffs' counsel qualify for a fee award near the application amount. But the Government Representatives challenge whether the lodestar method can be used and argue that the attorney fees sought are disproportionate to the benefits received by class members.

Acknowledging that settlement approval is independent of attorney fee approval, the Government Representatives then argue that lower attorney fees would necessarily result in a greater settlement for class members. The Government Representatives make this argument even though Tristar has no power to determine fee awards; even though Tristar represented to this Court that the class settlement would not change regardless what Plaintiff attorney fees are awarded; and even though party discussions on plaintiff fee awards occurred after the class settlement was reached.

## II. Legal Standard

Courts in the Sixth Circuit reviewing a proposed class action settlement evaluate seven factors to determine whether the settlement is "fair, reasonable, and adequate."[31] These factors are:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.[32]

---

[29] *See* 28 U.S.C. § 1715.
[30] Doc. 134 (United States); Doc. 136 (Eighteen State Attorneys General).
[31] Fed. R. Civ. P. 23(e)(1)(C).
[32] *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (hereinafter "*UAW*").

Case No. 16-cv-1114
Gwin, J.

The proponents of a settlement bear the burden of proving that the settlement is fair, adequate, and reasonable.[33]

Similarly, when determining whether to approve an attorney's fee request, the Court's ultimate inquiry is whether that fee request is reasonable under the circumstances. Factors relevant to that reasonableness inquiry include: (1) the value of the benefit to the class; (2) the value of the services on an hourly basis; (3) whether attorneys took the case on contingency; (4) rewarding attorneys who produce societal benefits in order to maintain an incentive for others; (5) the litigation's complexity; and (6) the professional skill and standing of class and defense counsel.[34]

### III. Discussion

#### A. *Proposed Settlement*

As an initial matter, the Court notes that although the parties label the proposed $72.50 per capita relief as a "credit," this is in fact a coupon settlement subject to CAFA's coupon settlement provisions.[35]

Relevant here, CAFA requires that courts conduct a hearing and issue a written finding that "the settlement is fair, reasonable, and adequate for class members."[36] As other courts have noted, substantively, this requirement is identical to the one imposed by Rule 23.[37]

The Court finds that the proposed settlement is fair, reasonable, and adequate to compensate the class.

---

[33] *In re: Dry Max Pampers Litig.*, 724 F.3d 713, 719 (6th Cir. 2013).
[34] *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996); *see also Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 280 (6th Cir. 2016) (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009))..
[35] *See* 28 U.S.C. § 1712; *see also Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 54 n.16 (D.D.C. 2010) ("Although Congress did not define the term 'coupon' in the statute, courts have generally considered a coupon settlement to be one that provides benefits to class members in the form of a discount towards the future purchase of a product or service offered by the defendant.").
[36] 28 U.S.C. § 1712(e).
[37] *See Radosti*, 717 F. Supp. 2d at 55.

Case No. 16-cv-1114
Gwin, J.

Of the seven factors that the Sixth Circuit has recognized as relevant to determining a class settlement's fairness, five clearly weigh in favor of approving this settlement, while the other two factors are, at worst, neutral.

### *Complexity and Amount of Discovery Favors the Settlement*

This case was highly complex. Plaintiffs brought express warranty claims for Ohio, Pennsylvania, and Colorado purchasers, not personal injury claims. Plaintiffs sought a complete refund of the class members' purchase price. To show sufficient commonality, Plaintiffs alleged the Tristar pressure cookers shared a common defective lid design that allowed lids to be opened even when pressure remained in the cooker.

Plaintiffs faced a difficult battle in proving the existence of a defect and that this defect was so bad that it made otherwise functional pressure cookers worthless. Additionally, this case proceeded under numerous somewhat distinct states' laws.

This case was both expensive to litigate and potentially exposed Defendant Tristar to hundreds of millions of dollars in liability. Perhaps because of the high potential liability, Defendant Tristar vigorously opposed all of Plaintiff's efforts. Similarly, the parties engaged in extensive discovery involving both Plaintiffs' underlying factual claims and experts.

To summarize, Plaintiffs faced a significant risk that they would lose. However, Defendant Tristar faced extremely large damages exposure if Plaintiffs won.

### *The Opinions of Class Counsel, Reactions of Class Representatives, and Reactions of Absent Class Members Factors Favor Approval*

Both class and defense counsel argued forcefully in support of the settlement. No class representative has objected. Additionally, out of potentially three million absent class members, zero objected to the settlement. Of 3.2 million class members, only 137 class members opted out of the

Case No. 16-cv-1114
Gwin, J.

settlement, and 99 of those opt-outs were because of existing personal injury claims.[38] The reactions of the class favor approval.

### Likelihood of Success on the Merits Favors the Settlement

Finally, and perhaps most importantly in favor of the proposed settlement, the merits of this case were highly uncertain. In order to establish liability, Plaintiffs had to prove both that a pressure cooker defect existed and, in order to satisfy their damages model, that the defect made their pressure cookers worthless. While Plaintiffs' damages model potentially provided maximum recovery for the class, it also created an "all or nothing" scenario that heightened the risk of a defense verdict. Even after a significant amount of testimony on the first day of trial, it was not obvious either that a defect existed or that the defect made Tristar's pressure cookers worthless.

Even assuming that Plaintiffs succeeded at both the liability and damages phases of trial, they still faced an appellate attack on their success up to and through trial. Inevitably, Defendants would have challenged the Court's certifying the class and numerous evidentiary issues that were bound to arise at trial.

As such, by settling, Plaintiffs avoided the real possibility that the class would be left with zero recovery. The likelihood of success on the merits (or lack thereof), strongly favors approving the settlement.

### Risk of Fraud or Collusion

The two remaining *UAW* factors—the risk of fraud or collusion and the public interest—are neutral at worst.

The Court recognizes that settlements like this one demand extra scrutiny from an approving Court. Where primarily non-monetary relief goes to the class, but class counsel seek large,

---

[38] Doc. 135-1 at 14.

Case No. 16-cv-1114
Gwin, J.

unopposed attorney's fees, there is a risk that plaintiff class counsel abdicate their responsibility to the class in order to enrich themselves.[39]

In spite of these risks, the Court does not find any improper behavior on class counsel's part. First and foremost, the parties reached this settlement during trial and after facing significant defenses at every stage. Magistrate Judge Greenberg mediated the settlement discussions. The combination of the late stage of this litigation and a neutral and detached magistrate's involvement in settlement negotiations weighs heavily against the possibility of fraud or collusion.

Further reducing the possibility of fraudulent behavior, Magistrate Judge Greenberg reports that the parties negotiated and settled the class proposed settlement before discussing attorney's fees in any depth.[40]

Finally, as the Court will discuss in further depth below, class counsel here have not requested an exorbitant fee amount. Unlike in other class action cases,[41] class counsel here have not requested a lodestar multiplier.

For those reasons, the Court finds that although the structure of this settlement might raise eyebrows in some cases, the facts discussed above weigh against any finding that there was fraud or collusion in this settlement's formation.

### Public Interest

The final *UAW* factor—whether the settlement is in the public interest—is neutral at worst. Through CAFA and that statute's legislative history, Congress has shown that it has some distaste for coupon settlements.[42] Notably, however, Congress did not forbid coupon settlements.

---

[39] "[C]lass counsel, as 'economic man,' presumably is interested primarily in the size of the attorneys' fees provided for in the settlement, for those are the only money that class counsel, as distinct from the members of the class, get to keep. The optimal settlement from the joint standpoint of class counsel and defendant, assuming they are self-interested, is therefore a sum of money moderate in amount but weighted in favor of attorneys' fees for class counsel." *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014) (Posner, J.).

[40] Doc. 149.

[41] *See, e.g., In re Oral Sodium Phosphate Solution-Based Prods. Liability Action*, No. MDL 2066, 2010 WL 5058454, at *4-5 (N.D. Ohio Dec. 6, 2010).

[42] *See* S. Rep. 109-14, at 15-17 (detailing numerous class settlements where small, if any, relief went to class members while class counsel received high fee amounts).

-9-

Case No. 16-cv-1114
Gwin, J.

On the other side of the ledger, the public interest strongly favors settling class actions.[43] Further, the public interest favors compensating attorneys for bearing the risk and expense of litigating consumer class actions when necessary, instead of simply settling those cases at the first opportunity or not bringing those cases at all. As such, the public interest factors point in both directions, and they certainly do not demand denying the proposed settlement.

For those reasons, the Court finds that the proposed settlement is fair, reasonable, and adequately compensates the class. The Court therefore **APPROVES** the proposed settlement.

## B. *Attorney's Fees and Expenses*

CAFA also dictates how courts may determine an attorney's reasonable fee in coupon settlement cases.[44] Circuit Courts are split, however, on what CAFA requires.[45]

### 1. *28 U.S.C. § 1712 Interpretation*

The Ninth Circuit has held that § 1712 of CAFA requires that attorney's fees in coupon settlements be determined as a percentage of the value of coupons redeemed by the class.[46] This Ninth Circuit interpretation effectively forbids considering the lodestar method of determining attorney's fees when the class receives only coupons as relief.[47]

The Seventh[48] and Eighth Circuits,[49] however, have read § 1712 as a permissive statute that allows district courts to determine whether the percentage-of-fund method or the lodestar method is more appropriate. Under this Seventh and Eighth Circuit reading, § 1712 mandates only that if a

---

[43] *See UAW,* 497 F.3d at 632 (noting the "federal policy favoring settlement of class actions").
[44] *See* 28 U.S.C. § 1712(a)-(c).
[45] *Compare In re Southwest Airlines Voucher Litig.,* 799 F.3d 701, 709-10 (7th Cir. 2015), *and Galloway v. Kansas City Landsmen, LLC,* 833 F.3d 969, 974-75 (8th Cir. 2016), *with In re HP Inkjet Printer Litig.,* 716 F.3d 1173, 1181-86 (9th Cir. 2013).
      In spite of this disagreement, the various circuit courts to address this issue are unanimous in their belief that CAFA is a horridly drafted statute. *See Galloway,* 833 F.3d at 974 (describing CAFA as a "'poorly worded' and 'confusing' statute"); *Redman,* 768 F.3d at 633 ("This is a badly drafted statute."); *In re HP Inkjet Printer,* 716 F.3d at 1181 ("Both the majority of our panel and our dissenting colleague agree that CAFA is poorly drafted. We have previously commented on the 'clumsy' and 'bewildering' wording of other provisions of CAFA.").
[46] *See generally In re HP Inkjet Printer,* 716 F.3d 1173.
[47] *See id.* at 1181-83.
[48] *See generally In re Southwest Airlines,* 799 F.3d 701.
[49] *See generally Galloway,* 833 F.3d 969.

Case No. 16-cv-1114
Gwin, J.

court uses the percentage-of-fund method to determine attorney's fees, the court must calculate that "fund" as the value of coupons actually redeemed.[50]

This Court finds that the Seventh and Eighth Circuits give a more accurate interpretation of § 1712.

As the Seventh Circuit explained, § 1712(a) is best read as "reject[ing] the most abusive method for calculating a fee in a coupon settlement: calculating the fee as a percentage of the *face value* of *all* the coupons issued."[51]

In this way, CAFA stops attempts by class counsel to make large percentage fee applications appear reasonable by agreeing to a settlement that class members are unlikely to redeem.[52] The relevant CAFA Senate Report suggests that Congress intended to address this particular abuse.[53]

Section 1712's authority to consider lodestar applications is clear when § 1712(a) is read in the context of § 1712(b) and § 1712(c). While § 1712(a) states that a fee attributable to coupons "shall be based on the value . . . of the coupons that are redeemed," sections 1712(b) and (c) contemplate courts awarding attorney's fees based on the lodestar method in coupon settlement cases whenever "a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel."[54] Together, these subsections make clear that class counsel can propose *either* a fee based on percentage of coupons redeemed *or* a lodestar calculation.

---

[50] See In re Southwest, 799 F.3d at 709 ("The one choice prohibited by subsection (a) is using a percentage-of-recovery method based on the face value of all coupons merely available to the class.").
[51] Id. at 708 (emphasis in original).
[52] See, e.g., In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig., 55 F.3d 768, 807 (3rd Cir. 1995) (noting that plaintiff's expert estimated that certificates would be worth approximately $2 billion, but "there are substantial obstacles to obtaining and transferring the certificates, none of which [plaintiff's expert] deals with").
[53] See S. Rep. No. 109-14, at 30, as reprinted in 2005 U.S.C.C.A.N. 3, at 30 ("[T]he settlement proponents may propose that counsel fees be based upon the amount of time class counsel reasonably expended working on the action. Section 1712(b) confirms the appropriateness of determining attorneys' fees on this basis in connection with a settlement based in part on coupon relief."); see also In re Southwest, 799 F.3d at 709.
[54] 28 U.S.C. § 1712(b)(1); see also 28 U.S.C. § 1712(c)(2) ("[T]hat portion of the attorney's fee to be paid to class counsel that is not based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (b).").

-11-

Case No. 16-cv-1114
Gwin, J.

Finally, as the Eighth Circuit noted, the permissive "interpretation of § 1712 is more consistent with the substantial discretion district courts have always had to determine the reasonable attorney's fee to award to the prevailing party in a class action case."[55]

For those reasons, the Court finds that 28 U.S.C. § 1712 is permissive, and the lodestar method can be used as an alternative method to calculate attorney's fees in this case.

### 2. *Class Counsel's Proposed Attorney's Fees*

Class counsel propose using the lodestar method to calculate a reasonable fee in this case. The Court allows reference to the lodestar method, however, it will also utilize a percentage-of-the-fund crosscheck.

#### a. *Lodestar Calculation*

The Court finds that class counsel's requested rates and number of hours are reasonable.

Ohio class counsel requests hourly rates between $340.00 and $600.00 for attorney work and rates between $43.00 and $335.00 for non-attorney work. The four law firms that have served as Ohio class counsel worked a total of 4,254.25 hours on this case, and request a total of $2,104,861.87 in fees.

Similarly, California class counsel requests hourly rates in between $325.00 and $625.00 for California attorney work and $250 per hour for paralegal work. California class counsel performed 444.7 hours of work on this case and request a lodestar total of $225,000.00 in fees.[56]

After consulting the Laffey Matrix[57] and considering the length and complexity of this case, as well as class counsel's performance during this litigation, the Court finds that all of class counsel's

---

[55] *Galloway*, 833 F.3d at 975.
[56] California class counsel ultimately calculates their lodestar as $246,275.00, but only requests $225,000.00, which is the maximum amount that the proposed settlement will allow them to request unopposed.
[57] *See* Doc. 133-3 (approving hourly rates between $302 and $563 for government attorneys, based on an attorney's years of experience). The Court finds that a slight upward adjustment from the Laffey Matrix is warranted here based on the complexity of the case, class counsel's performance, and the contingent nature of the fee arrangement.

Case No. 16-cv-1114
Gwin, J.

hourly rates and hours spent for this litigation are reasonable.[58] The Court thus calculates the lodestar amount as $2,329,861.87.

### b. Percentage-of-the-Fund Crosscheck

Cross-checking the $2.3 million lodestar amount against the percentage-of-the-fund calculation shows that class counsel's fee application should be reduced.

Before calculating the hypothetical fund value, the Court notes that no interested party has offered, or even suggested that the Court should seek, expert testimony on the actual value of the coupons offered to class members here.[59]

The parties, against the great weight of precedent,[60] argue that the value of these coupons is equivalent to the coupon's face value. They make this argument in spite of the fact that the coupons have no redeemable cash value, are non-transferrable, expire after ninety days, and can only be used on three Tristar products that must be directly purchased from Defendant Tristar.[61]

---

[58] The Court notes that courts in the Sixth Circuit prefer more detailed documentation of attorneys' hours spent than class counsel provided here. See *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 280-81 (6th Cir. 2016). Nevertheless, the Court is satisfied that the hours listed here are reasonable based on its past experience calculating attorney's fees, the length and complexity of this case, and class counsel's affidavits which were averred under penalty of perjury.

[59] See 28 U.S.C. § 1712(d) (allowing the court to "upon the motion of a party, receive expert testimony from a witness qualified to provide information on the actual value to the class members of the coupons that are redeemed").

[60] See *Redman*, 768 F.3d at 630 (explaining why "83,000 $10 coupons are not worth $830,000 to the recipients"); *In re Mexico Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001) (stating that "compensation in kind is worth less than cash of the same nominal value"); *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 57 (D.D.C. 2010) (noting, while approving a coupon settlement, that "a number of courts have recognized that the actual value of a coupon to a class member may be less than its face value"); *Clement v. Am. Honda Fin. Corp.*, 176 F.R.D. 15, 26-28 (D. Conn. 1997) (explaining how, because of a variety of restrictions, including the fact that the coupons were not transferrable, "the coupons [in *Clement*] are essentially worthless to class members"); see also *In re Dry Max Pampers Litig.*, 724 F.3d 713, 717-19 (6th Cir. 2013) (explaining that a program that allowed class members to return one box of diapers provided "negligible" value to class members because of numerous transaction costs associated with obtaining that relief).

[61] The Court notes that although the Government Representatives make great hay about the Court extending the Sixth Circuit's holding in *Gascho* to the coupon settlement context, the Court believes that the Government Representatives' fears are overblown. *Gascho* simply allows district courts to engage in a case-by-case analysis of how to calculate the value of the benefit to the class. See *Gascho*, 822 F.3d at 286-87. Much like the district court in *Gascho*, the Court here takes a relatively "middle of the road" approach to calculating the benefit to class members.

The Court could hypothetically calculate the maximum fund benefit as the $72.50 coupon face value plus the $5.00 warranty multiplied by the 3.2 million class members (for a value to the class of $248 million). But, given that the total number of claimants is known here, that seems both unnecessarily academic and like a potential abuse of discretion. This is especially so in light of the other assumptions that the Court makes in class counsel's favor. Cf. *In re Dry Max Pampers*, 724 F.3d at 721 ("Cases are better decided on reality than on fiction.").

Case No. 16-cv-1114
Gwin, J.

Further, perhaps because class counsel bases their attorney's fee request solely on their lodestar calculation, the parties have offered the Court no evidence or argument that addresses CAFA's instruction that the value of any common fund in a coupon settlement must be calculated as the value of coupons *redeemed* by the class, as opposed to the value of coupons *available*.[62] This is an important distinction because oftentimes class members redeem only a small fraction of the coupons available to them.[63]

Class counsel also suggests that the Court should consider the extended warranty when determining the benefit to the class. To do this, the Court could calculate the class benefit value by simply multiplying the $5.00 warranty charge that Tristar would otherwise ask from the 3.2 million class members. The Court declines this suggestion because it ignores the low claims rate for this settlement. As the Sixth Circuit has noted, "[c]ases are better decided on reality than on fiction,"[64] and the fact that only 13,174 of 3.2 million class members have submitted claims is the reality of this case.[65]

Even using the parties' generous assumptions about the value of these coupons, the percentage of a hypothetical common fund going to attorney's fees in this case is high.

The coupons here have a face value of $72.50. 13,174 class members have submitted claims for these coupons. Given the effort required to submit a claim, a high percentage of coupons will likely be redeemed. The 13,174 class members to submit claims will also receive a warranty extension on their Tristar products worth approximately $5.00.

---

[62] *See* 28 U.S.C. § 1712.
[63] *See, e.g., Galloway*, 833 F.3d at 971 (reporting "a redemption rate of 0.045%" in a car rental coupon settlement).
[64] *In re Dry Max Pampers*, 724 F.3d at 721 (quoting *United States v. Priester*, 646 F.3d 950, 953 (6th Cir. 2011)).
[65] Assuming that Tristar's coupons are valueless, the Court would alternately calculate the fund value by increasing the size of the hypothetical fund to adjust the low claims rate here (~ 0.4 percent) to a more typical claims rate between 6-7 percent. ($5.00 warranty * 200,000 class members = $1 million value to the class).
   The Court believes that, even though the warranty is a non-cash benefit, the warranty's value is firm enough that this type of claims rate-based increase is consistent with *Gascho*. *See Gascho*, 822 F.3d at 282-888 (noting that a typical claims rate is between 5-8 percent and that it was not an abuse of discretion for the district court to value the benefit to the class at a point between the actual claims rate and the hypothetical full value of the fund).

-14-

Case No. 16-cv-1114
Gwin, J.

Assuming a 100 percent redemption rate among claimants, the total value to the class of the coupons and warranty will be, at most, $1,020,985.[66] Defendant Tristar has also agreed to pay $890,000 in claims administration costs. Counting the full value of this claims administration payment to the class, the total amount of a hypothetical common fund benefit going to the class would be $1,910,985.

Class counsel, meanwhile, seeks $2,329,861.87 in fees and $240,009.63 in costs. The total hypothetical common fund in this case is therefore $4,480,856.50. Without any adjustment, class counsel's lodestar-calculated fees would account for approximately 57 percent of the hypothetical common fund.

Even if class counsel is entitled to a greater percentage of any hypothetical fund because of the complexity of this case, 57 percent is above the norm.[67]

### 3. *Reasonable Fee*

Although the Court finds that class counsel's hours and fee rates are reasonable, the percentage-of-the-fund crosscheck shows that class counsel's fee request should be reduced to account for the limited value of the benefit produced for the class.

The Court finds that a 15 percent reduction from the requested fees adequately accounts for the cabined benefits going to the class. The Court will not reduce the requested fees further because the other five *Moulton* factors point in favor of approving class counsel's lodestar-calculated fee request.[68]

---

[66] (13,174*$72.50) + (13,200*$5) = $1,020,985.
[67] *See* In re Polyurethane Foam Antitrust Litig., 168 F. Supp. 3d 985, 1013 (N.D. Ohio 2016) ("[T]wenty-five percent has traditionally been the benchmark standard [for percentage-of-the-fund fee awards], with the ordinary range for attorney's fees between 20–30%." (internal quotation marks and text modifications omitted)).
[68] *See* Moulton, 581 F.3d at 352; *see also* Gascho, 822 F.3d at 280.
   The Court has discussed the majority of the *Moulton* factors in some depth throughout the rest of this opinion, but to briefly recap for clarity's sake: (1) the value produced for the class cuts against awarding a full lodestar fee; (2) class counsel's hourly rates and time spent were reasonable; (3) class counsel expended considerable resources on a contingency basis with no guarantee of compensation; (4) society has a clear stake in rewarding attorneys who undertake consumer protection cases like this one; (5) the litigation was highly complex; and (6) all parties to the litigation showed considerable skill and have good standing in the legal community.

Case No. 16-cv-1114
Gwin, J.

The Court also recognizes that class counsel have been judicious in their fee calculations. Although it is a commonly approved practice, class counsel did not seek a lodestar multiplier in this case.[69] Additionally, California class counsel seek only $225,000 in fees, even though their lodestar calculation would entitle them to over $250,000 in fees and costs.

Finally, as the Sixth Circuit has acknowledged:

Consumer class actions, furthermore, have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources. If we are to encourage these positive societal effects, class counsel must be adequately compensated—even when significant compensation to class members is out of reach[.][70]

The Court finds that these societal interests are at play here, and warrant a fee close to class counsel's lodestar amount.

For those reasons, the Court **APPROVES** $1,980,382.59 for class counsel's fees.

### C. *Incentive Awards*

The Court will approve reduced incentive awards for the named Plaintiffs. Each of the named Plaintiffs had extensive involvement in this litigation, including responding to discovery, reviewing filings, and depositions.

However, the Court believes that $10,000 is excessive to adequately compensate the named Plaintiffs for their role in recovering benefits for the class.[71]

For that reason, the Court will reduce the *Chapman* named plaintiffs' incentive awards to $7,500 each and will reduce Plaintiff Pinon's incentive award to $6,000. This differential treatment

---

[69] *See, e.g., Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499-500 (6th Cir. 2011) (approving a lodestar multiplier and explaining that "[u]pon determining the lodestar, a district court also has discretion to decide whether an upward or downward adjustment is warranted in order to reach a reasonable fee award."); *see also In re Oral Sodium Phosphate*, 2010 WL 5058454, at *4-5 (approving a 2.0 multiplier while noting that nationwide average multipliers ranged from 2.97 to 4.50 across a range of cases).
[70] *Gascho*, 822 F.3d at 287 (footnotes omitted).
[71] *See, e.g., Hadix v. Johnson*, 322 F.3d 895, 898-99 (6th Cir. 2003) ("[I]ncentive awards are usually viewed as extensions of the common-fund doctrine, a doctrine that holds that a litigant who recovers a common fund for the benefit of persons other than himself is entitled to recover some of his litigation expenses from the fund as a whole.").

-16-

Case No. 16-cv-1114
Gwin, J.

of the named Plaintiffs recognizes that the *Champan* plaintiffs advanced their case considerably further before the settlement, and as a result were forced to prepare for and testify at trial.

The Court therefore **APPROVES** incentive awards of $7,500 each for Plaintiff Chapman, Plaintiff Vennel, and Plaintiff Jackson, and **APPROVES** an incentive award of $6,000 for Plaintiff Pinon.

### D. *Costs*

Ohio class counsel also seeks $240,009.63 in costs. The Court finds this amount reasonable given the length and complexity of this litigation. However, Ohio class counsel has not provided any breakdown of what these costs actually are, instead simply repeating that these expenses are both typical and reasonable.[72]

Given Ohio class counsel's failure to include any information about their incurred expenses, the Court **DENIES** their request for costs. Ohio class counsel may renew their request for costs within fourteen days of the date of this Order.

### E. *Rule 23 Class Certification*

Finally, the Court must ensure that the settlement's proposed class comports with Federal Rule of Civil Procedure 23's requirements for class certification. Here, the parties propose to settle a nationwide class comprising all of the putative nationwide class's claims arising from an alleged defect in Defendant Tristar's pressure cookers.[73]

The Court previously certified numerous classes for trial, and the Court reaffirms its previous reasoning for granting class certification under Rule 23(a) and Rule 23(b)(3).[74]

Changes caused by the settlement do, however, require the Court to briefly discuss the predominance and adequate representation tests here.

---

[72] *See* Doc. 133 at 23; Doc. 133-1 at 9, ¶¶ 21-23.
[73] *See* Doc. 126-1 at 11, ¶ I.LL.
[74] *See* Doc. 69. The Court finds that with the exception of the predominance requirement, the Court's reasons for previously certifying classes in this case remain equally valid here.

-17-

Case No. 16-cv-1114
Gwin, J.

### 1. *Predominance*

The Court previously rejected Plaintiffs' attempts to certify nationwide classes because state law questions from each of the fifty states would predominate over the otherwise common underlying issues that gave rise to the nationwide class's claims.[75] However, these predominance concerns are assuaged in the settlement context because the predominance issue here was primarily about administrability.

As the Court previously recognized, it would be all but impossible to instruct a jury on the various intricacies of the fifty states' interpretations of any uniform law,[76] including the U.C.C.[77] But when parties settle, this jury-based administrability concern becomes moot.[78]

As such, the Court finds that common issues predominate over individual issues for the proposed settlement class. Rule 23(b)(3)'s predominance requirement is therefore met.

### 2. *Adequacy of Representation*

For the reasons stated in its previous opinion, the Court finds that the named Plaintiffs will adequately represent the class. The Court writes here only to briefly note that the named Plaintiffs' incentive awards and personal injury settlements do not undermine their representation of the unnamed class members.

While the named Plaintiffs' incentive awards seemingly place them in a better economic position than the unnamed class members, this is a case where the named Plaintiffs have truly earned their awards. Unlike plaintiffs who receive incentive awards when the parties settle early in a case's lifespan, here the named Plaintiffs were involved with extensive discovery, depositions, and, two

---

[75] *See id.* at 10-12.
[76] *See id.*
[77] *See, e.g.*, *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986) (Ginsburg, J.) ("The Uniform Commercial Code is not Uniform.").
[78] *See Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 336 (3rd Cir. 2011) (Sririca, J. concurring) (noting that "in the settlement context, a court need not worry about the challenge of litigating the claims to a verdict in a single proceeding"); *see also Anchem*, 521 U.S. at 615 (explaining that Rule 23(b)(3)'s predominance and superiority inquiries "sought to cover cases in which a class action would achieve economies of time, effort, and expense" (internal quotations omitted)).

Case No. 16-cv-1114
Gwin, J.

Ohio Plaintiffs gave trial testimony. The Court is not convinced that the incentive awards place the named Plaintiffs' interests at odds with the interests of the unnamed class members.

For similar reasons, the named Plaintiffs' settling their personal injury claims does not create conflicted loyalties. In certifying a class action, the Court had required that class members with potential personal injury claims be allowed to opt out of the class. However, this opt-out was only required if a class member wished to preserve their personal injury claim for later suit or settlement. Nothing about this opt-out prevented any class member from settling their personal injury claim before a final disposition in this case and remaining a member of the class.

The named Plaintiffs each brought viable personal injury claims against Defendant Tristar. The Court believes that these personal injury settlements are *bona fide* and are not a disguised additional incentive award designed to prevent the named Plaintiffs from objecting to the settlement.

For those reasons, the Court finds that the named Plaintiffs remain adequate class representatives.

The Court thus finds that certifying a nationwide settlement class is appropriate for settlement.

### IV. Conclusion

For those reasons, the Court **GRANTS** the parties' motion to approve the proposed settlement. The Court **CERTIFIES** the nationwide class as defined in the proposed settlement. The Court also **APPROVES** $7,500 incentive awards for Plaintiffs Chapman, Vennel, and Jackson, and a $6,000 incentive award for Plaintiff Pinon.

Finally, the Court **GRANTS IN PART and DENIES IN PART** class counsel's motion for attorney's fees and costs. The Court **APPROVES** $1,980,382.59 for class counsel's fees and **DENIES** Ohio class counsel's request for expenses.

IT IS SO ORDERED.

-19-

Case No. 16-cv-1114
Gwin, J.

Dated: August 2, 2018                   *s/        James S. Gwin*
                                        JAMES S. GWIN
                                        UNITED STATES DISTRICT JUDGE

-20-