UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
:
KENNETH CHAPMAN, *et al.*,                :
                                          :    Case Nos.  1:16-CV-1114
                Plaintiffs,               :               1:17-CV-2298
                                          :
vs.                                       :    OPINION & ORDER
                                          :    [Resolving Doc. 154]
TRISTAR PRODUCTS, INC.,                   :
                                          :
                Defendant.                :
                                          :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this products liability class action, the Attorney General of Arizona and the State of Arizona (collectively, "Arizona Movants") move to intervene under Federal Rule of Civil Procedure 24. The Arizona Movants played no role in this long-pending and bitterly contested litigation. The Arizona Movants seek intervention only to allow the Arizona Movants to appeal the Court's order approving the parties' settlement.[1] In the alternative, Arizona Movants request that the Court deem them a formal objector to the settlement on the basis of their prior filings.

For the reasons stated below, the Court **DENIES** the motion to intervene and **DENIES** Movants' request to be deemed a formal objector.

## I. Background

In 2016, Plaintiffs sued Defendant manufacturer Tristar Products, Inc. ("Tristar") alleging that certain of Defendant's pressure cookers were defective. Plaintiffs sought class certification. Plaintiffs alleged Tristar sold a home pressure cooker with a defect that allowed users to release the pressure cooker's lid even while the pressure cooker was still pressurized. Plaintiffs claimed this defect allowed heated food contents to potentially shoot out and injure the user.[2]

---

[1] *See* Doc. 154. Plaintiffs oppose. Doc. 157. Defendant Tristar opposes. Doc. 159. Movant Arizona replies. Doc. 160.
[2] *See* Doc. 1 at ¶ 4.

The Court certified several state classes[3] but denied nationwide class certification. After extensive motion practice that partially ended some of Plaintiffs' claims, the case went to trial.[4]

Near the end of the first trial day, and after the parties examined several witnesses, including the Plaintiffs' main expert witness, the parties met with Magistrate Judge Greenberg and renewed settlement discussions. After additional negotiations supervised by Judge Greenberg, the parties reached a settlement.

Under the settlement, class members can receive a $72.50 credit towards the purchase of one of three Tristar products.[5] Additionally, the settlement gives class members a one-year warranty extension. To submit a claim, class members must verify that they have watched (or read a transcript of) a safety video intended to teach users about the safe operation of the pressure cookers.[6]

The settlement agreement also allowed class counsel to apply for attorney fees. Under the settlement agreement, Plaintiff attorneys could not seek fees greater than "Class Counsel's lodestar and expenses."[7] Plaintiff attorney would not seek any success addition.

In the settlement agreement, Defendant Tristar agreed that it would not object to Plaintiff class counsel's fee application if the fee application was based upon a lodestar calculation and was less than an agreed amount.[8] The settlement agreement acknowledged that this Court, not the parties, would determine what class fees were recoverable.[9]

Despite widespread notice of settlement to class members, no class members objected to the proposed settlement.[10]

---

[3] *See* Doc. 69.
[4] *See, e.g.*, Docs. 81, 97, 99, 117.
[5] *See* Doc. 126-1 at 4-5.
[6] *Id.* at 17.
[7] *Id.* at 22.
[8] *Id.*
[9] *Id.* at 23.
[10] *See* Doc. 135-1 at 14.

Under section 1715(b) of the Class Action Fairness Act ("CAFA"),[11] the parties gave the United States Department of Justice and state attorneys general notice of the settlement. The Department of Justice and eighteen state attorneys general filed an amici brief opposing the proposed settlement.[12]

Although styled as objecting to the settlement, the Arizona Movants more truly only objected to the attorney fee application. Restating, that settlement agreement limited Plaintiff counsel to seeking no more than a lodestar fee and the settlement agreement recognized that the Court, not the parties, would determine any fee award. As described by Tristar's attorney:

> "[W]e didn't agree to a fee. The Court accepts the fee for a class action settlement. And we agree to not object through a certain claim amount of fees, but that's different than agreeing to a fee. And that's what the settlement agreement says, and that's how these are handled. So this allocation issue, I mean the Court's going to decide what the fee is and that's the Court's discretion."[13]

The Court conducted a July 12, 2018, fairness hearing.[14] No class member had filed objection to the settlement agreement and no class member appeared at the July 12, 2018, hearing to give oral objection to the settlement.

At the July 12, 2018, hearing, the United States Department of Justice and the Arizona attorney general's office argued against settlement approval. They argued that the proposed settlement disproportionately benefited class counsel and surmised that class members would receive greater settlement benefits if class counsel received less.[15] The Arizona Movants made this argument even though Tristar's attorney represented: "[W]e were very careful in this case not to

---

[11] 28 U.S.C. § 1715.
[12] *See* Doc. 136-2.
[13] Doc. 153 at 25.
[14] *See Id.*.
[15] The Arizona Movants thus argued:

> "[W]e are not arguing that there needs to be more added to this settlement. The key is what -- how the millions of dollars that are already on the table are being allocated between the absent class members, and the attorneys in this case."

*See* Doc. *Id.* at 8.

discuss attorney's fees until we already had the deal in place."[16] And the Arizona Movants made this argument even though Tristar's attorney represented that Tristar believed it had a significant defense to all plaintiff claims and represented: "that [Tristar] [was not] going to run back and redo this settlement, that's not going to happen."[17]

After considering these arguments, the Court approved the settlement and certified a nationwide class, finding that the settlement was "fair, reasonable, and adequate."[18] The court also approved a reduced fee award of $1,980,382.59 in attorney's fees.[19]

## II. Discussion

### A. Movants' Standing to Intervene of Right

The Arizona Movants ask to intervene "of right," under Civil Rule 24(a). The Plaintiffs and Defendant respond that the Arizona Movants have no standing to intervene as a matter of right.

In *Town of Chester, N.Y. v. Laroe Estates*,[20] the Supreme Court held that an intervenor of right must have Article III standing to pursue relief that is beyond or different from the relief requested by an existing party with standing.

Because Arizona Movants did not include a pleading with their motion to intervene setting forth the claim for which intervention is sought, as required by Rule 24(c),[21] it is difficult to discern the exact nature of the relief they seek.

Movants state that their litigation interest stems from the allegedly unfair *release* of Arizonan

---

[16] *Id.* at 10.
[17] *Id.*. at 55.
[18] *See* Doc. 156 at 10 (citing Fed. R. Civ. P. 23(e)(2)).
[19] *Id.* at 16. The Plaintiff class counsel had sought lodestar-determined attorney fees of $2,043,079.45. The Court found the lodestar application was supported but reduced the amount to reflect restricted case success.
[20] 137 S. Ct. 1645, 1651 (2017).
[21] *See* Fed. R. Civ. P. 24(c). Defendant Tristar urges the Court to deny Arizona's motion because it failed to attach a pleading. However, the Sixth Circuit has adopted a lenient approach to this requirement, and has not treated failure to comply with Rule 24(c) as grounds to deny intervention absent surprise or prejudice to the parties. *See Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 314 (6th Cir. 2005) (court abused its discretion by denying motion to intervene on grounds that movant had not attached a pleading, where its claim or defense was apparent from motion to intervene). Arizona's motion provides sufficient information to put the parties on notice of the arguments it would pursue on appeal were its motion granted, and so there is no reason to believe that the parties would be prejudiced by its failure to comply with Rule 24(c)'s requirement.

Case Nos. 1:16-CV-1114
Gwin, J.

class members' claims.[22] The Arizona Movants makes no claim that they seek relief from the underlying potential harms to Arizona consumers caused by the alleged product defect. The Arizona Movants said they would not represent Arizona class members if the settlement fell apart.

The Arizona Movants seek only appellate vacatur of the Court's order approving the settlement. This is a different form of relief from that sought by the Plaintiffs, who sought monetary damages to compensate for injuries stemming from the allegedly defective pressure cooker. Because Arizona seeks different relief, the Arizona Movants must establish Article III standing to intervene of right.

To demonstrate Article III standing, a party must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[23]

Arizona Movants suggest three potential bases for standing. First, they argue that Arizona has standing as *parens patriae* to remedy an injury to its "quasi-sovereign" interest in the economic wellbeing of its resident class members.

In *Alfred Snapp & Son, Inc. v. Puerto Rico*,[24] the Supreme Court articulated two requirements for a State asserting standing as *parens patriae*. The State must 1) articulate "an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party"[25] and 2) the interest must be a "quasi-sovereign" interest in the health and welfare of its citizens. The Supreme Court has explained that "[o]ne helpful indication in determining whether an alleged injury to the health and welfare of its citizens suffices to give the State standing to sue as *parens patriae* is whether the injury is one that the State, if it could, would likely attempt

---

[22] *See, e.g.*, Doc. 154-1 at 5-6 ("[T]he proposed settlement impairs the economic well-being of Arizona consumer class members *by releasing the class's claims*—including claims for personal injury—in return for less than 1% of class members obtaining a coupon of highly questionable value and an extended warranty of only nominal value.") (emphasis added).
[23] *Laroe Estates*, 137 S. Ct. at 1650 (quoting *Spokeo, Inc. v. Robins*, 135 S. Ct. 1540, 1547 (2016)).
[24] 458 U.S. 592, 607 (1982).
[25] *Id.*

Case Nos. 1:16-CV-1114
Gwin, J.

to address through its sovereign lawmaking powers."[26]

The Court finds that Arizona lacks *parens patriae* standing because it fails to describe any separate injury from private parties' injuries.[27] The allegedly unfair release of Arizona consumer class members' claims is an "injury to an identifiable group of individual residents,"[28] namely Arizonan class members. Despite opportunity, none of those Arizona citizens objected to the settlement. Thus, this interest cannot serve as a basis for *parens patriae* standing. Any injury to Arizona is the same as potential class member injury.

Arizona Movants' second argument is that the Arizona attorney general has standing to pursue an appeal under section 1715 of CAFA, seemingly on the theory that the statute confers on state attorneys general a protectable legal interest in a class action settlements that would be impaired by the settlement's approval. It is true that injury to statutory rights may serve as a basis for standing, because "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute."[29]

However, there is no textual support for Movants' argument that section 1715 of CAFA creates an implied state right to intervene and assure the fairness of class settlements.[30] Quite the opposite: section 1715(f) explicitly states that "[n]othing in this section shall be construed to expand the authority of . . . State officials."[31]

---

[26] *Id.*
[27] While the employment discrimination at issue in *Snapp* concerned particular jobs—positions in the apple harvest of 1978—Puerto Rico brought the case on behalf of its residents in general, not on behalf of particular Puerto Rican workers. Here, in contrast, Arizona seeks to remedy an injury to particular Arizonans.
[28] *Id.*
[29] *Warth v. Seldin*, 422 U.S. 490, 514 (1975). *See also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992) (noting that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law").
[30] Tellingly, other provisions of federal law *do* afford federal and state officials a right to intervene. *See, e.g.*, 28 U.S.C. § 2403 (granting federal and state officials an unconditional right to intervene in suits challenging the constitutionality of legislation); 42 U.S.C. § 2000h-2 (attorney general has right to intervene in action alleging denial of equal protection of the laws on basis of race, color, religion, sex or national origin).
[31] *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 916 F. Supp. 2d 454, 462 (S.D.N.Y. 2013) (rejecting, on the basis of section 1715(f)'s limiting language, state attorney general's argument that CAFA creates standing to object to class action settlement).

Case Nos. 1:16-CV-1114
Gwin, J.

Section 1715 sets forth two legal requirements relevant here: subsection (b) provides that State officials have the right to receive *notice* of the class action settlement, and subsection (d) provides that the final settlement approval shall not be issued less than 90 days after State officials receive this notice. To the extent that these rights are not wholly procedural,[32] which the Court need not decide here, Movants do not allege injury to either of these rights.[33]

Finally, Arizona Movants argue that they have a "participatory" interest in this case supporting standing as a "repeat player" in class action settlement proceedings affecting Arizonans. This argument rests on a misreading of the Sixth Circuit's decision in *Michigan State AFL-CIO v. Miller*,[34] in which the Sixth Circuit held that the Michigan Chamber of Commerce had a substantial interest meriting intervention in a suit challenging the validity of a Michigan Campaign Finance Act provision regulating unions. There, the Sixth Circuit cited that the Chamber was a "repeat player in Campaign Finance Act litigation" as *evidence* that the group had a substantial interest in the validity of the legislation at issue in the suit.[35] It did not hold that being a "repeat player" was *itself* a substantial interest.

Because Arizona Movants do not allege an injury giving rise to Article III standing, its motion to intervene of right is denied. For the same reason, the Court also denies Movants' request that the Court deem them a formal objector to the settlement.[36]

---

[32] *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.")

[33] *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20 2010*, 910 F. Supp. 2d 891, 943 (E.D. La. 2012) ("CAFA's notification provision . . . simply requires notification; it does not create standing that a state official otherwise lacks.") *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014); *In re Budeprion XL Mktg. & Sales Litig.*, No. 09-MD-2107, 2012 WL 4322012, at *4 (E.D. Pa. Sept. 21, 2012) (although CAFA requires notice of class action settlements affecting their citizens to State officials, "[CAFA] says nothing . . . of granting the states a right to be heard on, or formally appeal, every class action settlement simply because residents of that state are class members").

[34] 103 F.3d 1240 (6th Cir. 1997).

[35] *Id.* at 1247. The Chamber of Commerce had also played a significant role in the political process that led to the adoption of the challenged provisions of the legislation, another factor cited in favor of its having an interest in the validity of the legislation.

[36] Individuals and entities that are not members of the class generally lack standing to formally object to a class action settlement. *See Fidel v. Farley*, 534 F.3d 508, 515 n.5 (6th Cir. 2008) (court lacked jurisdiction to consider objections to class action settlement brought by nonclass member); *cf. Tennessee Ass'n of Health Maint. Organizations, Inc. v. Grier*, 262 F.3d 559, 566 (6th Cir. 2001) (nonclass members lacked standing to object to alleged noncompliance with Rule 23(e)'s notice provisions).

Case Nos. 1:16-CV-1114
Gwin, J.

## B. Permissive Intervention

Movants also ask the Court's permission to intervene under Rule 24(b). Rule 24(b)(1)(B) provides that a court may allow a party to intervene after a timely motion where the "applicant's claim or defense and the main action have a question of law or fact in common." Arizona Movants submit that their claim shares a question of law in common with the main action because they present arguments concerning whether the proposed settlement is "fair, reasonable, and adequate" under Rule 23(e)(2) of the Federal Rules of Civil Procedure.[37]

It is unclear whether a permissive intervenor under Rule 24(b) must have Article III standing, as the Supreme Court did not address this issue in *Laroe Estates*. On one hand, the Supreme Court has stated that Rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation."[38] On the other, the Supreme Court also expressed "grave doubts" regarding the Article III standing of permissive intervenors who had intervened for the limited purpose of seeking appellate review, indicating that they would have had to demonstrate standing had their case not been dismissed as moot.[39] The Sixth Circuit has not ruled on this issue;[40] other circuits have reached varying outcomes, with the majority favoring the view that permissive intervenors must have Article III standing.[41]

The Court finds that *Laroe Estates*'s reasoning applies with equal force whether a party seeks intervention as of right or permissively. In either case, the focus of the Article III inquiry is whether

---

[37] Admittedly, the Arizona Movants' proposed intervention for the sake of appeal is an awkward fit for Rule 24(b)'s "claim or defense" language. However, courts have generally interpreted Rule 24 flexibly. *See, e.g.*, *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) (collecting cases) ("[W]e have eschewed strict readings of the phrase claim or defense,' allowing intervention even in situations where the existence of any nominate 'claim' or 'defense' is difficult to find." (internal quotation marks and citation omitted)). For example, the Sixth Circuit has allowed permissive intervention for the sake of challenging a protective order. *See Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 162 (6th Cir. 1987).
[38] *Sec. & Exch. Comm'n v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459 (1940).
[39] *Arizonans for Official English v. Arizona*, 520 U.S. 43, 66 (1997).
[40] The Sixth Circuit's decision in *Davis v. Lifetime Capital*, 560 F. App'x 477, 489 (6th Cir. 2014), which held that intervenors of right under Rule 24(a) are not required to demonstrate Article III standing, has been overruled by *Laroe Estates*, at least with respect to intervenors seeking different relief from the that sought by a party with standing.
[41] *See Bond v. Utreras*, 585 F.3d 1061, 1069 (7th Cir. 2009) (collecting cases).

the party has "such a personal stake in the outcome of the controversy as to . . . justify [the] exercise of the court's remedial powers on [their] behalf."[42] Although permissive intervention requires a lesser showing than intervention of right, it implicates the court's remedial powers in the same way. As Arizona Movants seek a form of relief that is different from that of a party with standing, and standing is required for "each form of relief sought[,]"[43] their motion to permissively intervene is denied.

Furthermore, Rule 23(b)(3) also requires the Court consider whether allowing Arizona Movants to intervene would "unduly delay or prejudice the adjudication of the original parties' rights." Here, the parties have reached a settlement which has been approved by the Court. Eighty-three percent of class members received settlement notice. After receiving notice, over 13,000 claims have been filed. No class members objected to the proposed settlement.

When asked whether Arizona's Attorney General would take over class representation if Arizona scuttled the settlement, Arizona's Attorney General said it would not. In a case where over thirteen thousand persons have made settlement claims and where warranty extensions have benefitted more, Arizona's intervention would delay and prejudice the class members' rights.

Permitting Movants to intervene for the purposes of appeal would significantly delay the distribution of relief to class members. For this reason, the Court declines their request to intervene as a matter of discretion.

---

[42] *Laroe Estates*, 137 S. Ct. at 1650 (alteration in original) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976)).
[43] *Id.* (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724 734 (2008)).

Case Nos. 1:16-CV-1114
Gwin, J.

### III. Conclusion

For the reasons stated above, the Court **DENIES** the motion to intervene and **DENIES** Movants' request to be deemed formal objectors.

IT IS SO ORDERED.

Dated: September 4, 2018         *s/         James S. Gwin*
                                 JAMES S. GWIN
                                 UNITED STATES DISTRICT JUDGE